DONALD W. SEARLES, California Bar No. 135705
E-mail: searlesd@sec.gov
C. DABNEY O'RIORDAN, California Bar No. 205158
E-mail: oriordand@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
Rosalind R. Tyson, Regional Director
Michele Wein Layne, Associate Regional Director
5670 Wilshire Boulevard, 11th Floor
Los Angeles, California 90036-3648
Telephone: (323) 965-3998
Facsimile: (323) 965-3908

JOHN W. SPIEGEL (Pro Hac Vice)
John.Spiegel@mto.com
GREGORY J. WEINGART (Pro Hac Vice)
Gregory.Weingart@mto.com
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue
Thirty-Fifth Floor
Los Angeles, CA 90071-1560
Telephone: (213) 683-9100
Facsimile: (213) 687-3702

Attorneys for Defendant
Maynard L. Jenkins

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>    Plaintiff,<br>vs.<br><br>MAYNARD L. JENKINS,<br><br>    Defendant. | Case No. CV 09-1510-PHX-GMS<br><br>**JOINT CASE MANAGEMENT REPORT**<br><br>Scheduling Conference<br>Date:    July 30, 2010<br>Time:    10:30 a.m.<br>Place:   Courtroom 602 |

Counsel for plaintiff Securities and Exchange Commission (the "Commission") and defendant Maynard L. Jenkins ("Mr. Jenkins") conferred telephonically on July 2, 2010 to conduct the conference of the parties required by Fed. R. Civ. P. 26(f), pursuant to the Order Setting Rule 16 Case Management Conference ("Order") issued by this Court on June 24, 2010.

The parties submit this Joint Report on a proposed discovery plan and other matters required by Fed. R. Civ. P. Rule 26(f).

1. **Parties in Attendance**

The Rule 26(f) meeting was attended by: Donald W. Searles and C. Dabney O'Riordan on behalf of the Commission; and John W. Spiegel, Gregory J. Weingart and Melinda E. LeMoine on behalf of Mr. Jenkins.

2. **List of Parties and Related Entities**

(i) Parties

Securities and Exchange Commission

Maynard L. Jenkins

(ii) Related Persons and Entities

CSK Auto Corporation

O'Reilly Automotive, Inc.

Don W. Watson

Edward W. O'Brien

Gary M. Opper

3. **Nature of the Case**

a) **The Commission's Position**

By this action, the Commission seeks an order from this Court, pursuant to Section 304 of the Sarbanes-Oxley Act, 15 U.S.C. § 7243, requiring Mr. Jenkins, former chairman and chief executive officer of CSK Auto Corporation ("CSK"), to reimburse CSK (subsequently acquired by O'Reilly Automotive, Inc.) for all of his bonuses and

other incentive-based or equity-based compensation, and any profits realized from his sale of CSK stock, during the 12-month period following the issuance of CSK's financial statements contained in its annual reports for fiscal years 2002, 2003 and 2004, all of which were required to be restated due to the material non-compliance of the issuer, as a result of misconduct.

### b) Mr. Jenkins' Position

Mr. Jenkins believes that there are two principal issues to be tried: (1) whether CSK's restatements were the result of misconduct, and (2) whether Jenkins received any additional incentive compensation or stock sales profits traceable to the misstatement that resulted from misconduct. Mr. Jenkins urges a prompt trial date in light of these straightforward elements, the long passage of time since the underlying events, the fact that the Commission has already done extensive discovery during its investigation, and Mr. Jenkins' age and health.

### 4. Jurisdiction

This Court has jurisdiction over this action pursuant to Section 3(b) of the Sarbanes-Oxley Act, 15 U.S.C. § 7202(b), and Sections 21(d), 21(e), and 27 of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78u(d), 78u(e) & 78aa.

### 5. Service on Parties

Mr. Jenkins has acknowledged service of the Complaint.

### 6. Other Parties Not Yet Joined

The parties do not presently expect to add additional parties to the case or otherwise amend or supplement the pleadings.

### 7. Contemplated Motions

#### a) By the Commission

The Commission anticipates filing an early motion for summary judgment against Mr. Jenkins based on his prior admissions in CSK's Form 10-K that CSK restated its

financial statements due to misconduct (the "Second Restatement"). There are three elements to the Commission's claim: (1) whether CSK was required to prepare an accounting restatement; (2) due to CSK's material noncompliance with any financial reporting requirement under the securities laws; and (3) that noncompliance was due to misconduct. In the event the Commission establishes these three elements, then Mr. Jenkins is required to reimburse CSK/O'Reilly.

The Commission anticipates moving for summary judgment on the three underlying elements based largely on the Second Restatement, which Mr. Jenkins signed. In the Second Restatement, CSK and Mr. Jenkins admit that the restatements for fiscal years 2002, 2003, and 2004 were due to misconduct. For example the Second Restatement disclosed, among other things, the following circumstances leading to the restatement:

- The special investigation "had identified accounting errors and irregularities that materially and improperly impacted . . . vendor allowance receivables," among other accounts;

- "[T]he errors and irregularities were primarily the result of actions directed by certain personnel and an ineffective control environment;"

- The "recording of improper accounting entries was directed by certain personnel;"

- Certain personnel engaged in "withholding information from, and providing of improper explanations and supporting documentation to the Audit Committee, Board of Directors, as well as its internal auditors and independent registered public accountants;" and

- The Company "further identified improper vendor debits related to instances in which amounts not owed [to the Company] were deducted from vendor payments, and, if not accepted by vendors, were subsequently paid back to the vendors with the recognition and payback recorded in different accounting periods."

In that same filing, CSK and Mr. Jenkins also admit that management of the company was responsible for establishing and maintaining adequate internal controls over financial reporting as defined in Rules 13a-15(f) and 15d-15(f) under the Exchange Act, (17 C.F.R. §§ 240.13a-15, 240.15d-15) and that the Company had failed to comply with those legal requirements. CSK further reported that its internal investigation "revealed that improper debits were issued and applied to accounts payable for amounts the Company was not entitled to receive. These amounts were subsequently repaid to vendors through direct cash payments, the foregoing of future cash discounts, the acceptance of increased prices on future purchases and paybacks through the warrant account. This material weakness resulted in errors in vendor allowance receivables, inventory, accounts payable and costs of sales accounts."

CSK's use of the phrase "errors and irregularities" is notable, as the phrase "accounting irregularities" is a term of art, used interchangeably with fraudulent financial reporting.[1] The distinction between "errors" and "irregularities" was also emphasized by CSK in its Wells submission to the Commission, in which the Company noted that "CSK has stated in many of its public filings that irregularities, not merely errors, were identified in its historical financial statements that preceded its Audit Committee-led investigation." (CSK Wells submission, p. 1.) Elsewhere in its Wells submission, CSK

---

[1] The term "accounting irregularities" was defined in Statement of Auditing Standards (SAS) No. 53, *The Auditor's Responsibility to Detect and Report Errors and Irregularities*. SAS 53 defined "accounting irregularities" as "intentional misstatements or omissions of amounts or disclosures in financial statements." SAS No. 53 was superseded by SAS No. 82, *Consideration of Fraud in a Financial Statement Audit*. In SAS No. 82, the use of the term "accounting irregularities" is replaced with the term "fraudulent financial reporting." Today, the two terms are used interchangeably. *See*, Charles Mumford and Eugene E. Comiskey, *The Financial Numbers Game*, p. 49 (2002). As Judge Campbell found, in denying Jenkins' motion to dismiss the second amended consolidated complaint in *Communication Workers of America Plan for Employees' Pension and Death Benefits v. CSK Auto Corporation, et al.*, CV 06-1503 PHX-DGC, CSK's use of the term "irregularities" in its Form 10-K "is significant because it 'refers to intentional misstatements or omissions of amounts on disclosure in financial statements.'" Dkt. No. 114, pp. 7-8 (*quoting* SAS No. 53).

| | |
|---|---|
| 1 | candidly admitted that "misconduct" had occurred at the Company, including an entire |
| 2 | section explaining that the "Misconduct Was Concentrated in the Finance Department." |
| 3 | In short, it is the Commission's position that both CSK and Mr. Jenkins, through |
| 4 | CSK's Form 10-K that Mr. Jenkins signed, have already admitted the three underlying |
| 5 | elements of the Commission's claim under Section 304, including the potentially litigious |
| 6 | element of "misconduct."[2] Thus, the only triable issue in this case, from the |
| 7 | Commission's perspective, is the amount of reimbursement Mr. Jenkins should be |
| 8 | required to make to CSK/O'Reilly, with due regard to the Court's concerns as set forth in |
| 9 | its Order denying Mr. Jenkins' motion to dismiss the Complaint. |
| 10 | In his Answer, however, Mr. Jenkins only admits that CSK filed two restatements, |
| 11 | that he was one of the individuals who signed the Second Restatement, and that he |
| 12 | received compensation and exercised stock options during the period in question. |
| 13 | (Jenkins' Answer ¶¶ 6, 7, 8, 38, 40, 41.) With respect to the reasons for CSK's |
| 14 | restatement and, specifically, whether those restatements were required as a result of |
| 15 | CSK's material noncompliance with its financial reporting requirements, as a result of |
| 16 | misconduct, Mr. Jenkins claims he is "without knowledge or information" sufficient to |
| 17 | form an opinion as the truth of those allegations in the Commission's complaint. Thus, |
| 18 | contrary to the Second Restatement that he signed as CSK's chairman of the board and |
| 19 | chief executive officer, which disclosed the reasons for the restatement at issue, Mr. |

---

[2] Misconduct is not a defined term in Section 304 of the Sarbanes-Oxley Act. Accordingly, that word should be given its ordinary meaning. *Cuomo v. Clearing House Ass'n*, __ U.S. __, 129 S. Ct. 2710, 2723, 174 E. Ed. 2d 464, 478 (2009). "Misconduct" means: "[a] dereliction of duty; unlawful or improper behavior." Black's Law Dictionary, 8th Ed. It is the Commission's position that the element of "misconduct" is satisfied by: (1) the Company's and Jenkins' admissions in CSK's Form 10-K in which they acknowledged accounting "errors and irregularities," among other things; (2) their admission, in that same filing, that the Company had failed to establish and maintain adequate internal controls over financial reporting as required by Rules 13a-15 and 15d-15 under the Exchange Act, which resulted in errors in vendor allowance receivables, inventory, accounts payable and costs of sales accounts; and (3) by CSK's Wells submission, in which the Company admitted to accounting "errors and irregularities" as a result of employee "misconduct."

*SEC v. Jenkins*, CV 09-1510-PHX-GMS
Joint Case Management Report

5

Jenkins appears ready to fully litigate these issues and to require the Commission to prove the underlying element of misconduct based on the testimony and admissions of the individuals most involved in that misconduct, namely, Don Watson, Gary Opper and Edward O'Brien (each of whom have been charged in separate, currently pending, civil and criminal cases in this District).

In the event the Court rejects the Commission's reliance on the Second Restatement and/or CSK's Wells submission, as proof of the underlying element of misconduct, the Commission may be required to prove the element of misconduct based on the testimony and admissions of the individuals most involved in that misconduct. In that event, the Commission anticipates filing a motion for summary judgment based on the collateral estoppel doctrine, in the event Mr. Watson is found guilty in the criminal case, *United States v. Watson*, CR 09-372-2-PHX-SRB, which is set for trial in June 2011, or in the event Messrs. Watson, Opper and O'Brien are found liable in the Commission's civil case, *SEC v. Fraser, et al.*, CV 09-443 PHX-GMS, which is expected to proceed to trial sometime in mid-2012 (currently, no trial date has been set in *SEC v. Fraser, et. al*).

In the event the Commission is required to prove the element of misconduct through the testimony of Messrs. Watson, Opper and/or O'Brien, or other percipient witnesses who were involved in that misconduct, the Commission also anticipates that it, or the witnesses' counsel, may need to file motions to postpone and/or quash deposition notices or subpoenas and/or move to stay discovery in the event Mr. Jenkins notices depositions of those three individuals, or other former CSK employees, who have previously asserted their Fifth Amendment rights against self-incrimination and who indicate a present intention to continue to assert their Fifth Amendment rights prior to the conclusion of the criminal case against Mr. Watson.

### b) By Mr. Jenkins

Rather than setting forth "[a] listing of contemplated motions and a statement of the issues to be decided by these motions," as required by this Court's Order (Dkt. 51, Item 7, at 2), the Commission has insisted on going well beyond what that Order permits and submitting four full pages of argument concerning the purported merits of its listed contemplated motion. This improper and premature attempt to influence the Court should be stricken.

By attempting to use a case management document to argue its summary judgment motion before the start of any discovery, the Commission unfairly attempts to deprive Mr. Jenkins of the opportunity to meaningfully respond. The Commission argues based on purported "evidence" that Mr. Jenkins has never seen. Mr. Jenkins does not have access to CSK's Wells Submission, which in any event would be inadmissible hearsay as to Mr. Jenkins. Nor does counsel for Mr. Jenkins yet have access to the voluminous investigative record of either the Commission, or the CSK Special Investigation Committee which produced the restatement. While the Commission has had ample opportunity to review this information, as well as the benefit of approximately twenty briefings with representatives from the Special Investigation Committee, Mr. Jenkins has not. The facts currently available to Mr. Jenkins, given that the Commission has produced no discovery, do not suggest misconduct. Messrs. Watson, O'Brien, and Opper are all contesting the Commission's case against them. O'Brien and Opper pled guilty to obstructing federal investigators, not fraud charges. CSK settled the Commission's case against it by neither admitting nor denying wrongdoing. In related securities class action litigation, CSK argued that its restatement and announcements of accounting errors and irregularities did not support an inference of scienter, and that "[t]o the contrary, the restatement *negates* an inference that defendants acted with the requisite scienter" because the restatement resulted in both net income declines and net income *increases* in

various years. *Communications Workers Of America v. CSK Auto Corporation, et al.*, CIV-06-1503-PHX-DGC, Dkt No. 86 at p. 9)(emphasis added).

If the Commission actually files a motion for summary judgment, Mr. Jenkins will respond accordingly once he has had the opportunity to test the Commission's allegations with the discovery methods afforded to the parties by the Federal Rules.

Mr. Jenkins does not presently contemplate filing a dispositive motion, but may revisit that once the parties have conducted further discovery.

### c) Other motions

The parties agree that it is too early to determine what other motions (including motions under Fed. R. Evid. 702-705) may be appropriate.

### 8. Reference to Magistrate

The parties agree that the case is suitable for reference to a United States Magistrate Judge for purposes of a settlement conference, but not for trial.

### 9. Status of Related Cases

The Commission's civil case against Messrs. Watson, Opper and O'Brien, *SEC v. Martin Fraser, et al.*, CV 09-443-PHX-GMS has not been set for trial, but a trial date is expected in mid-2012. In their joint report filed in that matter, the parties estimated trial will take six to eight weeks. (*SEC v. Fraser, et al.*, Dkt. 91 at 21).

The criminal case against Mr. Watson, *United States v. Watson*, CR 09-372-2-PHX-SRB, is set for trial on June 7, 2011. The parties in that matter estimated the length of trial at eight to twelve weeks. (*United States v. Watson*, Dkt. 66).

On April 7, 2009, Mr. O'Brien pled guilty to a one-count felony information, charging him with obstruction of proceedings before a government agency, in violation of 18 U.S.C. 1505. *United States v. O'Brien*, CR 09-365-PHX-SRB. Mr. O'Brien is currently scheduled to be sentenced on July 25, 2011.

On April 15, 2009, Mr. Opper also pled guilty to a one-count felony information, charging him with obstruction of proceedings before a government agency, in violation

of 18 U.S.C. 1505. *United States v. Opper*, CR 09-365-PHX-SRB. Opper is currently scheduled to be sentenced on July 25, 2011.

### 10. Exchange of Initial Disclosures

The parties have exchanged initial disclosures.

### 11. Issues Relating to the Disclosure of Electronically Stored Information

#### a) The Commission's Statement

The Commission has represented to counsel for Mr. Jenkins that in the criminal case, *United States v. Watson,* the Department of Justice has produced to Mr. Watson a searchable electronic database of documents, representing materials produced by a number of sources to the Commission (the "DOJ Database"). In addition, the Department of Justice has provided to Mr. Watson an index of the database, identifying the documents by the name of the producing party, the date of production and, where applicable, the beginning and ending Bates number of the production. The Commission intends to produce an identical version of this electronic database to Mr. Jenkins, upon request.

On July 2, 2010, Mr. Jenkins propounded his first set of requests for production of documents, requests for admission and interrogatories. The Commission notes that Mr. Jenkins alleges below that the Commission's production of the DOJ Database does not comply with its obligations under Fed. R. Civ. P. 34. This purported concern is premature and unfounded. First, the Commission's responses to those discovery requests are due August 4, 2010. Thus, Mr. Jenkins complains about the Commission's document production even before the documents are due to be produced. In addition, Mr. Jenkins has specifically requested that the Commission produce "All DOCUMENTS produced to or obtained by [the Commission] during its investigation of *In the Matter of CSK Auto Corp.*" The DOJ Database contains those documents. As to Mr. Jenkins' other 38

document requests, the Commission intends to fully meet its obligations under Fed. R. Civ. P. 34.

### b) Mr. Jenkins' Statement

Mr. Jenkins' requests for documents pursuant to Federal Rule of Civil Procedure 34(b) include the same requirements for electronically stored information that the Commission imposes on those responding to the Commission's subpoenas. Mr. Jenkins presently has no dispute about these requests with the Commission, since the Commission has yet to respond. The Commission has stated that it intends to produce what it calls "the DOJ Database." Mr. Jenkins cautioned the Commission against impermissibly dumping its entire investigative file and claiming that satisfies its obligations under the Rules. *See SEC v. Collins & Aikman Corp.*, 256 F.R.D. 403, 413 (S.D.N.Y. 2009) (holding that documents collected in an investigation are not kept within the "usual course of business," and thus requiring Commission to "organize[] and label them[] to correspond to each demand"). The Commission assured Mr. Jenkins that its production will comply with the Federal Rules.

If an actual dispute develops once we have seen the documents, responses, and/or the "DOJ Database," that the parties cannot resolve informally between themselves, it will be brought promptly to the Court's attention.

### 12. Discussion of Claims of Privilege

#### a ) The Commission's Position

The Commission anticipates that Messrs. Watson, O'Brien and Opper, as well as potentially other persons, may invoke their Fifth Amendment right against self-incrimination if deposed or called to testify at the trial in this matter before the conclusion of the criminal case against Mr. Watson. Given Mr. Watson's prior invocation of his Fifth Amendment privilege, and the fact that he has been charged in the criminal case, the Commission has every expectation that Mr. Watson will continue to assert his Fifth Amendment rights at least until his criminal case is over. In addition, Mr. Watson's

counsel in the civil case has conditioned any deposition of his client on his ability to take some undetermined number of depositions beforehand, so that he can intelligently advise his client whether to sit for deposition in advance of the criminal case. Given Mr. Watson's prior invocation of his rights, his current criminal predicament, and the equivocal position of his counsel, the Commission believes it is extremely unlikely that Mr. Watson will ever sit for a deposition in advance of the trial in his criminal case.

Furthermore, the Commission is not a party to the plea agreement between the Department of Justice and Messrs. Opper and O'Brien, nor does it have any cooperation agreements in place with any of the other witnesses who invoked their Fifth Amendment rights during the Commission's investigation. Accordingly, contrary to Mr. Jenkins' suggestion below, the Commission cannot compel Messrs. O'Brien and Opper to substantively testify at a deposition by virtue of the cooperation clause in their respective plea agreements with the Department of Justice.

### b) Mr. Jenkins' Position

The Commission's assumption that Messrs. Watson, Opper and O'Brien will invoke the Fifth Amendment rather than testify in this matter appears based on little more than speculation. Counsel for Mr. Watson has repeatedly assured this Court that his client will testify in civil proceedings. *See SEC v. Fraser et al.*, Apr. 30, 2010 Hr'g Tr., at 6 (counsel "have concluded that Mr. Watson will testify in this proceeding, and I make that avowal to the Court."); *see also id.* at 29 ("We have agreed Mr. Watson will testify; I don't want there to be any confusion about that."). Mr. Watson's counsel have proposed to produce Mr. Watson for deposition "in late 2010 or early 2011" —well within Mr. Jenkins' proposed trial schedule. Messrs. Opper and O'Brien have agreed as part of their pleas "to testify truthfully and completely at any time and at any place requested by the United States." See *United States v. Opper*, Dkt. 25, at 3; *United States v. O'Brien*, Dkt. 5-2, at 3. In short, each of these witnesses appears to be available to the Commission to

testify, so the Fifth Amendment issues the Commission assumes may never come to fruition.

     **c)**   **Joint Position**

  The Commission and Mr. Jenkins both anticipate that it may become necessary for the Court to decide whether the results of CSK's Audit Committee-led internal investigation, which were orally disclosed by CSK to the Commission during a series of briefings in 2007, remain protected by the Company's attorney-client privilege or by the work-product doctrine.

  **13.**   **Necessary Discovery**

  The parties are in agreement that discovery will be needed on all of the factual allegations in the Complaint, other than the fact that CSK filed two restatements, which Mr. Jenkins admits, as well as all defenses asserted thereto.

    (a)   The Commission intends to produce all relevant, non-privileged information in its possession to Mr. Jenkins pursuant to his requests.

    (b)   The parties are in agreement as to the following changes to the discovery limitations imposed by the Federal Rules of Civil Procedure: (1) each side shall have a total of twenty-five (25) depositions; (2) each side shall be entitled to propound forty (40) interrogatories, including subparts; (3) each side will be entitled to propound forty (40) requests for production of documents, including subparts; and (4) each side will be entitled to propound 40 substantive requests for admission.

    (c)   The parties anticipate the need to take certain depositions for longer than seven (7) hours. The parties anticipate they will be able to resolve their time requests amongst themselves, but reserve the right to apply to the Court for appropriate relief, if necessary.

14. **Deadlines**

   a) **The Commission's Position**

Although the Commission anticipates filing an early motion for summary judgment in this case, for the reasons previously discussed, it may become necessary to prove the underlying element of "misconduct" based on the testimony and admissions of the individuals most involved in that misconduct, namely, Don Watson, Gary Opper and Edward O'Brien, each of whom has been charged in separate, currently pending, civil and criminal cases in this District.

The criminal case against Mr. Watson is set for trial on June 7, 2011, and is expected to last eight to twelve weeks, that is, until approximately late July or early August, 2011. Given the Fifth Amendment issues that have been discussed above, the Commission anticipates that it may become necessary to conduct limited discovery in this case after the conclusion of the criminal case against Mr. Watson so as to obtain testimony and documents from any defendant or witnesses who has previously indicated an intention to assert his or her Fifth Amendment privilege against self-incrimination. This is particularly true in light of Mr. Jenkins' position, set forth below, that the collateral estoppel doctrine would not apply against him, since he is not a party to either Mr. Watson's criminal or civil case. Accordingly, the Commission submits that it would be prudent for the Court to set a trial date in this case so that Mr. Jenkins' trial would commence sometime after the conclusion of Mr. Watson's criminal case.

Furthermore, in the event Mr. Watson is found not guilty at the criminal case, the Commission's civil case against Messrs. Watson, O'Brien and Opper would proceed to trial sometime mid-2012. Once again, if one or more of those defendants were to be found liable, the Commission anticipates that it would file a motion for summary judgment against Mr. Jenkins, on the issue of misconduct, based on the collateral estoppel effect of the civil judgment in Mr. Watson's civil case. The Commission's case against Messrs. Watson, O'Brien and Opper is expected to last six to eight weeks.

Finally, in the event the Commission is required to prove the underlying element of misconduct on the same evidence as likely to be presented in the criminal and/or civil cases against Messrs. Watson, Opper and O'Brien, the Commission anticipates that the trial in this case can also be expected to last six (6) to (8) weeks.

Accordingly, in order to conserve judicial resources, and to avoid having the Court sit through multiple trials involving the same underlying issue of misconduct, the Commission proposes the following schedule, which is the same schedule the Court has already adopted in *SEC v. Fraser, et al.*, CV-09-443-PHX-GMS:

| | | |
|---|---|---|
| (i) | Deadline for completion of fact discovery: | October 31, 2011 |
| (ii) | Plaintiff's deadline for expert disclosures under Fed. R. Civ. P. 26(a)(2)(A)-(C): | November 30, 2011 |
| (iii) | Defendants' deadline for expert disclosures under Fed. R. Civ. P. 26(a)(2)(A)-(C): | November 30, 2011 |
| (iv) | Rebuttal expert disclosures: | January 10, 2012 |
| (v) | Deadline for completion of all expert depositions: | February 10, 2012 |
| (vi) | Deadline for filing dispositive motions: | March 10, 2012 |
| (vii) | Date by which the parties shall have engaged in good faith settlement talks. | August 31, 2011 |

Finally, in order to avoid multiple trials on the underlying issue of misconduct, the Commission suggests that the Court consider consolidating, for purposes of trial only, this action and the civil action in *SEC v. Fraser, et al*, pursuant to Rule 42 of the Federal Rules of Civil Procedure. *See* Wright & Miller, *Federal Practice and Procedure*, Civil 3d, § 2383, pp. 50-51 (2008) (a trial court may order consolidation on its own initiative).

In any event, Mr. Jenkins' proposed schedule (discussed below) is impractical. For example, Mr. Jenkins proposes a fact discovery cut-off of October 3, 2010—only 9 weeks from the scheduling conference. Given that each side has 25 depositions (at Mr.

Jenkins' request), this would result in this case proceeding at the staggering speed of 5 to 6 depositions a week. Even if only the Commission took depositions, this would still require 2 to 3 depositions each week for 9 weeks.

### b) Mr. Jenkins' Position

Mr. Jenkins has the right to litigate the allegations made against him expeditiously. Yet the Commission's proposed schedule would result in a trial date of no earlier than March 2012—over five years after the Commission began its investigation of CSK, and over two and a half years after the Commission filed this action. This protracted delay the Commission seeks is both unfair and unwarranted.

Mr. Jenkins is sixty-eight years old, and will be close to seventy by the time of trial date proposed by the Commission. He suffers from serious health problems, including diabetes. This lawsuit has taken its toll on Mr. Jenkins's health, peace of mind, and his ability to plan for his family's future well-being when his time comes. Mr. Jenkins has already been living under the cloud of this investigation for many years. The Commission took over three years to conduct its formal investigation into CSK's alleged "misconduct" even before this lawsuit was ever filed. It took testimony from forty-seven (47) individuals —including three days of Mr. Jenkins' testimony. It collected over 14 million pages of documents, and had the benefit of approximately twenty (20) briefings from the Company's Special Investigation Committee. The Commission's claim that it now needs another two and a half years to bring this case to an end is specious in light of the amount of time this case has been pending in some form or another to date. This is especially so given the Commission's representation to the Court that while it needs an additional two years to prepare for trial, it is ready and able to file an early summary judgment motion even prior to the initiation of discovery.

Instead, Mr. Jenkins proposes the following schedule:

   (i)  Deadline for completion of fact discovery:  October 3, 2010

   (ii)  Expert disclosures under

|   |   |   |
|---|---|---|
| | Fed. R. Civ. P. 26 (simultaneous): | November 5, 2010 |
| | (iii) Rebuttal expert disclosures (simulateous): | December 17, 2010 |
| | (iv) Deadline for completion of all expert discovery: | January 21, 2011 |
| | (v) Deadline for filing dispositive motions: | February 25, 2011 |
| | (vi) Date by which the parties shall have engaged in good faith settlement talks: | October 31, 2010. |

Mr. Jenkins' proposed trial schedule is consistent with the Court's request that "the parties should keep in mind that civil trials should occur within eighteen (18) months of the filing of the complaint." *See* Order, Dkt. 51, at 4 (citing 28 U.S.C. § 473(a)(2)(B) (2006)). The Commission filed its Complaint in this matter on July 22, 2009. See Dkt. 1. Mr. Jenkins's proposed schedule sets trial twenty (20) months from the Commission's Complaint, adhering closely to the Court's recommended trial schedule. Under the Commission's proposed schedule, however, trial would not commence until nearly three years after it filed its initial Complaint.

Through its proposed schedule, the Commission essentially seeks a stay of this action not only until after the criminal case against Mr. Watson, but also the civil case against Messrs. Watson, O'Brien, and Opper. The Court has previously rejected motions to stay the civil enforcement action against Mr. Watson pending the criminal case. Delay would be even more inappropriate here, for several reasons. First, the Commission's position here apparently is that it can prove "misconduct" based on any person's misconduct, as long as it can be traced to the issuer. The Commission also claims that it believes it can prove misconduct without calling witnesses such as Watson, O'Brien and Opper. If the Commission is correct on either of those points, then the Fifth Amendment issues it raises do not exist. Further, even if the Commission needed to call witnesses, its purported need to call the three that it assumes will invoke the Fifth Amendment appears

to be a red herring. If the Commission believes it can sustain its burden by proving any one person committed misconduct, why must it call these three witnesses? Finally, the Commission's assumptions that these three witnesses necessarily will invoke the Fifth Amendment appear unfounded, based on Mr. Watson's counsel's representation and the publicly-filed plea agreements.

Nor would delay serve the purported goal of "judicial economy." Although the Commission contemplates a motion for summary judgment based on collateral estoppel, that doctrine will not apply to Mr. Jenkins. Mr. Jenkins is neither a party, nor in privity, with any of the litigants in the related civil actions, so the doctrine of collateral estoppel will not bind him to any decision on the issue in another action – irrespective of what happens in the other action. *See Clark v. Bear Stearns & Co.,* 966 F.2d 1318, 1320 (9th Cir. 1992) ("[c]ollateral estoppel . . . bars the relitigation of issues actually adjudicated in previous litigation between the same parties") (emphasis added); *United States v. Washington*, 593 F.3d 790, 801 n. 13 (9th Cir. 2010) (doctrine of collateral estoppel "would not apply . . . against an entity that was not a party or in privity with a party to the prior litigation").

The Commission's contention that Mr. Jenkins's schedule is "impracticable" is unfounded. While the parties have agreed that each may take up to 25 depositions without seeking leave of Court, that does not mean that each side *must* take 25 depositions to complete discovery. Mr. Jenkins has not yet received any discovery and so must at this time reserve his rights. But Mr. Jenkins expects in all likelihood the parties will want to depose many of the same witnesses, providing for certain economy in completing the necessary discovery in an expeditious manner.

Finally, this Court should reject the Commission's offhand suggestion here that consolidation of Mr. Jenkins's case and *SEC v. Fraser* would be appropriate on the Court's own motion. If the Commission seeks to consolidate, it should file a proper motion as required by the Local Rules and afford Mr. Jenkins and the Defendants in

*SEC v. Jenkins,* CV 09-1510-PHX-GMS
Joint Case Management Report

17

*Fraser* a meaningful opportunity to oppose it. *See* L.R. 42.1(a)(2) (requiring motions to consolidate to be filed in *each* case sought to be consolidated). It should not glibly suggest that the Court *sua sponte* take an action that would substantially affect the rights of four separate defendants without affording each an opportunity to respond.

### 15. Jury Trial

#### a) The Commission's Position

The Commission does not request a trial by jury.

#### b) Mr. Jenkins's Position

Neither party has a right to a jury trial in this matter. The statute provides for disgorgement, which is an equitable remedy to be determined by the Court.

### 16. Estimated Length of Trial

#### a) The Commission's Position

In the event the Commission is not successful on its anticipated early motion for summary judgment, and is required to prove the underlying elements to its Section 304 claim based on the testimony and admissions of those most involved in that misconduct, the Commission estimates that the length of the trial could be up six (6) to eight (8) weeks.

#### b) Mr. Jenkins' Position

Mr. Jenkins estimates trial would take two weeks. The Commission's estimate of eight weeks is excessive, as it is the same projection the Commission has given in connection with the *Fraser* trial. Mr. Jenkins' case sets forth a single cause of action, involves a single defendant, and would be a bench trial. The *Fraser* trial involves seven different causes of action, three different defendants and will be before a jury. There is no reason to believe that this case would take as long as the Commission expects the *Fraser* trial to take.

### 17. Prospects for Settlement

#### a) The Commission's Position

During the conference of the parties, the Commission raised with Mr. Jenkins' counsel the potential prospects for an early settlement in the action, in light of this Court's Order denying Mr. Jenkins' motion to dismiss the complaint. Based on that discussion, the Commission does not believe settlement is likely.

#### b) Mr. Jenkins' Position

Mr. Jenkins believes that settlement discussions would be appropriate after the Commission responds to the discovery he has served.

### 18. Other Matters

The parties are not aware of any other matters that would be relevant to the case management order.

Dated: July 23, 2010          SECURITIES AND EXCHANGECOMMISSION

/s/ Donald W. Searles  
Donald W. Searles  
C. Dabney O'Riordan  
5670 Wilshire Boulevard, 11th Floor  
Los Angeles, CA 90036  
Telephone: (323) 965-3998  
Facsimile: (323) 965-3908  
Attorneys for Plaintiff  
Securities and Exchange Commission

Dated: July 23, 2010          MUNGER, TOLLES AND OLSON LLP

/s/John W. Spiegel  
John W. Spiegel  
355 South Grand Avenue, 35th Floor  
Los Angeles, CA 90071-9100  
Telephone: (213) 683-9100  
Facsimile: (213) 687-3702  
Attorneys for Defendant  
Maynard L. Jenkins