1  DONALD W. SEARLES, California Bar No. 135705
   E-mail: searlesd@sec.gov
2  C. DABNEY O'RIORDAN, California Bar No. 205158
   E-mail: oriordand@sec.gov
3
   Attorneys for Plaintiff
4  Securities and Exchange Commission
   Rosalind R. Tyson, Regional Director
5  Michele Wein Layne, Associate Regional Director
   John M. McCoy III, Associate Regional Director
6  5670 Wilshire Boulevard, 11th Floor
   Los Angeles, California 90036-3648
7  Telephone:  (323) 965-3998
   Facsimile:   (323) 965-3908

8

9                       **UNITED STATES DISTRICT COURT**

10                              **DISTRICT OF ARIZONA**

11

| SECURITIES AND EXCHANGE COMMISSION, | Case No. CV-09-01510-PHX-GMS |
|---|---|
| Plaintiff, | **PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S SUPPLEMENTAL SEPARATE STATEMENT OF MATERIAL FACTS IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANT MAYNARD L. JENKINS** |
| vs. | |
| MAYNARD L. JENKINS, | |
| Defendant. | |
| | Date:    December 10, 2010
Time:   9:00 a.m.
Place:   Courtroom 602
         (Hon. G. Murray Snow) |

Plaintiff Securities and Exchange Commission ("Commission") files this Supplemental Statement of Material Facts in support of its Motion for Partial Summary Judgment against Maynard L. Jenkins ("Jenkins"), pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1.

As argued in its reply to Jenkins' opposition to the Commission's motion for partial summary judgment, it is the Commission's position that the Declaration of Peter A. Solomon in Support of Opposition of Defendant Maynard L. Jenkins to the SEC's Motion for Partial Summary Judgment should be ignored and ruled inadmissible, in part, because is it based on an incomplete and highly selective review of portions of certain testimonies taken by the Commission.  *See* Commission's Reply to Jenkins' Opposition to Plaintiff's Motion for Partial Summary Judgment, pp. 6-8.  Set forth below are counter-designated portions of the same testimonies that Mr. Solomon purported to rely upon, in which the witnesses are questioned on their reaction to having been informed of the results of CSK's Audit Committee-led investigation.  Curiously, Mr. Solomon does not make reference to those portions of the witnesses' testimony and, from his ambiguously worded declaration, it is not clear whether he ever reviewed those portions of the witnesses' testimony.   In addition, the Commission presents to the Court the lengthy FBI-302 report which summarizes the disclosures made by CSK's outside counsel to the U.S. Department of Justice, the F.B.I, the I.R.S. and the U.S Postal Service, which details the findings and supporting documents of CSK's Audit Committee-led investigation.  Supplemental Declaration of Donald Searles ISO of Plaintiff's Motion for Partial Summary Judgment ("Supp. Searles Decl.); Ex. 29.  Mr. Solomon did not review this document, or any of the underlying documents referenced therein, further undermining the support for the conclusions presented in his declaration.

I.     **TESTIMONY OF ALAN AUGENSTEIN**

1.     Al Augenstein was the PwC engagement partner on CSK Auto, Corp. Supp. Searles Decl., Ex. 20 (R.T. 12/02/2007, p.  24:21-23).  Based on his meetings with representatives of CSK Audit Committee-led investigation, and his review of documents

provided to CSK's Board of Directors to explain the result of the internal investigation, it became obvious to Mr. Augenstein that CSK's employees "were not telling us everything they knew" and "were actually modifying documents to give to us." Supp. Searles Decl., Ex. 21 (RT 12/05/2007, p. 308:21-25). Mr. Augenstein further testified that based on the results of the internal investigation several CSK employees, including but not limited to Don Watson, had lied to PwC. *Id.*, pp. 309-319.

## II.   TESTIMONY OF TERILYN HENDERSON

2. Terilyn Henderson was a member of CSK's Board of Directors. Supp. Searles Decl., Ex. 22 (R.T. 11/29/2007, p. 16:21-17:5). As a result of CSK's Audit Committee-led investigation she learned that CSK was paying back vendors for amounts that it had previously collected as part of CSK's LWT program. *Id.*, p. 66:1-16. She also learned that CSK was moving funds from one LWT program year to another LWT program year to close out the LWT account receivable, which was "wrong," "unacceptable," a "violation of GAAP" and "lying." *Id.*, pp. 183:1- 184:1. Furthermore, as a result of CSK's Audit Committee-led investigation, CSK's Board decided to terminate the employment of Don Watson, Ed O'Brien, Martin Fraser, and Gary Opper, among others, and that Maynard Jenkins should retire. *Id.*, pp. 209:1-25

## III.   TESTIMONY OF ARTHUR LEIBOWITZ

3. Arthur Leibowitz was PwC's concurring partner on the CSK engagement. Supp. Searles Decl., Ex. 23 (R.T. 01/11/2008, pp. 26, 29:10-23). Mr. Leibowitz testified that he was "appalled" by the results of CSK's Audit Committee-led investigation and that PwC had been "lied to" by Don Watson and Ed O'Brien. *Id.*, pp. 173:10-174:11; 175:3-11; 176:10-25; 177:23-178:14.

## IV.   TESTIMONY OF CHARLES PHILIPPIN

4. Charles Philippin was a member of CSK's Board of Directors. As result of the CSK's Audit Committee-led investigation, the Board terminated the employment of Martin Fraser, Don Watson, Ed O'Brien, Gary Opper and others. Supp. Searles Decl., Ex. 24 (R.T. 12/06/2007, p. 561:15). Mr. Philippin further explained the basis for the

2

1 Board's employment decisions, stating that Don Watson failed to report things that
2 happened to the Audit Committee and the Board, and that Ed O'Brien authorized
3 inappropriate adjustments and entries in CSK's books and records and had made
4 misrepresentations to him in connection with a self-assessment following CSK's first
5 restatement.  *Id*., pp. 564:20-566:3.

## V. TESTIMONY OF RYAN SWINCICKI

6. Ryan Swicicki was a member of PwC's engagement team on CSK Auto. Upon learning the results of CSK's Audit Committee-led investigation, Mr. Swincicki stated that he was "shocked" and "disappointed."  Supp. Searles Decl., Ex. 25 (R.T. 10/16/2007, pp. 630:6-631:16).   Specifically, Mr. Swicicki stated that he believed that PwC had been misled by Don Watson, Martin Fraser, Ed O'Brien and Gary Opper, and explained the basis for his opinion.  *Id*., pp. 632-658.

## VI. TESTIMONY OF RANDY VALLEN

6. Randy Vallen was a member of PwC's engagement team on CSK Auto. Based on the results of CSK's Audit Committee-led investigation, Mr. Vallen believed he had been lied to by Don Watson and Andy Stevens, and explained the basis for his opinion.  Supp. Searles Decl., Ex. 26 (R.T. 10/31/2007, pp. 234:7-237:8; 240:11-244:11).

Dated:  November 12, 2010                    Respectfully submitted,

/s/ Donald W. Searles
Donald W. Searles
Attorney for Plaintiff
Securities and Exchange Commission

3

**PROOF OF SERVICE**

I am over the age of 18 years and not a party to this action.  My business address is:

[X]    U.S. SECURITIES AND EXCHANGE COMMISSION, 5670 Wilshire Boulevard, 11th Floor, Los Angeles, California 90036-3648

Telephone No. (323) 965-3998; Facsimile No. (323) 965-3908.

On November 12, 2010, I caused to be served the document entitled **PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S SUPPLEMENTAL SEPARATE STATEMENT OF MATERIAL FACTS IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANT MAYNARD L. JENKINS** on all the parties to this action addressed as stated on the attached service list:

[ ]    **OFFICE MAIL:**  By placing in sealed envelope(s), which I placed for collection and mailing today following ordinary business practices.  I am readily familiar with this agency's practice for collection and processing of correspondence for mailing; such correspondence would be deposited with the U.S. Postal Service on the same day in the ordinary course of business.

   [ ]    **PERSONAL DEPOSIT IN MAIL:**  By placing in sealed envelope(s), which I personally deposited with the U.S. Postal Service.  Each such envelope was deposited with the U.S. Postal Service at Los Angeles, California, with first class postage thereon fully prepaid.

   [ ]    **EXPRESS U.S. MAIL:**  Each such envelope was deposited in a facility regularly maintained at the U.S. Postal Service for receipt of Express Mail at Los Angeles, California, with Express Mail postage paid.

[ ]    **HAND DELIVERY:**  I caused to be hand delivered each such envelope to the office of the addressee as stated on the attached service list.

[ ]    **UNITED PARCEL SERVICE:**  By placing in sealed envelope(s) designated by United Parcel Service ("UPS") with delivery fees paid or provided for, which I deposited in a facility regularly maintained by UPS or delivered to a UPS courier, at Los Angeles, California.

[ ]    **ELECTRONIC MAIL:**  By transmitting the document by electronic mail to the electronic mail address as stated on the attached service list.

[X]    **E-FILING:**  By causing the document to be electronically filed via the Court's CM/ECF system, which effects electronic service on counsel who are registered with the CM/ECF system.

[ ]    **FAX:**  By transmitting the document by facsimile transmission.  The transmission was reported as complete and without error.

I declare under penalty of perjury that the foregoing is true and correct.

Date:  November 12, 2010          /s/ Donald W. Searles
                                  Donald W. Searles

4

**SEC v. Maynard L. Jenkins**
**United States District Court - District of Arizona**
**Case No. 2:09-cv-01510-JWS**
**(LA-3305)**

SERVICE LIST

John W. Spiegel, Esq. **(served via CM/ECF only)**
Jenny M. Jiang, Esq. **(served via CM/ECF only)**
Munger, Tolles & Olson LLP
355 South Grand Avenue, 35th Floor
Los Angeles, CA 90071-1560
Email:  john.spiegel@mto.com
Email:  jenny.jiang@mto.com
***Attorneys to Defendant Maynard L. Jenkins***