1   DONALD W. SEARLES, California Bar No. 135705
    E-mail: searlesd@sec.gov
2   C. DABNEY O'RIORDAN, California Bar No. 205158
    E-mail: oriordand@sec.gov
3
    Attorneys for Plaintiff
4   Securities and Exchange Commission
    Rosalind R. Tyson, Regional Director
5   Michele Wein Layne, Associate Regional Director
    John M. McCoy III, Associate Regional Director
6   5670 Wilshire Boulevard, 11th Floor
    Los Angeles, California 90036-3648
7   Telephone:    (323) 965-3998
    Facsimile:    (323) 965-3908
8

9                   **UNITED STATES DISTRICT COURT**

10                        **DISTRICT OF ARIZONA**

11

12  SECURITIES AND EXCHANGE         Case No. CV-09-01510-PHX-GMS
    COMMISSION,
13                                  **PLAINTIFF SECURITIES AND**
                  Plaintiff,        **EXCHANGE COMMISSION'S**
14        vs.                       **OBJECTIONS TO DEFENDANT**
                                    **MAYNARD L. JENKINS'S RESPONDING**
15  MAYNARD L. JENKINS,             **SEPARATE STATEMENT OF**
                                    **MATERIAL FACTS**
16                Defendant.
                                    Date:        December 10, 2010
17                                  Time:        9:00 a.m.
                                    Place:       Courtroom 602
18                                               (Hon. G. Murray Snow)

19

20

21

22

23

24

25

26

27

28

I.    **COMMISSION'S OBJECTIONS TO DEFENDANT'S SEPARATE STATEMENT OF MATERIAL FACTS.**

   a.  **Paragraphs 54 - 74.**

   Jenkins's additional "facts" set forth in paragraphs 54 to 74 do not create any material facts sufficient to defeat the Commission's motion for partial summary judgment.  First of all, the lay opinion testimony by CSK's independent auditors (*e.g.,* Mssrs. Augenstein, Vallen, Swincicki, Leibowitz) or by members of CSK's Board of Directors (*e.g.,* Mr. Philipin, Ms. Henderson) that CSK's vendor allowance contracts were "complex" and the accounting for them was "cumbersome" is not admissible testimony under Fed. R. Evid. 701 as their opinions: (a) are not rationally based on the perception of the witnesses, as they were not responsible for CSK's drafting or accounting for its vendor allowance contracts; and (b) are not helpful to a clear understanding of the witnesses' testimony or the determination of a fact in issue.

   Indeed, as set forth in the Commission's Supplemental Statement of Material Facts, each of the witnesses identified by Jenkins in his Separate Statement of Material Facts who were  questioned about their reaction to CSK's Audit Committee-led investigation stated that they were "shocked" and "appalled," or words to that effect, and concluded -- as Jenkins himself concluded (PSSF ¶¶ 28-46) -- that members of CSK's finance department, including but not limited to Don Watson, Martin Fraser, Ed O'Brien and Gary Opper had lied to them, had concealed relevant and material information from them, had manufactured documents for presentation to PwC and CSK's Board of Directors, and were terminated as result.  *See* Plaintiff Securities and Exchange Commission's Supplemental Separate Statement of Material Facts in Support of Motion for Partial Summary Judgment Against Defendant Maynard L. Jenkins, ¶¶ 1-6; Supplement Declaration of Donald W. Searles ISO Plaintiff Securities and Exchange Commission's Motion for Partial Summary Judgment, Exs. 20-26.

   Furthermore, the fact that those witnesses once held the opinion that CSK's first restatement was a result of errors in estimation, or otherwise attributable to the

1

1   complexity of CSK's LWT program or to the lack of sophistication among CSK's

2   accounting personnel, is irrelevant in light of the facts developed by CSK's year-long $26

3   million Audit Committee-led investigation, which led to CSK's second restatement.

4   Notably, Jenkins does not cite to any portion of the witnesses' testimonies as to why CSK

5   was required to make a second restatement.  The Commission has, and those portions of

6   their testimony reveal a single and conclusive fact:  CSK's employees were not inept;

7   rather, they engaged in intentional accounting fraud and lied to PwC and CSK's Board of

8   Directors in an effort to conceal their misconduct.

9        **b.  Paragraphs 75 - 101**

10           Paragraphs 71 to 101 of Jenkins' Statement of Additional Facts all rest on the

11   declaration of Peter Solomon.  Mr. Solomon, a specialist in forensic accounting,

12   conducted a cursory review of only a portion of the available evidence in this matter.  By

13   his own admission, he reviewed only "portions" of selected witnesses' testimony before

14   the Commission, provided to him by Jenkins' counsel.  It is unclear from his declaration

15   whether he, or Jenkins' counsel, selected what "portions" to review.  What is clear,

16   however, is that Mr. Solomon did not conduct a complete review of the available

17   evidence and it appears that he was carefully insulated from the some of the most

18   damning evidence in this case, such as Mr. Jenkins' own testimony (*see* PSSF ¶ 28-46),

19   the lengthy FBI-302 report summarizing the Company's disclosures of the results of its

20   internal investigation to the Department of Justice, the F.B.I, the I.R.S. and the U.S.

21   Postal Service (Supp. Searles Decl., Ex. 29); the thousands of business records, e-mail

22   communications and other documents specifically identified by CSK's Audit Committee-

23   led investigation in support of its findings; CSK's Wells submission (Searles Decl., Ex.

24   11); and Opper's and O'Brien guilty pleas in the parallel criminal case (Searles Decl., Ex.

25   12-15).  Furthermore, it appears that the portions of the testimonies that Mr. Solomon did

26   review were carefully excised to remove the portions of the witnesses' testimony where

27   they were apprised of the results of CSK's internal investigation, and the fact that they

28   believed, as Jenkins believed (*see* PSSF ¶ 45), that Mr. Watson and other members of

2

1    senior management had lied to them and had deceived the CSK's Audit Committee and

2    independent auditors about the nature and extent of their multi-year accounting fraud.

3    *See* Supp. Searles Decl., ¶¶ 2-8, Exs. 20-26.  In short, Mr. Solomon's highly selective and

4    incomplete review of the evidence in this case is a meaningless exercise that does not

5    create any triable issue of fact.  *See, e.g, DeJager Construction, Inc., v. Schleninger*, 938

6    F. Supp. 446, 449 (W.D. Mich. 1996) (an expert may not simply assemble favorable facts

7    from the record and conclude that liability does or does not exist); *Benhabib v. Hughes*

8    *Electronics Corp.*, 2006 U.S. Dist. LEXIS 97109, *5 (C.D. Cal. Sept. 6, 2006)

9    (precluding expert testimony that are merely the witness' own assessment of the facts).

10          More fundamentally, Mr. Solomon is attempting to supplant his so-called expert

11    opinion for that of CSK's management in answering the question of why CSK decided to

12    issue its second restatement.  That Mr. Solomon is unable to conclude, based on his

13    abbreviated review of the evidence, that CSK's second restatement was the result of

14    fraud, recklessness or even negligence is simply irrelevant and not helpful to the Court.

15    *See United States v. Scop*, 846 F.2d 135, 139-142, *modified*, 856 F.2d 5 (2d Cir. 1988)

16    (trial court erred in permitting a Commission investigator with no personal knowledge of

17    the facts to characterize the defendant's conduct as fraudulent; finding the witness'

18    assessment of the testimony and credibility of other witnesses encroached upon the

19    exclusive province of the jury in weighing witness credibility);  *Hygh v. Jacobs*, 961 F.2d

20    359 (2d Cir. 1992) (expert's opinion that arresting officer's conduct was not "justified

21    under the circumstances" required exclusion as an improper legal conclusion); *Conde v.*

22    *Velsicol Chemical Corp.*, 804 F. Supp. 972, 984 (S.D. Ohio) ("where an expert becomes

23    an advocate for a cause, he therefore departs from the ranks of an objective witness, and

24    any resulting testimony would be unfairly prejudicial and misleading.") (quotations

25    omitted);  *Dubria v. Smith*, 197 F.3d 390, 400 (9th Cir. 1999) (a witness may not give

26    direct opinion as to guilt or innocence); *United States v. Lockett*, 919 F.2d 585, 590 (9th

27    Cir. 1990) (same).  *See also Kidder, Peabody & Co., Inc., v. IAG Internationals*

28    *Acceptance Group, N.V.*, 14 F. Supp. 2d 391, 399 (S.D.N.Y. 1998) ("[w]hen an expert

3

1    undertakes to tell the jury what result to reach, this does not aid the jury in making a

2    decision, but rather attempts to substitute the expert's judgment for the jury") (*quoting*

3    *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994)).

4         Accordingly, Mr. Solomon's declaration should be ignored, and those portions of

5    Jenkins' Separate Statement of Materials Facts which regurgitate Mr. Solomon's

6    declaration should be ruled inadmissible.

7         **c.   Paragraphs 102 – 114.**

8         The Commission has no objection to Professor Holder's recitation of what AU §

9    316, SAS Nos. 53, 82, or 99 provide.  His deconstruction of the relevant accounting

10   literature, however, begs the question of what CSK and Jenkins intended to convey when

11   they used the phrase "errors and irregularities" in CSK's 2005 Form 10-K to refer to the

12   findings of the company's  internal investigation.  As Professor Holder concedes, the

13   phrase "irregularities" is only used in AU 316 and SAS 53, which, under those

14   pronouncements, refers to *intentional* misstatements, *i.e.*, management fraud.  The fact

15   that the term "irregularities" has been replaced in the AICPA Professional Standards

16   ("AU") and the Auditing Standard Boards Statement on Auditing Standards ("SAS") by

17   the word "fraud" hardly means that the CSK's choice of the word "irregularities" is

18   devoid of meaning.  *See Communications Workers of America v. CSK Auto Corp.*, 525 F.

19   Supp. 2d 1116, 1122, 1124 (D. Ariz. 2007) ("more than financial bungling occurred at

20   CSK.  The 10-K and press releases make clear that "irregularities" – intentional

21   misstatements – occurred.").[1]

22        In any event, any doubt concerning CSK's use of the phrase "irregularities" is put

23

24   _____

     [1] As noted in the Commission's memorandum of points and authorities in support of its
25   motion for partial summary judgment, other courts have continued to find that the term
     "errors and irregularities" refers to management fraud, notwithstanding the fact that AU
26   316 and SAS 53 have been superseded.  *See* Plaintiff's MPA, p. 9. See also *The Financial
     Numbers Game – Detecting Creative Accounting Practices*,  p. 49 (Mumford, Charles W.
27   and Comisky, Eugene, John Wiley & Sons, Inc, New York, N.Y. (2002) ("[today the two
     terms *accounting irregularities* and *fraudulent financial reporting* tend to be used
28   interchangeably").  That book can be viewed online at Google Books.

1   to rest by CSK's robust disclosures in its 2005 Form 10-K, and by Jenkins' testimony

2   before the Commission, where each of them admitted that CSK's internal investigation

3   had revealed intentional accounting misconduct by management.  PSSF ¶ 10, Searles

4   Decl., Ex. 6.

5

6   Dated:  November 12, 2010                    Respectfully submitted,

7

8                                               /s/ Donald W. Searles

9                                               Donald W. Searles
                                                Attorney for Plaintiff
10                                              Securities and Exchange Commission

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **PROOF OF SERVICE**

I am over the age of 18 years and not a party to this action.  My business address is:

[X]     U.S. SECURITIES AND EXCHANGE COMMISSION, 5670 Wilshire Boulevard, 11th Floor, Los Angeles, California 90036-3648

Telephone No. (323) 965-3998; Facsimile No. (323) 965-3908.

On November 12, 2010, I caused to be served the document entitled **PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S OBJECTIONS TO DEFENDANT MAYNARD L. JENKINS'S RESPONDING SEPARATE STATEMENT OF MATERIAL FACTS** on all the parties to this action addressed as stated on the attached service list:

[ ]     **OFFICE MAIL:**  By placing in sealed envelope(s), which I placed for collection and mailing today following ordinary business practices.  I am readily familiar with this agency's practice for collection and processing of correspondence for mailing; such correspondence would be deposited with the U.S. Postal Service on the same day in the ordinary course of business.

        [ ]     **PERSONAL DEPOSIT IN MAIL:**  By placing in sealed envelope(s), which I personally deposited with the U.S. Postal Service.  Each such envelope was deposited with the U.S. Postal Service at Los Angeles, California, with first class postage thereon fully prepaid.

        [ ]     **EXPRESS U.S. MAIL:**  Each such envelope was deposited in a facility regularly maintained at the U.S. Postal Service for receipt of Express Mail at Los Angeles, California, with Express Mail postage paid.

[ ]     **HAND DELIVERY:**  I caused to be hand delivered each such envelope to the office of the addressee as stated on the attached service list.

[ ]     **UNITED PARCEL SERVICE:**  By placing in sealed envelope(s) designated by United Parcel Service ("UPS") with delivery fees paid or provided for, which I deposited in a facility regularly maintained by UPS or delivered to a UPS courier, at Los Angeles, California.

[ ]     **ELECTRONIC MAIL:**  By transmitting the document by electronic mail to the electronic mail address as stated on the attached service list.

[X]     **E-FILING:**  By causing the document to be electronically filed via the Court's CM/ECF system, which effects electronic service on counsel who are registered with the CM/ECF system.

[ ]     **FAX:**  By transmitting the document by facsimile transmission.  The transmission was reported as complete and without error.

I declare under penalty of perjury that the foregoing is true and correct.

Date: <u>November 12, 2010</u>          <u>/s/ Donald W. Searles</u>
Donald W. Searles

**SEC v. Maynard L. Jenkins**
**United States District Court - District of Arizona**
**Case No. 2:09-cv-01510-JWS**
**(LA-3305)**

SERVICE LIST

John W. Spiegel, Esq. **(served via CM/ECF only)**
Jenny M. Jiang, Esq. **(served via CM/ECF only)**
Munger, Tolles & Olson LLP
355 South Grand Avenue, 35th Floor
Los Angeles, CA 90071-1560
Email:  john.spiegel@mto.com
Email:  jenny.jiang@mto.com
*Attorneys to Defendant Maynard L. Jenkins*