DENNIS K. BURKE
United States Attorney
District of Arizona

DENIS J. MCINERNY
United States Department of Justice
Chief
Criminal Division, Fraud Section

PATRICK F. STOKES (Maryland Bar Member)
Deputy Chief, Fraud Section
JENNIFER R. TAYLOR (DC Bar # 497349)
ANDREW H. WARREN (DC Bar # 503003)
Trial Attorneys, Fraud Section
United States Department of Justice
Criminal Division, Fraud Section
1400 New York Ave NW
Washington, DC 20005
Telephone:  202-305-4232/3611/4002
Email:   Patrick.Stokes2@usdoj.gov
             Jennifer.Taylor3@usdoj.gov
             Andrew.Warren@usdoj.gov

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>    Plaintiff,<br>v.<br><br>DON W. WATSON, et al.,<br><br>    Defendants. | Case No. CV 09-443-PHX-GMS<br><br>**UNITED STATES' MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO STAY CERTAIN DEPOSITIONS PENDING CRIMINAL DISPOSITION** |
| SECURITIES AND EXCHANGE COMMISSION,<br><br>    Plaintiff,<br>v.<br><br>MAYNARD L. JENKINS,<br><br>    Defendant. | Case No. CV-09-01510-PHX-GMS<br><br>**UNITED STATES' MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO INTERVENE AND TO STAY CERTAIN DEPOSITIONS PENDING CRIMINAL DISPOSITION** |

The United States of America, through undersigned counsel, hereby moves this Court for a limited stay of discovery in the above-captioned cases. Specifically, the United States requests that the Court permit it to intervene in *SEC v. Jenkins* (Case No. CV-09-01510-PHX-GMS) and issue a protective order staying the depositions of certain witnesses in *SEC v. Jenkins* and *SEC v. Watson, et al.* (Case No. CV-09-443-PHX-GMS) until disposition of the related criminal case, *United States v. Watson* (Case No. CR-09-372-PHX-SRB).

I. **Background**

As the Court is aware, there is substantial overlap in the allegations in the civil and criminal cases. The allegations underlying both the civil and criminal cases involve a program through which CSK Auto Corporation ("CSK") obtained allowances from its vendors that decreased CSK's cost of goods sold and, as a result, increased the company's pre-tax income. Additionally, *SEC v. Watson, et al,.* and *United States v. Watson* allege that Watson and his co-conspirators participated in the preparation and filing of false financial statements and misled CSK's independent auditor.

Shortly after the indictment was returned on April 15, 2009, the United States moved to intervene and stay discovery proceedings in *SEC v. Watson, et al.*, pending disposition of the criminal matter. (Watson Dkt. #24.)  Watson filed an opposition on May 5, 2009, principally arguing that a stay would impair his interest in speedy resolution of the civil case and would interfere with his ability to clear his name and reputation. (*See, e.g.,* Watson Dkt. #34, Opp., at 1 ("[T]he United States, with the cooperation of the SEC, seeks to put this case into a deep freeze and prevent Mr. Watson from defending himself against the SEC's charges."))

The Court denied the United States' motion for a complete stay of the civil proceeding on June 1, 2009. (Watson Dkt. #47.)  The Court noted throughout its order that generalized arguments of harm to the criminal process was insufficient to warrant a *complete* stay of the civil proceedings. The Court determined that a complete stay would create a "very real hardship" on the defendants and would "substantially prejudice the

1  Defendants' interest in the speedy resolution of the SEC's claims against them." (Watson
2  Dkt. #47, 6/1/09 Order, at 7.) The Court stated that the preferred course would be for the
3  United States to seek limited measures when appropriate so the court may "'in lieu of a
4  general stay, impose protective orders, seal interrogatories, impose a stay for a finite
5  period of time, or limit a stay to a particular subject matter." (Watson Dkt. #47, 6/1/09
6  Order, at 7.)

7      Twenty months have passed since Watson argued that a stay in the civil
8  proceeding would obstruct his ability to clear his name and speedily resolve the SEC civil
9  action. During those twenty months, Watson requested that trial in the criminal matter be
10 pushed to twenty-six months after indictment. Watson did not request a trial date in the
11 civil matter. Watson expressly agreed to a scheduling order that puts trial in the civil
12 matter years after the currently scheduled criminal trial. That is, Watson requested that
13 the criminal trial commence in June 2011 and agreed that dispositive motions in the civil
14 case be submitted in March 2012, nearly nine months after the criminal trial. No
15 scheduling order has been issued in the case against Jenkins.

16     Watson was deposed by the SEC in December 2010. Since that deposition,
17 Watson and Jenkins have served deposition notices on several of the United States'
18 cooperating witnesses in the criminal case, as well as witnesses who already testified at
19 length before the SEC. (Watson Dkt. #s161-68; Jenkins Dkt. #s 85-87.) These witnesses
20 include Aimee Hudson, J. Scott Neff, Paul Sundin, Stephen Lewis, Andrew Stevens,
21 Roger Weiss, Dale Ward, and Michael Thompson. The United States has made available
22 to Watson's criminal counsel witness interview memoranda for Neff, Sundin, and Lewis.
23 Presumably, Watson's criminal counsel has shared with Watson's civil counsel the notes
24 from that review.

25     Hudson is a key witness in the criminal case. Hudson advised on January 4, 2011
26 that she intends to assert her Fifth Amendment right against self-incrimination during the
27 deposition that is scheduled for January 11, 2011. Counsel for Watson advised that
28

1  Hudson's deposition will still occur on January 11, 2011, and the SEC filed a motion for
2  a protective order staying that deposition on January 5, 2011 (Watson Dkt. #169).[1]
3        The United States submits this memorandum in support of its motion to intervene
4  in *SEC v. Jenkins* and in support of its limited motion to stay depositions in *SEC v.*
5  *Jenkins* and *SEC v. Watson*. The United States' request is narrow and limited. The
6  United States is not seeking a stay of all depositions, nor is it seeking a stay of document
7  discovery. While the United States has serious concerns about depositions of any
8  government witness in a criminal trial, the United States has narrowed its request to those
9  witnesses it deems most critical. Accordingly, the United States requests that the Court
10 stay the depositions of J. Scott Neff, Paul Sundin, Andrew Stevens, Dale Ward, and
11 Michael Thompson. As explained below, permitting these depositions to occur will
12 substantially impede the criminal prosecution of Watson and prejudice the United States.

13 **II.   Intervention in *SEC v. Maynard Jenkins* is Appropriate.**

14       Rule 24 of the Federal Rules of Civil Procedure provides that a party may
15 intervene in a civil action as a matter of right or on a permissive basis. Either avenue
16 justifies invention by the United States.

17       Federal Rule of Civil Procedure 24(a) provides that a person may intervene as of
18 right when the applicant:

19
20      Claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.
21

22 Fed. R. Civ. P. 24(a).

23       Intervention is appropriate under this section if the application is timely, the party
24 has an interest in the transaction, the action may impede the party's ability to protect that
25 interest, and the party's interests are not adequately represented in the action. *See Fresno*
26 *County v. Andrus*, 622 F.3d 436, 438 (9th Cir. 1980); *Cascade Natural Gas Co. v. El*
27 *Paso Natural Gas Co.,* 386 U.S. 129, 132-36 (1967)(permitting State of California to
28

---

[1] The Court has apparently agreed to a telephonic hearing on the SEC's motion on Friday, January 7, 2011.

3

1 intervene under Rule 24(a) in antitrust case to protect state's "interest" in promoting competition in California).

In addition, a court may permit intervention "when an applicant's claim or defense and the main action have a question of law or fact in common." Fed. R. Civ. P. 24(b)(2). In order to intervene under this section, the government must establish that there is a common question, and independent ground for jurisdiction, and timely motion. If these conditions are met, then intervention is within the sound discretion of the trial court. In exercising its discretion, the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties, and whether the interests of the proposed intervener are adequately represented by the existing parties. *See, e.g., Beckman Indus. Inc. v. International Ins. Co.,* 966 F.2d 470, 472-74 (9th Cir. 1992); *Bureerong v. Uvawas,* 167 F.R.D. 83, 85-86 (C.D. Cal. 1996)(permitting the government to intervene pursuant to Rule 24(b)(2) for the purpose of staying civil discovery pending conclusion of a related criminal trial).

Courts regularly recognize that federal prosecutors have the highest interest in intervening in a civil action in order to represent the United States and to secure criminal convictions in a criminal case. *See SEC v. Chestman,* 861 F.2d 49, 50 (2d Cir. 1988)(government intervention to seek stay of civil discovery in SEC action pending completion of a criminal investigation involving the same underlying facts was not abuse of discretion under either Rule 24(a) or Rule 24(b)); *SEC v. Downe*, 1993 WL 22126, *1, **11 (S.D.N.Y. 1993)(unpublished)("It is well established that the United States Attorney may intervene in a federal civil action to seek a stay of discovery when there is a parallel criminal proceeding, which is anticipated or already underway, that involves common questions of law or fact.").

The United States may intervene in *SEC v. Jenkins* under either theory of intervention under Rule 24. The United States has an important interest in its ongoing criminal prosecution relating to the fraudulent transactions that form the basis of the misconduct allegations in the case against Jenkins. The United States' interest will be

1  affected in the civil proceeding and is not protected.  The United States ability to
2  prosecute the criminal case against Watson is severely impacted if the discovery process
3  in this case is used as a means to cross-examine the United States' witnesses pre-trial and
4  to obtain a roadmap of the United States' prosecution theories.  *Downe,* 1993 WL 22126,
5  at *12 ("The Court recognizes that a stay of discovery is often necessary where liberal
6  discovery rules will allow a litigant to undermine, or gain an unfair advantage in, a
7  potential criminal prosecution which parallels the subject matter of the civil action.").

8  In addition, questions exist in *SEC v. Jenkins* that are similar to those involved in
9  the ongoing criminal case.  The same alleged fraudulent scheme and transactions are at
10 issue, notably with respect to the conspirators' misconduct pursuant to Section 304 of the
11 Sarbanes Oxley Act.  While Jenkins is not personally accused of misconduct, common
12 questions of fact and law are still at issue, as they relate to the intent and knowledge of
13 various participants in the fraudulent scheme, among other issues.  Many of the
14 percipient witnesses have relevant testimony for both the criminal and civil cases,
15 including former and current CSK employees, CSK vendors, and CSK's independent
16 auditor.  Finally, the United States' motion is timely.  No prejudice to Jenkins will result,
17 as the case is still in discovery.  The Court granted the United States' motion to intervene
18 in *SEC v. Watson, et al*.  For the same reasons, the United States requests that the Court
19 grant its motion to intervene in *SEC v. Jenkins.*

20 **II.    Depositions of Critical Government Witnesses Should Be Stayed Until After
21         the Criminal Trial.**

22 In its order denying the motion to stay in *SEC v. Watson*, the Court concluded that
23 of the various factors courts consider when determining whether a stay is appropriate,[2]

---

[2] In *Keating v. Office of Thrift Supervision,* 45 F.3d 322, 324 (9th Cir. 1995), the Ninth Circuit articulated a balancing test for determining when to stay civil proceedings in the face of simultaneous and parallel criminal proceedings.  Specifically, a court must consider:  (1) the extent to which Fifth Amendment rights are implicated; (2) the interest of the plaintiff in proceeding expeditiously with the litigation or any particular aspect thereof, and the potential prejudice delay would cause to the plaintiff; (3) the burden that any particular aspect of the proceedings may impose on the defendant; (4) the convenience of the court in management of its cases, including the efficient use of judicial resources; (5) the interest of non-parties; and (6) the interest of the public in pending civil and criminal cases.  *See id.*  Due to the Court's determination that the most relevant factors in this matter are speedy resolution of the civil case for the defendant and

1  the "factors most relevant here are Defendants' interest in the speedy resolution of the
2  cases against them and the interest of the Government as intervenor in the prosecution of
3  the parallel criminal case." (Watson Dkt. # 47, 6/1/09 Order, at 4). As fully described
4  below, the balance is in favor of the United States because the depositions at issue will
5  substantially prejudice the United States and impede a criminal prosecution. Further,
6  postponing the depositions to after the criminal trial will have no impact on the
7  defendants' ability to obtain speedy resolution of the civil proceedings.

        **A.  Permitting the depositions to occur will impede the criminal prosecution and will substantially prejudice the United States.**

10  Courts have emphasized repeatedly that parties should not be permitted to use the
11  civil discovery process to subsume or circumvent the more limited discovery permitted in
12  criminal matters. *See Downe*, 1993 WL 22126, *12 (liberal discovery rules in civil
13  litigation may undermine a potential criminal prosecution which parallels the subject
14  matter of the civil action). While Rule 26(b) of Federal Rules of Civil Procedure
15  authorizes broad discovery, Rule 16(a)(2) of the Federal Rules of Criminal Procedure
16  expressly precludes discovery of "reports, memoranda or other internal United States
17  documents [and] statements made by United States witnesses or prospective United
18  States witnesses, except as provided in 18 U.S.C. § 3500." The Jencks Act (Section
19  3500) provides that in criminal cases, the statements of United States witnesses shall not
20  be "the subject of subpoena, discovery, or inspection until said witness has testified on
21  direct examination in the trial of the case." Absent "exceptional circumstances" and a
22  court order, a criminal defendant may not conduct depositions in a criminal case. Fed. R.
23  Crim. P. 15(a).

24  The depositions at issue will allow Watson to avoid well-established criminal
25  procedural rules by doing through the civil process what he cannot do through the
26  criminal process. He can depose and issue subpoenas to the United States' witnesses and

---

28  protection of the United States' interest in the criminal case, the United States' motion focuses on these two factors.

6

1  compel them to testify or produce records, even witnesses who are cooperating with the
2  United States and have criminal exposure.  These depositions provide Watson a dress
3  rehearsal for trial by allowing him to explore the United States' prosecution theories
4  through interrogation of its key witnesses and allowing him to depose critical government
5  witnesses without involvement by prosecutors, oversight by the Court, and observation
6  by the jury who will ultimately decide the facts and determine the credibility of the
7  United States' witnesses.

8  Further, the depositions will obstruct the United States' ability to effectively
9  prepare its witnesses for trial.  *In re WorldCom, Inc. Securities Litigation*, 2004 WL
10 802414, *5 (S.D.N.Y. 2005) (Civil depositions of trial witnesses will "materially increase
11 the burden on the Government of preparing its witnesses for trial and may needlessly
12 complicate the trial and the jury's task.").  Obtaining discovery not allowed in a criminal
13 case will allow Watson's civil lawyers opportunity to try to undermine these witnesses'
14 credibility before they even testify in the criminal case.  Through skillful questioning,
15 defense lawyers will almost certainly attempt to tie these witnesses to word choices and
16 positions that harm the criminal case; they will seek to exploit witness confusion, lack of
17 thorough preparation, or poor memory.

18 During the depositions, witnesses will likely be examined in detail on documents
19 that they have not reviewed in years.  To the extent the United States tries to prepare
20 these witnesses for its own case prior to these depositions, those witnesses would be
21 subject to questioning on the prosecutor's preparation, thus leaving the United States in a
22 position of having to hold off its own trial preparation or having its prosecutions theories
23 revealed in a civil proceeding.  As Watson has had access to most of the United States'
24 witness memoranda, he will also have an opportunity to examine these witnesses on those
25 topics to try to create the appearance of inconsistencies, thus seeking to further
26 undermine these witnesses for the criminal trial.  All of the testimony could be used to
27 impeach the witness during trial piece-meal and out of context, which would distract and
28 confuse a jury in the criminal case.  Moreover, prosecutors cannot attend civil depositions

to protect the United States' interest and make appropriate objections that would be sustained in a criminal trial but permitted in a deposition. This result is overly burdensome to the prosecution, will serve to impede the United States' ability to effectively prepare for a criminal trial, and will needlessly complicate what is already a complicated accounting fraud case.

Depositions are entirely more liberal than testimony in a criminal trial. The stakes for both the United States and the defendant are substantially higher in a criminal case, thereby warranting different and tighter procedural rules. "Whether intentionally or not, these depositions may . . . be used to circumvent the more restrictive discovery rules that apply to criminal cases." *In re WorldCom, Inc. Securities Litigation*, 2004 WL 802414, *5. Allowing Watson such a loose forum to cross-examine and lock-in unprepared trial witnesses substantially prejudices the United States, impedes a criminal prosecution, and is against the public's interest in an effective and fair criminal justice system. Accordingly, the United States requests that the Court grant its limited request to postpone these depositions until after the criminal trial.[3]

## B. Granting a stay of the depositions will not harm the defendants' interest in speedy resolution of the civil proceedings.

In its Order, the Court determined that the balance tipped in favor of the defendants' interest in speedy resolution of the civil proceeding when the United States had provided generalized assertions of prejudice. However, the Court made this decision in June 2009. Circumstances have changed. Since June 2009, Watson has engaged in little activity showing that he seeks speedy resolution of the civil case. In fact, Watson has sought delay rather than speedy resolution. For example, in October 2009, Watson requested and obtained a trial date in the criminal matter for June 2011. While arguing to this Court that he urgently sought to clear his name of wrongdoing in the civil matter, Watson did not request a trial date in the civil matter and expressly agreed to a scheduling order that puts trial in the civil case years after the

---

[3] To be clear, the United States is not seeking a blanket stay of all depositions or a stay of document discovery.

scheduled criminal trial. Dispositive motions are not due in the civil case until March 2012 – nearly ten months after the criminal trial commences. Waiting a few months until resolution of the criminal case will have little impact on any interest Watson has in speedy resolution of the civil matter, particularly when discovery in the civil matter does not close until October 2011.

Jenkins has not been accused of personal misconduct; therefore, his interest in clearing his name is significantly reduced. Further, his legal expenses are covered under the corporate indemnification agreement.

The balance now tips in favor of the United States. As previously addressed, the prejudice to the United States is no longer generalized but is substantial. The witnesses the defendants seek to depose are critical government witnesses who will likely be called during trial. Prosecutors cannot participate in witness preparation or be present during the depositions, even though the subject matter covered will certainly overlap with the witnesses' trial testimony. Taking depositions of key government witnesses prior to the criminal trial, but long before discovery closes in the civil proceedings, serves only one purpose – to give Watson unfair advantage in trial.[4] This unfair advantage can be remedied by postponing these depositions. Based upon the schedule he has agreed to both in the criminal and civil proceedings, postponing the depositions will have no effect on Watson's interest in clearing his name in the civil proceeding. At this point, Jenkins does not have a scheduling order and staying depositions of witnesses relating to misconduct will have no impact on his ability to resolve the civil case against him in a speedy manner.

To the extent that Watson asserts that his decision to testify evidences a good faith interest in clearing his name and moving the civil case forward, that does not resolve the issue

---

[4] Watson's litigation strategy to use the civil process to request production of witness agreements with the Department of Justice and to cross-examine the United States' witnesses is further exposed by his decision to notice individuals who were thoroughly deposed by the SEC and for whom he has already received access to the government's witness memoranda. To the extent that Watson asserts that the depositions are being used as a normal discovery tool, deposing witnesses who have already testified at length undermines that claim. In addition, Watson previously agreed to postpone the depositions of government cooperators who intended to assert their Fifth Amendment rights (Opper and O'Brien) until after the criminal trial. However, Watson is unwilling to do so with Aimee Hudson. The only critical difference between these witnesses is Opper and O'Brien have pleaded guilty and their participation in the fraud is well known at this point. Aimee Hudson has not pleaded guilty and her statements to the government are not discoverable under the criminal discovery rules at this point.

of whether the proposed stay is appropriate.  First, the harm to the government's case is still substantial.  Second, Watson's interest in moving the civil case forward can be achieved with the limited stay being sought by the United States.  The United States has identified a handful of witnesses and expects that Watson and Jenkins intend to notice several more.  The motion only relates to the timing of the depositions– not whether these witnesses can ever be deposed.  It also does not seek limitations on all other depositions the defendants intend to take.  (The United States does not know at this point who Watson and Jenkins intend to depose; once such notices are filed, it will determine whether a motion to stay those depositions is necessary.)  Accordingly, the proposed stay allows Watson and Jenkins the ability to move the civil case forward through document discovery while balancing the interests of the United States.  Unlike the minimal impact on the defendants who would be required to wait a few months to take these depositions, allowing depositions of critical government witnesses in advance of a criminal trial will substantially impair the prosecution and is extremely prejudicial to the United States.

**IV.     Conclusion**

For the foregoing reasons, the United States respectfully requests that the Court grant its motion to intervene in *SEC v. Jenkins* and for an order staying the depositions of J. Scott Neff, Paul Sundin, Andrew Stevens, Dale Ward, and Michael Thompson until resolution of the criminal trial.

DATED:  January 6, 2011                    Respectfully submitted,

DENNIS K. BURKE
United States Attorney

DENIS J. MCINERNY
Chief, Fraud Section

/s/ Patrick F. Stokes
Patrick F. Stokes
Deputy Chief

Jennifer R. Taylor
Andrew H. Warren
Trial Attorneys

United States Department of Justice
Criminal Division, Fraud Section

10

## CERTIFICATE OF COMPLIANCE OF CONSULTATION

This is to certify that the undersigned has consulted with counsel for the defendants. Counsel for Jenkins and Watson have advised that they oppose the United States' Motion. Counsel for Opper and O'Brien have advised that they do not oppose the United States Motion.

*/s/ Patrick F. Stokes*
Patrick F. Stokes
Deputy Chief, Fraud Section

## CERTIFICATE OF SERVICE

This is to certify that a copy of this the United States' Notice of Motion and Motion to Intervene and to Stay Certain Depositions Pending Criminal Disposition has been furnished to counsel of record by filing with ECF.

*/s/ Patrick F. Stokes*
Patrick F. Stokes
Deputy Chief, Fraud Section