1  DONALD W. SEARLES, CALIFORNIA Bar No. 135705
   E-mail:  searlesd@sec.gov
2  C. DABNEY O'RIORDAN, CALIFORNIA Bar No.  205158
   E-mail:  oriordand@sec.gov
3
   Attorneys for Plaintiff Securities and Exchange Commission
4  Rosalind R. Tyson, Regional Director
   Michelle Wein Layne, Associate Regional Director
5  5670 Wilshire Boulevard, 11th Floor
   Los Angeles, California 90036-3648
6  Telephone:  (323) 965-3998
   Facsimile: (323) 965-3908
7

8  JOHN W. SPIEGEL (*Pro Hac Vice*)
   John.Spiegel@mto.com
9  GREGORY J. WEINGART (*Pro Hac Vice*)
   Gregory.Weingart@mto.com
10 MUNGER, TOLLES & OLSON LLP
   355 South Grand Avenue
11 Thirty-Fifth Floor
   Los Angeles, CA  90071-1560
12 Telephone:    (213) 683-9100
   Facsimile:    (213) 687-3702
13
   Attorneys for Defendant
14 Maynard L. Jenkins

15              **UNITED STATES DISTRICT COURT**

16                  **DISTRICT OF ARIZONA**

17 SECURITIES AND EXCHANGE            CASE NO.  CV-09-01510-PHX-GMS
   COMMISSION,
18                                    **JOINT CASE MANAGEMENT
                                      STATEMENT FOR JANUARY 14, 2011
19              Plaintiff,            SCHEDULING CONFERENCE**

20        v.                          Date:  January 14, 2011
                                      Time:  10:00 a.m.____
21 MAYNARD L. JENKINS,                Courtroom:  602
                                      (Hon. G. Murray Snow)
22              Defendant.

23

24

25

26

27

28
   12667783.2

Counsel for Plaintiff Securities and Exchange Commission ("SEC" or the "Commission") and for Defendant Maynard L. Jenkins ("Jenkins" or "Mr. Jenkins") submit this Joint Statement setting forth each party's position for the January 14, 2011 Scheduling Conference.

## I.   **PROCEDURAL STATUS.**

1. SEC Statement.

On November 24, 2010, this Court granted Jenkins' motion for a continuance pursuant to Rule 56(f) of the Federal Rules of Civil Procedure and continued the scheduling conference from December 10, 2010 to January 14, 2011.  On December 17 & 17, 2010 the Commission took the deposition of Don Watson, in *SEC v. Fraser, et al.* CV-09-433 PHX-GMS.  Counsel for Jenkins did not participate in that deposition.  In addition, Jenkins has recently noticed, or cross-noticed in conjunction with Watson, the depositions of eight former CSK employees to occur in January and early February, 2011.

Prior to the filing of the Commission's motion for partial summary judgment, the Commission requested that Jenkins sit for a deposition, to question him on the results of CSK's internal accounting investigation and his understanding of why CSK was required to file its second restatement.  Through his counsel, Jenkins refused to do so, claiming that he had yet to review the voluminous documentary discovery then recently produced by the Commission.  As a result of the Court's November 24, 2010 Order, the Commission has renewed its request to depose Jenkins on all issues, *i.e.*, both misconduct and compensation related issues, and noticed him for deposition on January 7, 2011.  Counsel for Jenkins refused to produce him on that date, citing Jenkins' vacation schedule and the fact that Jenkins had recently propounded documentary discovery requests on both CSK/O'Reilly, and CSK's outside auditors, PwC, that relate to executive compensation issues (as opposed to the underlying accounting misconduct that resulted in CSK's second restatement).  Both CSK/O'Reilly and PwC have filed objections and responses to those discovery requests and the Commission anticipates a protracted period of negotiations and potential motion work regarding Jenkins' discovery requests to CSK/O'Reilly and PwC.

12667783.2

- 2 -

1    Jenkins' counsel refuses to produce Jenkins for deposition until CSK/O'Reilly and

2    PwC have fully complied with Jenkins' discovery requests.  The Commission believes

3    that Jenkins' position is not well founded, as he was not a member of CSK's

4    Compensation Committee and was not involved in establishing his own compensation.

5    Undoubtedly, Jenkins is aware of the general financial performance metrics and personal

6    goals that affected his bonuses, and there is no reason his deposition should be delayed,

7    particularly where there is no reason to believe that Jenkins has ever seen the documents

8    he currently seeks from CSK/O'Reilly.  In addition, those documents are entirely

9    irrelevant to the underlying issue of "misconduct."  Similarly, there is no reason to believe

10   Jenkins has ever seen the documents he currently seeks from PwC, nor do those

11   documents relate to the underlying issue of "misconduct."  As such, there is no reason for

12   Jenkins to refuse to make himself immediately available for a deposition, particularly

13   where his anticipated admissions regarding the results of CSK's internal accounting

14   investigation and his understanding of why CSK was required to file a second restatement

15   will likely moot the need for any additional discovery on the issue of "misconduct."

16   Accordingly, at the Scheduling Conference, the Commission will request the Court's

17   assistance in resolving the dispute between the parties concerning the timing of Jenkins'

18   deposition.  The Commission would also welcome comments from the Court as to what

19   discovery it believes should be conducted prior to ruling on the Commission's partial

20   motion for summary judgment.

21       2.  Mr. Jenkins Statement.

22       <u>Mr. Jenkins' Deposition</u>

23       The SEC states that it seeks to take Mr. Jenkins' deposition both on the issue of

24   "misconduct" and on issues relating to the amount of compensation that Mr. Jenkins

25   should be required to repay if liability were found under Section 304.[1]  Mr. Jenkins is

26   ─────────────
   [1] The SEC previously indicated in September 2010 that it would like to depose Mr.
   Jenkins but then did not press that request, apparently because it was inconsistent with the
27   SEC's assertion that this Court could decide the SEC's motion for partial summary
   judgment based solely on the Second Restatement, the Opper and O'Brien pleas and other
28   documents already in existence.

1   prepared to proceed with his deposition promptly, as soon as the important documents

2   described below relating to the compensation issues in the case have been obtained.

3        As counsel for Mr. Jenkins has explained to the SEC, before Mr. Jenkins should be

4   deposed on issues relating to compensation, he needs first to obtain and have an

5   opportunity to review the compensation-related documents described below that he has

6   subpoenaed from CSK and PwC.  These documents relate to the individual performance

7   goals and other criteria established by CSK for payment of Mr. Jenkins' bonuses and

8   other incentive-based compensation, the factors taken into account by CSK's

9   Compensation Committee in setting the amount of these payments, any effect on Mr.

10   Jenkins' compensation from the restated financials set forth in the First Restatement and

11   the Second Restatement, and communications with Mr. Jenkins on these issues.  They are

12   therefore directly relevant to the issue of the amount of compensation that Mr. Jenkins

13   should be required to repay if liability under Section 304 were found.

14        As this Court stated in its June 9, 2010 Order denying Mr. Jenkins' motion to

15   dismiss, "to the extent that the statute or the remedy sought under it result in a severe and

16   unjustified deprivation to the Defendant, constitutional issues may arise in particular

17   cases." June 9, 2010 Order at 7:18-20.[2]  This Court noted that determination of the

18   amount of reimbursement to which the SEC could be entitled "can only be ascertained

19   through development of the nature of the recovery sought by the SEC against Jenkins in

20   light of the facts of this case."  *Id.* at 7:15-18.  These compensation issues therefore are a

21   critical element of the SEC's case on which Mr. Jenkins should be afforded a fair

22   opportunity to prepare before he is deposed.

23   _____

24   [2] In support of this statement, the Court cited the following cases:  *BMW of N. Am., Inc. v.
Gore*, 517 U.S. 559, 568 (1996) (holding that grossly excessive punitive damage awards

25   violate the Due Process Clause); *United States v. Bajakajian*, 524 U.S. 321, 334 (1998)
(holding that a punitive forfeiture violates the Excessive Fines Clause if it is grossly

26   disproportional to the gravity of the defendant's offense); *S.W. Tel. & Tel. Co. v.*

27   *Danaher*, 238 U.S. 490–91 (1915) (striking down a penalty imposed on a telephone
company for refusing to refusing to provide service where such refusal had never been

28   declared unlawful and was applied impartially).  *Id.* at 7:20-26.

The SEC's assertion above that Mr. Jenkins has "never seen" these compensation-related documents described below that he has subpoenaed from CSK and PwC is without basis, and the SEC does not identify on what ground it makes this assertion. The documents to be produced should include, for example, evidence of the individual "performance goals" for Mr. Jenkins that were established with Mr. Jenkins by CSK's Compensation Committee as one component of his bonus as well as documents evidencing communications between Mr. Jenkins and members of the Compensation Committee on the payment of bonuses to Mr. Jenkins and their amount.

Mr. Jenkins should have the opportunity to review these documents before he is deposed by the SEC, both to the extent that the documents were seen by Mr. Jenkins at the time of the events in question and because Mr. Jenkins' review of these documents is necessary to enable him to refresh his recollection regarding these compensation-related issues from as long as 10 years ago. These documents should also be obtained and reviewed by Mr. Jenkins before he is deposed by the SEC so that the SEC cannot claim that it is entitled to a second deposition of Mr. Jenkins (who is 68 years old and in poor health) in order to examine Mr. Jenkins on these compensation-related documents. Notably, notwithstanding that counsel for Mr. Jenkins previously raised this concern with counsel for the SEC, and that before drafting its portion of this Joint Statement counsel for the SEC saw this concern identified in Mr. Jenkins' portion, the SEC does not state that it will not seek a second deposition of Mr. Jenkins on compensation-related issues.

The SEC cannot claim any prejudice from having to wait to depose Mr. Jenkins on issues relating to alleged "misconduct" (or compensation) until after Mr. Jenkins has obtained these compensation-related documents. During its multi-year investigation the SEC examined Mr. Jenkins under oath for *three* days and, accordingly, *already* knows Mr. Jenkins' testimony on the subjects that the SEC identifies above for his deposition "regarding the results of CSK's internal accounting investigation and his understanding why CSK was required to file a second restatement." The SEC therefore has no pressing need to depose Mr. Jenkins again to know his testimony on the issue of whether there was

12667783.2

- 5 -

1    "misconduct" at CSK.  The SEC also already has submitted Mr. Jenkins' testimony in

2    support of its motion for partial summary judgment and does not need to depose him

3    again for its motion.  Moreover, contrary to the SEC's asserted "anticipat[ion]" stated

4    above, as set forth in Mr. Jenkins' opposition to the SEC's motion, Mr. Jenkins' testimony

5    shows that he is without personal knowledge of the alleged accounting improprieties at

6    CSK and it therefore does not support that there are no triable questions of fact on whether

7    there was "misconduct" at CSK.

8         In sum, given that (i) as set forth below Mr. Jenkins anticipates timely cooperation

9    from CSK in obtaining production of the compensation-related documents and (ii) the

10   SEC still has *months* before there is any fact discovery cut-off or deadline for the filing of

11   dispositive motions, Mr. Jenkins' deposition should be deferred until after he has had an

12   opportunity to obtain and review the compensation-related documents he has subpoenaed

13   from CSK and PwC.

14        SEC's Motion for Partial Summary Judgment.  On September 17, 2010, the SEC

15   filed a motion for partial summary judgment on the issue of whether there was

16   "misconduct" at CSK within the meaning of Section 304 of the Sarbanes-Oxley Act, 17

17   U.S.C. §7234 ("Section 304").

18        On October 29, 2010, Mr. Jenkins filed his opposition to the SEC's motion and

19   also filed a motion under Rule 56(f) of the Federal *Rules of Civil Procedure* for

20   continuance of the SEC's motion on the ground that Mr. Jenkins needs additional

21   discovery on the issue of "misconduct" before the SEC's motion should be heard.

22   Specifically, Mr. Jenkins explained in the Weingart Declaration filed in support of his

23   Rule 56(f) motion that the identical considerations that caused the SEC to request a trial

24   date in this action after Messrs. Watson, Opper and O'Brien are available to testify

25   establish that the SEC's motion should denied, or at least continued, until the testimony of

26   these three individuals can be obtained.  As shown by its summary judgment motion, the

27   SEC's principal arguments of "misconduct" at CSK are based on alleged acts by these

28   individuals, who the SEC describes as "the individuals most involved."  *See also* SEC's

12667783.2                                    - 6 -

1    statement at 6:2-4 and 13:4-7 of Joint Case Management Report filed July 23, 2010 in this

2    action (Messrs. Watson, Opper and O'Brien are "the individuals most involved" in the

3    alleged misconduct).  Mr. Jenkins understands based on the SEC's statements that Messrs.

4    O'Brien and Opper will not be available to testify until after conclusion of Mr. Watson's

5    criminal trial, currently scheduled for June 7, 2011.  Mr. Jenkins further explained in the

6    Weingart Declaration that the SEC's motion should also be denied, or at least continued,

7    because he has not yet had the opportunity to depose the additional individuals employed

8    by CSK who were involved in its vendor allowance program and its accounting for vendor

9    allowances or to depose the PwC auditors who audited CSK's financial statements on the

10   issue of vendor allowances and other issues.

11          On November 12, 2010, the SEC filed its reply in support of its motion for partial

12   summary judgment, without responding to Mr. Jenkins' Rule 56(f) motion.

13          On November 24, 2010, this Court filed its Order granting Mr. Jenkins' Rule 56(f)

14   motion and continuing this Scheduling Conference from December 12, 2010 to January

15   14, 2011.

16          SEC Motion for Protective Order/DOJ Motion for Stay.  During a telephonic

17   conference on January 7, 2011, this Court denied the SEC's motion for a protective order

18   to stay the deposition of Aimee Hudson scheduled for January 11, 2011.  The Court also

19   directed Mr. Jenkins and Mr. Watson to file not later than January 11, 2011, any

20   opposition to the DOJ's motion to intervene in this action and to stay the depositions of  J.

21   Scott Neff, Paul Sundin, Andrew Stevens, Dale Ward and Michael Thompson until

22   resolution Mr. Watson's criminal proceeding.  Further, the Court stayed Mr. Ward's

23   deposition that was scheduled for January 13, 2011.  These depositions are discussed

24   further below.

25   **II.     STATUS OF DISCOVERY.**

26          1.  SEC Statement.

27          To date, the Commission has responded to Jenkins' requests for production of

28   documents; two sets of interrogatories; and requests for admission.  Other than for the

12667783.2                                  - 7 -

1    Commission's recent production of a small set of documents from PwC, which had been

2    inadvertently omitted from the Commission's prior production of electronic documents,

3    there are no current discovery disputes between the parties, other than the timing of

4    Jenkins' deposition.

5         As reflected below, Jenkins contends that Watson, during his deposition, denied

6    any wrongdoing on his part and denied knowledge of any wrongdoing by others.  That is a

7    gross mischaracterization of Watson's testimony.  Rather, when confronted with dozens

8    of incriminating documents establishing his knowledge of the movement of vendor

9    allowance funds across years to cover up uncollectible account receivables, all Watson

10   could state was that he had no recollection of the documents.  In addition, he did not deny

11   wrongdoing by others, he simply claimed he was not aware of it.  Watson further testified

12   that accounting "secrets" (*i.e.,* the movement of LWT funds across years to avoid write

13   offs) had been kept from him and had he known of them at the time, "he would have dealt

14   with those people very harshly."  The following excerpt from the second day of his

15   testimony best describes Watson's position:

16   Q.  BY MR. SEARLES:  If amounts were moved as
18      reflected in this -- do you see on the first
17   19      page of this exhibit, again, a column over to
     20      the right portion of the page off invoice moved
18   21      to '03.  Another column Q2 billbacks moved to
     22      '03.  Do you see those columns?
19   23         A.  Yes.
     24         Q.  Would Mr. -- assuming that that conduct
20   25      took place, do you think Mr. O'Brien or
                                   561
21   1      Mr. Opper would try to keep that conduct a
     2      secret from you?
22   3            MR. ROSHKA:  Objection; form, foundation.
     4      Speculation.  Vague and ambiguous.
23   5            THE WITNESS:  I'm not sure if they would
     6      have or not.
24   7         Q.  BY MR. SEARLES:  Do you think there were
     8      secrets in the finance department that you were
25   9      not advised of regarding the accounting of
     10      LWT?
26   11           MR. ROSHKA:  Object to the form,
     12      foundation.  Vague and ambiguous.
27   13           THE WITNESS:  As I sit here today, I
     14      believe that happened.
28   15         Q.  BY MR. SEARLES:  And what do you believe

12667783.2                              - 8 -

16    was the secret as you sit here today?
17        A.  As I sit here today, in reading some of
18    the documents you did earlier, I don't believe I
19    was told everything that was happening within
20    the department.
21        Q.  Why do you think you were not told?
22        A.  I don't believe I was told specifically
23    everything that was happening.
24        Q.  Do you believe you were told about the
25    movement of funds across years to make up for

562

1    collection shortfalls in prior years?
2        MR. ROSHKA:  Object to the form,
3    foundation.
4        THE WITNESS:  No, I don't believe I
5    was.
6        Q.  BY MR. SEARLES:  Seeing the documents you
7    see here today and yesterday, do you believe
8    that practice in fact occurred?
9        MR. ROSHKA:  Object to the form,
10    foundation.  Calls for speculation.
11        THE WITNESS:  As I sit here today, I
12    don't know if that happened.
13        Q.  BY MR. SEARLES:  This document certainly
14    reflects that it did, didn't it?
15        MR. ROSHKA:  Object to the form,
16    foundation.  Vague and ambiguous.
17        THE WITNESS:  This document has columns
18    on here that indicate stuff was moved.  I don't
19    have knowledge of how they moved it and what
20    they moved.
21        Q.  BY MR. SEARLES:  All right.  Well, when
22    you say that you believe that certain things
23    were concealed from you, what are the things
24    that you believe were concealed from you?
25        A.  As I sit here today reading the 10-K I

563

1    believe there were monies that were
2    appropriately -- were not appropriately handled
3    in the 2004 fiscal year.
4        Q.  And how were they inappropriately handled
5    that was a secret to you?
6        A.  We did a restatement as a company in
7    2004.  I was not aware of any monies that were
8    moved from '04 to '03 at the time, and so I
9    believe that that was withheld from me.
10        Q.  And who do you believe was responsible
11    for withholding that information from you?
12        MR. ROSHKA:  Object to the form,
13    foundation.
14        THE WITNESS:  I don't know who
15    specifically was instructed not to tell me, but
16    I don't believe I was told.
17        Q.  BY MR. SEARLES:  And had you known of
18    that conduct at the time it was occurring as the

19    chief financial officer of CSK would you have
20    put a stop to it?
21       A.  I can tell you if I would have known that
22    at the time of a restatement we would have dealt
23    with it at the time of the restatement and we
24    would have dealt with those people very
25    harshly.

R.T. Watson pp. 560 – 563.

Accordingly, Jenkins' position that Watson's testimony, standing alone, creates an insurmountable factual barrier to the Commission's motion for partial summary judgment on the issue of misconduct is simply wrong.  If anything, Watson's deposition testimony amounts to an admission on his part that the movement of vendor allowance funds across years was fraudulent, but that he simply didn't know about.  As such, Watson's testimony supports the Commission's motion for summary judgment against Jenkins.  In any event, the Commission continues to believe that Jenkins' admission of company misconduct, by Watson, O'Brien, Opper or others, is sufficient to establish the element of misconduct and, for that reason, requests that Jenkins be deposed at the earliest opportunity.

In addition to Jenkins, the Commission anticipates deposing  members of CSK's Compensation Committee and employees of PwC on compensation related issues. Finally, in the event the Commission is required to prove the element of "misconduct" based on the testimony of the individuals personally involved in that conduct, the Commission anticipates taking the testimony of Opper, O'Brien, and any other witnesses who intend to invoke their Fifth Amendment privilege prior to the conclusion of Watson's criminal case, after the conclusion of Watson's criminal trial, which is currently set to commence on June 7, 2011.

2.  Mr. Jenkins Statement.

Document Discovery

Mr. Jenkins has received and is reviewing the documents produced by the SEC in response to his document requests, which Mr. Jenkins understands consist of documents that the Department of Justice/SEC obtained from CSK and from CSK's outside auditor PricewaterhouseCoopers ("PwC").  In connection with a document subpoena served on

PwC in December 2010, counsel for Mr. Jenkins learned for the first time that, contrary to the SEC's specific representations to Mr. Jenkins and to this Court, more than 55,000 pages of documents obtained by the SEC from PwC had not been produced by the SEC to Mr. Jenkins. After inquiry by Mr. Jenkins, the SEC produced these documents on December 26, 2010, and Mr. Jenkins is in the process of reviewing this additional production.

On December 1 and November 30, 2010, respectively, Mr. Jenkins served subpoenas for documents on CSK (and its related entities, collectively "CSK") and PwC. The documents requested by these subpoenas relate to CSK's bonus and incentive plans and the information considered by CSK's Compensation Committee in establishing the benchmarks for, and determining the amount of, bonuses to be paid to Mr. Jenkins and other senior officers of CSK under these plans. CSK served written responses and objections to the subpoenas. Counsel for Mr. Jenkins is in the process of "meeting and conferring" with CSK's counsel to obtain production of the requested documents. Counsel for CSK has advised that CSK intends to cooperate in producing responsive documents, will begin producing responsive documents this week and will advise counsel for Mr. Jenkins when the remainder of the responsive documents will be produced. Counsel for Mr. Jenkins therefore believes that the documents responsive to the subpoena to CSK will be produced expeditiously and is hopeful that the documents can be obtained from CSK without the need to involve this Court.[3]

Other Depositions

On December 16 and 17, 2010, the SEC deposed Mr. Watson in *SEC v. Fraser*, *et al.*, U.S.D.C., D. Ariz., Case No. 2:09-CV-443-PHX-GMS ("*Fraser* action"). Counsel for Mr. Jenkins did not attend the deposition in that action, but has reviewed its transcript. While in its statement above the SEC improperly seeks to argue the merit of its assertions,

---

[3] Because it appears that all of PwC's documents were produced to the SEC, and as set forth above the SEC has now apparently produced all of these documents to Mr. Jenkins, it appears that Mr. Jenkins' document subpoena to PwC may be moot.

1    Mr. Watson's deposition transcript quoted by the SEC above shows that in his testimony

2    Mr. Watson disclaimed any knowledge of accounting improprieties at CSK and in

3    principal part responded without foundation to the SEC's counsel's improper

4    hypothetical, "what if" questions.  At his deposition Mr. Watson denied any wrongdoing

5    on his part and denied knowledge of any wrongdoing by others.  Counsel for Mr. Jenkins

6    understands that the SEC's counsel questions Mr. Watson's credibility.  Because

7    credibility is not an issue to be decided on summary judgment, this deposition testimony

8    of Mr. Watson, who as set forth above the SEC describes as one of the three individuals

9    "most involved" in the alleged misconduct at CSK, together with the evidence that Mr.

10   Jenkins submitted in his opposition to the SEC's motion for partial summary judgment,

11   establish at the least that there are triable issues of fact whether there was accounting

12   "misconduct" at CSK within the meaning of section 304 and that the SEC's motion should

13   therefore be denied.

14          Mr. Jenkins has noticed the depositions of CSK employees Michael Thompson,

15   Roger Weiss, Dale Ward, Aimee Hudson, Jeffrey Scott Neff, Andrew Stevens, Paul

16   Sundin, and Stephen Lewis during the weeks of January 3, 10, and 24, the depositions to

17   be taken concurrently in this action and in the *Fraser* action.[4]  Mr. Jenkins also intends to

18   notice the depositions of additional CSK employees and PwC auditors on issues relating

19   to the alleged "misconduct" at CSK.

20          After he obtains production of the compensation-related documents subpoenaed

21   from CSK (described above), Mr. Jenkins intends to take depositions on issues relating to

22   Mr. Jenkins' bonus and other incentive-based compensation.  These depositions are

23   necessary so that Mr. Jenkins can address issues relating to the amount of compensation

24   for which the SEC seeks reimbursement in the event that "misconduct" is found under

25

26   [4] The deposition of Ms. Hudson is scheduled to take place on January 11.  Her counsel has
     indicated that at the deposition Ms. Hudson intends to assert the Fifth Amendment
27   privilege against self-incrimination.  The depositions of Messrs. Weiss, Ward, Stevens,
     Sundin and Lewis are scheduled to take place on January 12, 13, 26, 27, and 28,
28   respectively.  Counsel are currently negotiating dates for the remaining witnesses.

Section 304.

## III.   PROPOSED PRETRIAL AND TRIAL SCHEDULE

1.  SEC Statement.

Watson's criminal case is currently set to proceed to trial on June 7, 2011, and is projected to last eight to twelve weeks.   Assuming the criminal case takes as long as the parties in that case anticipate, it will not likely not end until sometime in August or early September.  Accordingly, to allow for a period of fact discovery in the Jenkins case following the conclusion of Watson's criminal case, the Commission recommends the following dates, which are the same dates currently set in *SEC v. Fraser, et al.,* be adopted:

Deadline for Completion of Fact Discovery.  **October 31, 2011**.

Deadline for Disclosures of Experts and Completion of Expert Discovery.  Plaintiff and Defendant shall simultaneously provide full and complete expert disclosures as required by F.R.Civ.P. 26(a)(20(A)-(C) no later than **November 30, 2011**.  Rebuttal expert disclosures, if any, shall be made no later than **January 10, 2012**, and all expert depositions shall be completed no later than **February 10, 2012**.

Dispositive Motions.  Dispositive motions shall be filed no later than **March 12, 2012**.

Deadline for Engaging in Good Faith Settlement Talks.  **August 31, 2011**.

2.  Mr. Jenkins Statement.

On the assumption that Mr. Watson's criminal trial proceeds as scheduled on June 7, 2011, and is completed in the eight and twelve weeks that Mr. Jenkins understands is the estimated length of that trial, and that Mr. Opper and Mr. O'Brien (and other witnesses who assert the Fifth Amendment privilege pending completion of Mr. Watson's criminal trial (*see*, *e.g.*, note 3)) are available to testify as soon as they have testified at Mr. Watson's criminal trial (and before conclusion of that trial), Mr. Jenkins proposes the following schedule:

Deadline for completion of fact discovery                    September 2,

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

|  | 2011 |
|--|------|
| Expert disclosures under FRCP 26 (simultaneous) | September 16, 2011 |
| Rebuttal expert disclosures (simultaneous) | September 30, 2011 |
| Deadline for completion of expert discovery | October 28, 2011 |
| Deadline for filing all dispositive motions | November 11, 2011 |
| Trial | January, 2012 |

Dated:  January 7, 2011          SECURITIES AND EXCHANGE COMMISSION

/s/ Donald W. Searles
Donald W. Searles
C. Dabney O'Riordan
5670 Wilshire Boulevard, 11th Floor
Los Angeles, CA 90036
Telephone:  (323) 965-3998
Facsimile:  (323) 965-3908

Attorneys for Plaintiff Securities and Exchange Commission

Dated:  January 7, 2011          MUNGER, TOLLES & OLSON LLP

/s/ John W. Spiegel
John W. Spiegel
Gregory J. Weingart
355 South Grand Avenue, 35th Floor
Los Angeles, CA 90071
Telephone:  (213) 683-9100
Facsimile:  (213) 687-3702

Attorneys for Defendant Maynard L. Jenkins

1

<u>CERTIFICATE OF SERVICE</u>

2

  I am employed in the County of Los Angeles, State of California.  I am over the

3

age of 18 and not a party to this action.  My business address is 355 S. Grand Ave.,

4

Los Angeles, California, 90071.

5

  I hereby certify that on January 7, 2011, I used the CM/ECF system to transmit a

6

Notice of Electronic Filing to all attorneys of record registered for CM/ECF service in the

7

instant action, notifying them of the filing of the following document:

8

JOINT CASE MANAGEMENT STATEMENT FOR JANUARY 14, 2011

9

SCHEDULING CONFERENCE

10

  I declare under penalty of perjury that the foregoing is true and correct, and that

11

this declaration was executed at Los Angeles, California on January 7, 2011.

12

13

14

            /s/ *Cynthia Silvas*
            Cynthia Silvas

15

16

17

18

19

20

21

22

23

24

25

26

27

28

12710484.1