1  JOHN W. SPIEGEL (*Pro Hac Vice*)
   John.Spiegel@mto.com
2  GREGORY J. WEINGART (*Pro Hac Vice*)
   Gregory.Weingart@mto.com
3  MUNGER, TOLLES & OLSON LLP
   355 South Grand Avenue
4  Thirty-Fifth Floor
   Los Angeles, CA  90071-1560
5  Telephone:    (213) 683-9100
   Facsimile:    (213) 687-3702
6
   Attorneys for Defendant
7  Maynard L. Jenkins

8              UNITED STATES DISTRICT COURT

9                  DISTRICT OF ARIZONA

10 SECURITIES AND EXCHANGE            CASE NO.  CV-09-01510-PHX-GMS
   COMMISSION,
11                                    **OPPOSITION OF DEFENDANT**
                   Plaintiff,         **MAYNARD L. JENKINS TO UNITED**
12                                    **STATES' MOTION TO INTERVENE**
         v.                           **AND TO STAY DEPOSITIONS**
13
   MAYNARD L. JENKINS,                Courtroom:  602
14                                    (Hon. G. Murray Snow)
                   Defendant.
15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II.    BACKGROUND INFORMATION ........................................................................ 3

III.   ARGUMENT ................................................................................................... 5

    A.    The United States' Motion To Intervene Should Be Denied ................... 5

        1.    The intervention request is untimely ............................................ 5

        2.    The United States cannot intervene as of right ........................... 6

        3.    Permissive intervention should be denied .................................... 8

    B.    The United States' Request For A Stay Should Be Denied ................... 8

        1.    The United States has not shown that it will suffer "substantial prejudice" if the depositions are allowed to proceed ............................... 10

        2.    The prejudice to Mr. Jenkins if the depositions are stayed is real and substantial ............................................................................ 13

IV.    CONCLUSION ............................................................................................... 16

*SEC v. Jenkins*, CV 09-1510-PHX-GMS
DEFENDANT JENKINS' OPP. TO UNITED STATES' MOTION
TO INTERVENE AND TO STAY DEPOSITIONS

i

# TABLE OF AUTHORITIES

**PAGE**

**FEDERAL CASES**

*Arakaki v. Cayetano,*
   324 F.3d 1078 (9th Cir.2003)...........................................................................7

*Federal Sav. & Loan Ins. Corp. v. Molinaro,*
   889 F.2d 899 (9th Cir. 1989)...........................................................................9

*In re Ramu Corp.,*
   903 F.2d 312 (5th Cir. 1990)..................................................................10, 12

*Keating v. Office of Thrift Supervision,*
   45 F.3d 322 (9th Cir. 1995)...................................................................8, 9, 10

*Lizarraga v. City of Nogales,*
   No. CV-06-474, 2007 WL 215616 (D. Ariz., Jan. 24 2007) ..........................12

*New York v. Hill,*
   528 U.S. 110 (2000) ......................................................................................15

*Nowacyzk v. Matingas,*
   146 F.R.D. 169 (N.D. Ill. 1993) .....................................................................9

*Perry v. Proposition 8 Official Proponents,*
   587 F.3d 947 (9th Cir. 2009)...........................................................................7

*SEC v. Downe,*
   No. 92 Civ. 4092 (PKL), 1993 WL 22126 (S.D.N.Y., Jan. 26, 1993) ............8

*SEC v. Incendy,*
   936 F.Supp. 952 (S.D. Fla. 1996) .................................................................15

*SEC v. Jones,*
   No. 04 Civ. 4385 (RWS), 2005 WL 2837462 (S.D.N.Y., Oct. 28, 2005) ...........14

*SEC v. Oakford Corp.,*
   181 F.R.D. 269 (S.D.N.Y. 1998) ..................................................................11

*SEC v. Saad,*
   229 F.R.D. 90 (S.D.N.Y. 2005) ....................................................................13

*SEC v. Treadway,*
   No. 04 Civ. 3464 VW JHC, 2005 WL 713826 (S.D.N.Y., March 30, 2005) ......14

*U.S. ex rel. Shank v. Lewis Enterprises,*
   Civ. No. 04-cv-4105-JPG, 2006 WL 1064072 (S.D. Ill., Apr. 21, 2006).................9

*United States v. Alisal Water Corp.,*
   370 F.3d 915 (9th Cir. 2004)...........................................................................5

*United States v. All Funds on Deposit,*
   767 F.Supp. 36 (E.D.N.Y. 1991)...................................................................12

*United States v. Fin. Indus. Regulatory Auth.,*
   607 F.Supp.2d 391 (E.D.N.Y. 2009) ........................................................9, 11

*United States v. Geiger Transfer Service, Inc.,*
   174 F.R.D. 382 (S.D. Miss. 1997) ................................................................13

*United States v. State of Washington,*
   86 F.3d 1499 (9th Cir. 1996)...........................................................................5

*SEC v. Jenkins,* CV 09-1510-PHX-GMS
DEFENDANT JENKINS' OPP. TO UNITED STATES' MOTION
TO INTERVENE AND TO STAY DEPOSITIONS

ii

# TABLE OF AUTHORITIES (Continued)

PAGE

**FEDERAL STATUTES**

Section 304 of the Sarbanes-Oxley Act, 17 U.S.C. §7234 .................................................... 4, 9, 14

**FEDERAL RULES**

Fed. R. Civ. P. 24 ............................................................................................................. 5, 6, 8
Fed. R. Civ. P. 26 ................................................................................................................... 6
Fed. R. Civ. P. 56(f) .......................................................................................................... 1, 6

*SEC v. Jenkins*, CV 09-1510-PHX-GMS
DEFENDANT JENKINS' OPP. TO UNITED STATES' MOTION
TO INTERVENE AND TO STAY DEPOSITIONS

iii

## I.      INTRODUCTION AND SUMMARY OF ARGUMENT

The requested stay of deposition discovery should be denied.  In coordinated investigations, the United States Department of Justice and the United States Securities and Exchange Commission brought civil and criminal charges against various former employees of CSK Auto Corporation ("CSK").  Don Watson was charged civilly and criminally with securities fraud offenses.  Maynard Jenkins was not accused of any wrongdoing, but was nevertheless named as a defendant in this highly publicized SEC case seeking the forfeiture of over $4 million of alleged "incentive compensation" and stock sale proceeds he received while Chief Executive Officer of CSK.

Mr. Jenkins' case has been pending for approximately a year and half.  Written and document discovery is largely complete.  The SEC has filed a motion for partial summary judgment, which the Court has deferred by granting Mr. Jenkins' request under Fed. R. Civ. P. 56(f) to take depositions.  Two months after those depositions began to be scheduled, on the eve of testimony commencing, the government now seeks to stay those depositions until the conclusion of the criminal case against Mr. Watson.

Although the government tries to portray this second stay motion as "limited," it is no such thing.  The requested stay pertains to 5 of the 7 depositions in which witnesses are expected to testify substantively, and the government has made clear its stay request will not be limited to just these five witnesses.[1]  Nor is the requested stay for a short period of time.  The Watson criminal case is not expected to conclude until late August 2011, meaning that depositions will be essentially halted for a minimum of eight months – and perhaps longer if any portion of the Watson criminal case needs to be retried.  And, of course, until deposition discovery is completed, neither Mr. Jenkins nor the SEC can work effectively with experts, or bring this case to conclusion by litigating the merits.

Mr. Jenkins is now 68 years old, and the prejudice to him from such a significant

---

[1] Declaration of Gregory J. Weingart ("Weingart Decl."), ¶ 7.  As the Court knows, the eighth witness (Aimee Hudson) has indicated that she will assert her Fifth Amendment rights to all questioning.  Perhaps for this reason, the government has not moved for a stay as to her.

*SEC v. Jenkins*, CV 09-1510-PHX-GMS
DEFENDANT JENKINS' OPP. TO UNITED STATES' MOTION
TO INTERVENE AND TO STAY DEPOSITIONS

- 1 -

1   delay in clearing the cloud on his reputation, as well as resolving the financial uncertainty

2   this action has created, is manifest.  This is especially so since the SEC and its trial

3   counsel continue to trumpet their case against Mr. Jenkins in the press, most recently

4   labeling him a CEO "missing in action" in the Arizona Republic.  Weingart Decl., Ex. D.

5          Following the initial scheduling conference in this case in July 2009 at which Mr.

6   Jenkins requested an early 2011 trial date, Mr. Jenkins reluctantly agreed to a short period

7   of fact discovery after the conclusion of the Watson criminal case to take the depositions

8   of Messrs. Opper and O'Brien, who have asserted the Fifth Amendment.  But the

9   deposition stay sought by the government would delay the case far into 2012 because the

10  depositions of most significant witnesses could not begin for another seven months.  The

11  government's request to put the Jenkins' case on hold for such a lengthy period is not

12  supported by any showing of true identifiable prejudice.  This is not a violent crime case –

13  there is no concern with witness intimidation or collusion.  Developing the factual record

14  through deposition will harm no one, must less create any substantial prejudice to the

15  United States.

16         The government's knee jerk reaction appears to be that none of its witnesses should

17  be questioned before the criminal case – even by someone like Mr. Jenkins who is not a

18  criminal defendant – because that could result in someone else (Mr. Watson) getting more

19  information than he would receive under the Federal Rules of Criminal Procedure.  This is

20  the same generalized and unpersuasive assertion the Court rejected when considering the

21  government's prior stay request in the Watson civil case.  The government's arguments

22  are particularly inapt here, where the discovery that the government seeks to enjoin will

23  be taken by a party who is *not* a criminal defendant.

24         The government collectively brought parallel proceedings, including this action,

25  and must live with the consequences.  Mr. Jenkins is entitled to his day in court, and that

26  includes his entirely proper efforts to take depositions of witnesses with information about

27  alleged wrongdoing at CSK.  Those depositions have taken significant time to schedule,

28  and should proceed.

*SEC v. Jenkins*, CV 09-1510-PHX-GMS
DEFENDANT JENKINS' OPP. TO UNITED STATES' MOTION
TO INTERVENE AND TO STAY DEPOSITIONS

- 2 -

## II.      BACKGROUND INFORMATION

In 2004, CSK concluded that certain errors had been made with respect to the Company's accounting for vendor allowances, and restated its financial statements for fiscal 2002 through 2004.  In early 2006, after learning of additional errors with respect to accounting for vendor allowances, CSK commenced an internal investigation which included interviewing numerous witnesses, including those that are the subject of the United States' motion.  At the end of the internal investigation, the Company restated financial information in its 2005 Form 10-K, filed in May 2007.

The SEC and the DOJ conducted their own multi-year, coordinated investigation into the accounting at CSK.[2]  During the period between May 10, 2007 and July 2, 2008 the SEC took the sworn testimony of more than forty-five different witnesses.  This included testimony by three of the five witnesses who are the subject of the United States' present motion to stay – Mr. Stevens (two days), Mr. Ward (one day) and Mr. Thompson (four days).  After almost two years, on March 5, 2009, the SEC filed a civil enforcement action against Mr. Watson and others, *SEC v. Fraser, et al.*, U.S.D.C., D. Ariz., CV-09-443-PHX-GMS ("*Watson* civil action") alleging securities fraud.  Shortly thereafter, on April 7, 2009, Mr. Watson and others were indicted for similar securities law violations, *United States v. Watson, et al.*, CR-09-372-PHX-SRB ("*Watson* criminal action").

On April 15, 2009, the United States filed a motion in the *Watson* civil action to intervene and to stay all proceedings pending resolution of the *Watson* criminal action, claiming that Watson should not be permitted to obtain discovery in the *Watson* civil action that he could also use in the criminal action.  (*See* Watson civil docket no. 24).  In its Order filed June 1, 2009 (Watson civil docket no. 47), hereafter "Watson 2009 Stay Order"), this Court permitted the United States to intervene in the *Watson* civil action, but denied its motion to stay.  The Court explained:

"In light of the significant interest Defendants have in resolving this

---

[2] Indeed, when the DOJ filed charges against Mr. Watson and others, it "acknowledge[d] the SEC's substantial assistance in [the DOJ's] investigation."  Weingart Decl., Ex. A.

issue as soon as possible, the Government's generalized argument that civil discovery is broader than criminal discovery is not sufficient to establish the 'substantial prejudice' necessary to warrant a stay of the entire civil proceeding. The preferred course of action in these circumstances is for the Court to evaluate the Government's specific objections to discovery requests as they arise and, "in lieu of a general stay, impose protective orders, seal interrogatories, impose a stay for a finite period of time, or limit a stay to a particular subject matter," if such remedies are warranted. The Government may therefore seek such measures to the extent occasion presents itself."

*Id*. at 3:15-19, 7:18-27 (citations omitted).

With the United States knowing full well that this Court was not inclined to stay civil discovery absent specific, articulated prejudice, the SEC then proceeded on July 22, 2009 to file a complaint against Mr. Jenkins under Section 304 of the Sarbanes-Oxley Act, 17 U.S.C. §7234 ("Section 304"). The SEC claims that Mr. Jenkins is required to forfeit more than $4 million in alleged incentive-based compensation, and proceeds from the sale of options granted to him years before Sarbanes-Oxley was enacted. While Mr. Jenkins is not accused of misconduct, the SEC has alleged (as Section 304 requires it must) that CSK's restatements were the result of "fraudulent conduct" by others at CSK. *SEC v. Jenkins* Complaint, ¶ 1 (Jenkins docket no. 1).

As it did with the earlier Watson case, the SEC proceeded to publicly trumpet the charges against Mr. Jenkins – among other things issuing a press release, and speaking extensively with the press about Mr. Jenkins. Most recently, this included SEC trial counsel giving an interview to the Arizona Republic and calling Mr. Jenkins a CEO "missing in action." *See* Weingart Decl., Ex. D. Despite Mr. Jenkins being subjected to this adverse publicity, and having requested at every turn a prompt trial date to clear his name and resolve the personal uncertainty this matter has created, the government again comes before this Court and requests that civil discovery be stayed pending resolution of the *Watson* criminal action. As shown below, the United States provides no better argument for a stay of discovery proceedings now than the one the Court previously rejected, and the United States' motion should be denied.

*SEC v. Jenkins*, CV 09-1510-PHX-GMS
DEFENDANT JENKINS' OPP. TO UNITED STATES' MOTION
TO INTERVENE AND TO STAY DEPOSITIONS

- 4 -

III.   **ARGUMENT**

   A.   **The United States' Motion To Intervene Should Be Denied**

   As a prerequisite to presenting its stay motion, the United States requests that it be allowed to intervene as of right, or in the alternative permissively.  Whether intervention is as of right or permissive, any request to intervene must in the first instance be timely. The government's request here is not.  In addition to being untimely, the United States' intervention request fails to satisfy other requirements of Rule 24.

   *1.   The intervention request is untimely*

   The Ninth Circuit has articulated three factors to determine whether a motion to intervene is timely: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay."  *United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004) (citation omitted).  Although the length of the delay is not determinative, any substantial lapse of time weighs heavily against intervention, and if the court finds that the motion to intervene was not timely, it need not reach any of the remaining elements of Rule 24. *United States v. State of Washington*, 86 F.3d 1499, 1503 (9th Cir. 1996).

   The Jenkins case has progressed substantially – through a motion to dismiss, written and document discovery, and a motion for partial summary judgment.  Written and document discovery is largely complete.  Depositions are what remains to be done, yet it is those very depositions which the United States seeks to stay.  The prejudice to Mr. Jenkins from a delay in the timely resolution of this matter is manifest, and explained further below.

   But of particular import to the intervention question is the untimeliness of the government's motion.  While the United States suggests that its motion was prompt because deposition notices were not served until after Mr. Watson's deposition on December 16-17, 2010, United States Motion to Stay ("Motion") at 2, that is simply not accurate.  Mr. Jenkins noticed the depositions of Messrs. Thompson and Ward on November 11, 2010, over *a month before* Watson was deposed and *two months before* the

government's motion here.  The plain truth is that the United States delayed filing its

motion until the eve of these depositions commencing, despite being on notice for at least

two months that witnesses about which it had supposed concern were about to be

deposed.[3]  That these particular depositions were forthcoming was no surprise given that,

at the late date of the government's motion, it was:

- Over 17 months after the Jenkins complaint was filed;

- Over six months after the Court denied the motion to dismiss the complaint, Mr. Jenkins answered the complaint, the parties had their Rule 26 conference and commenced discovery; and

- Over two months after Mr. Jenkins' filed a Rule 56(f) request in opposition to the SEC's partial summary judgment motion, in which he specifically stated he intended to take depositions of the witnesses as to whom the United States now moves for a stay.  (Jenkins docket no. 73 at ¶¶ 11-13).

The government's unexplained delay has interfered with the orderly administration

of both the Jenkins' case and this Court's calendar.  Indeed, even on the extremely

abbreviated briefing schedule the Court established, one of the noticed depositions had to

be taken off calendar for the Court to have time to consider the government's request.

The United States offers no reason for its delay, and when questioned during a

meet and confer on the government's motion it similarly refused to offer any explanation

for its delay.  Weingart Decl., ¶ 6.  The likely reason for the delay (as well as the

government's refusal to explain it) would seem to be that the government wanted to obtain

a tactical advantage by getting Mr. Watson's testimony before seeking any halt to

discovery.  Regardless, having articulated no good cause for its delay, the government

should not now be permitted to offer new or different facts to attempt explaining it away.

### 2.    The United States cannot intervene as of right

Federal Rule of Civil Procedure 24(a)(2) requires an applicant for intervention as

of right to satisfy four criteria:

---

[3] A notice was filed with this Court on November 11, 2010 concerning the Thompson and Ward depositions.  (Jenkins docket no. 75).  Neff, Sundin and Stevens were noticed on December 20 by Mr. Watson, and cross-noticed by Mr. Jenkins on December 22, 2010. (Jenkins docket no. 87).

*SEC v. Jenkins*, CV 09-1510-PHX-GMS
DEFENDANT JENKINS' OPP. TO UNITED STATES' MOTION
TO INTERVENE AND TO STAY DEPOSITIONS

- 6 -

(1) the applicant must timely move to intervene;

(2) the applicant must have a significantly protectable interest relating to the property or transaction that is the subject of the action;

(3) the applicant must be situated such that the disposition of the action may impair or impede the party's ability to protect that interest; and

(4) the applicant's interest must not be adequately represented by existing parties.

*Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009) (quoting *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir.2003)).

In addition to the government's lack of timeliness, discussed above, the government's application fails the third and fourth prongs of this test. With regard to the third factor, the disposition of the *Jenkins* case will not impair or impede the United States' ability to protect its interests in the Watson criminal case. The SEC will attempt to establish through its deposition questioning that there was fraud at CSK, and the resolution of that question in a civil case against Mr. Jenkins will not be collateral estoppel or res judicata as to any party in the Watson criminal case, as Mr. Jenkins is not a party to the criminal case and the SEC has a lower burden of proof than does the DOJ.

With regard to the fourth factor, the government's interests in attempting to establish misconduct at CSK are adequately represented by the SEC. The Ninth Circuit has held the "most important factor" to determine whether a proposed intervenor is adequately represented by a present party to the action is how the intervenor's interest compares with the interests of an existing party. *Perry*, 587 F.3d at 950-51; *Arakaki*, 324 F.3d at 1086. Where one of the existing parties and the proposed intervenor share the same "ultimate objective," a presumption of adequacy of representation applies, and the intervenor can rebut that presumption only with a "compelling showing" to the contrary. *Perry*, 587 F.3d at 951; *Arakaki*, 324 F.3d at 1086. Here, the SEC and the DOJ share the same ultimate objective of proving fraudulent conduct at CSK. *Perry*, 587 F.3d at 949 (intervention as of right denied because proposed intervenor and party to case had same interest in upholding statute – "Any differences are rooted in style and degree, not the

*SEC v. Jenkins*, CV 09-1510-PHX-GMS
DEFENDANT JENKINS' OPP. TO UNITED STATES' MOTION
TO INTERVENE AND TO STAY DEPOSITIONS

- 7 -

1   ultimate bottom line."). The government offers no explanation, much less a compelling

2   one, why the SEC cannot adequately represent the government's interests with regard to

3   the deposition discovery at issue.[4]

4              ### 3.   *Permissive intervention should be denied*

5        Rule 24(b) permits a court to consider a request to intervene where the request is

6   timely, there is an independent ground for jurisdiction, and the applicant "has a claim or

7   defense that shares with the main action a common question of law or fact." Fed. R. Civ.

8   P. 24(b)(1)(B). If these factors are met, the court has wide discretion whether to grant or

9   deny the request, and should consider factors such as whether the movant's interests are

10  adequately represented by one of the existing parties, judicial economy, and whether the

11  intervention will unduly delay or prejudice the adjudication of the rights of the original

12  parties. *E.g.*, Watson 2009 Stay Order at 2-3.

13       The government's lack of timeliness, and the fact that the SEC can adequately

14  represent the government's interests in discovery in this matter, are discussed above.

15  While the *Watson* criminal case and the *Jenkins* case have some common fact questions,

16  permissive intervention is nevertheless inappropriate because it will unduly delay and

17  prejudice the adjudication of Mr. Jenkins' rights, and because the stay requested by the

18  government offends judicial economy. These factors are addressed below, and favor

19  denial of intervention as well as denial of the stay request itself.

20      **B.    The United States' Request For A Stay Should Be Denied**

21       The Ninth Circuit has laid out a multi-factor balancing test for determining when to

22  stay civil proceedings in the face of a parallel criminal proceeding. *Keating v. Office of*

23  *Thrift Supervision*, 45 F.3d 322, 324-25 (9th Cir. 1995). Specifically, the Court should

24  consider: (1) the extent to which Fifth Amendment rights are implicated; (2) the interest of

---

25  [4] Here, the DOJ and the SEC have each advanced theories about alleged fraud at CSK that

26  mirror one another. When an indictment has not yet been returned, and the government is
    still investigating, at least one court has found that the DOJ "may have an interest in [the

27  civil] litigation which is qualitatively different from the SEC's interest." *SEC v. Downe*,
    No. 92 Civ. 4092 (PKL), 1993 WL 22126, *12 (S.D.N.Y., Jan. 26, 1993). That is not the

28  case here.

*SEC v. Jenkins*, CV 09-1510-PHX-GMS
DEFENDANT JENKINS' OPP. TO UNITED STATES' MOTION
TO INTERVENE AND TO STAY DEPOSITIONS

- 8 -

1   the plaintiff in proceeding expeditiously with the litigation or any particular aspect

2   thereof, and the potential prejudice delay would cause to the plaintiff; (3) the burden that

3   any particular aspect of the proceedings may impose on the defendant; (4) the

4   convenience of the court in the management of its cases, including efficient use of judicial

5   resources; (5) the interests of non-parties; and (6) the interest of the public in the pending

6   civil and criminal cases.  *Id.*

7       As this Court recognized in the Watson 2009 Stay Order, the factors most relevant

8   to the United States' present motion are Mr. Jenkins' interest in the speedy resolution of

9   the civil case against him, and the interest of the United States as intervenor in its

10  prosecution of the *Watson* criminal action.  Watson 2009 Stay Order at 4:3-9.[5]

11  "Determining whether to enjoin a civil proceeding in the face of a related criminal case is

12  essentially a question of balancing the private parties' interest in a prompt resolution of

13  the civil matter with the government's interest in preserving the integrity of the criminal

14  proceeding."  *United States v. Fin. Indus. Regulatory Auth.*, 607 F.Supp.2d 391, 393

15  (E.D.N.Y. 2009) ("*FINRA*") (denying motion to stay civil discovery).

16  _____

[5] To the extent that the other *Keating* factors are relevant, they weigh against any stay of
the depositions.  With respect to the first factor, Fifth Amendment rights are not
implicated – Mr. Jenkins has not asserted the Fifth Amendment, and has already answered
three days of questioning during the SEC investigation; Mr. Watson just completed two
days of deposition in which he did not assert his Fifth Amendment rights; and none of the
witnesses as to whom the DOJ seeks to stay depositions has asserted his Fifth Amendment
rights.  Nor is the second factor applicable, as the SEC does not articulate any interest in a
stay – it simply does not oppose one.  As to the fourth factor, concluding the *Watson*
criminal action before deposition discovery in this lawsuit proceeds will not conserve
judicial resources as the outcome in the *Watson* criminal action will have no effect on the
SEC's Section 304 claim against Mr. Jenkins.  The Ninth Circuit and other courts also
recognize that a court has a substantial interest in "clearing its docket."  *Federal Sav. &
Loan Ins. Corp. v. Molinaro*, 889 F.2d 899, 903 (9th Cir. 1989), and moving cases to an
"expeditious conclusion."  *U.S. ex rel. Shank v. Lewis Enterprises*, Civ. No. 04-cv-4105-
JPG, 2006 WL 1064072, *5 (S.D. Ill., Apr. 21, 2006), quoting *Nowacyzk v. Matingas*, 146
F.R.D. 169, 175 (N.D. Ill. 1993).  Fifth, the interests of non-parties (other than the United
States) are not implicated.  With respect to the sixth factor, given the uncertainty about the
scope of Section 304 and the extent of reimbursement it requires, there is a significant
public interest in the prompt conclusion of the SEC's claim against Mr. Jenkins to provide
judicial guidance on the meaning and scope of the statute.  The SEC's own attorney has
acknowledged the public interest in the outcome of this action.  *See* Weingart Decl., Ex. D
("As to whether the Jenkins case is sending a chill through boardrooms, Searles said, 'We
hope it has some effect beyond the Jenkins case.  We know it's getting a lot of attention in
the corporate press and legal press.'").

*SEC v. Jenkins*, CV 09-1510-PHX-GMS
DEFENDANT JENKINS' OPP. TO UNITED STATES' MOTION
TO INTERVENE AND TO STAY DEPOSITIONS

- 9 -

A court determines substantial prejudice "in light of the particular circumstances and competing interests involved in the case." *Keating*, 45 F.3d at 324 (citations omitted.) The government carries the burden of demonstrating substantial prejudice to its interests in the *Watson* criminal case if the discovery at issue proceeds. "Any determination of 'good cause' that warrants a stay must be accompanied by specific findings of fact and determinations that the government will suffer specific forms of prejudice." *In re Ramu Corp.*, 903 F.2d 312, 320 (5th Cir. 1990). As this Court noted in its prior order, the vast majority of recent cases hold that staying civil discovery is inappropriate, usually because the government failed to make a specific showing of prejudice that could not be remedied by anything other than the requested stay. Watson 2009 Stay Order at 5-7. Similarly here, the United States fails to make any specific showing of prejudice, and in fact will not suffer any such prejudice. The harm to Mr. Jenkins from the proposed stay, on the other hand, is real and demonstrable.

> ### 1.   *The United States has not shown that it will suffer "substantial prejudice" if the depositions are allowed to proceed*

The United States seeks to distinguish its present motion to stay from its prior motion by asserting that, unlike its prior motion in which it requested a stay of all proceedings in the *Watson* civil case, it now only seeks a stay of five of the noticed depositions, and that such a stay is supposedly "narrow and limited." Motion at 3:5. But the request is not in fact "limited." First, the United States seeks to stay the depositions of five of the seven noticed witnesses who will testify without invoking the Fifth Amendment – in other words, nearly all of them. Second, the United States has indicated that its intent to stay depositions is not limited to these five witnesses, and that it will seek to stay further depositions as they are noticed. Weingart Decl., ¶ 7.

In addition to being quite broad, and apparently the tip of the iceberg for future stay requests, the instant request should be denied because the United States has not shown any "substantial prejudice" if the depositions proceed. The only claimed "prejudice" is that (1) someone other than the prosecutors will get to question witnesses before the criminal

1   trial, Motion at 7, (2) although the witnesses are represented by experienced counsel who
2   will prepare them before testifying, the witnesses may not be prepared and further it is
3   somehow unfair that prosecutors themselves will not be able to participate in preparing
4   witnesses before their civil depositions or if they do, it could be the subject of questioning,
5   *id*. at 7-8, and (3) depositions will somehow improperly provide "a roadmap of the United
6   States' prosecution theories," *id*. at 5:1-4.

7          These claims of "prejudice" are extremely general and no different in substance
8   from the United States' assertions in its prior stay motion in the *Watson* civil action.
9   Essentially, the government asserts that if Mr. Jenkins obtains deposition testimony from
10  these five individuals, the United States will suffer prejudice because someone else
11  (namely, Mr. Watson) will be able to learn in advance of his criminal trial the facts known
12  to these witnesses.  But, as this Court recognized in denying the United States' prior stay
13  motion, "to the extent that the defendants' discovery requests simply result in the
14  happenstance that in defending themselves against serious civil charges that another
15  government agency has chosen to file against them they obtain certain ordinary discovery
16  that will also be helpful in defense of their criminal case, there is no cognizable harm to
17  the government in providing such discovery beyond its desire to maintain a tactical
18  advantage." *Watson* 2009 Stay Order at 6:13-19, quoting *SEC v. Oakford Corp.*, 181
19  F.R.D. 269, 272-72 (S.D.N.Y. 1998). *See also FINRA*, 607 F.Supp.2d at 394 ("the only
20  'prejudice' the Court can discern is that allowing the [civil proceeding] to go forward will
21  result in the criminal defendants having more information than they otherwise would be
22  entitled to at this stage under the Federal Rules of Criminal Procedure  This loss of the
23  government's usual tactical advantage is insufficient to justify enjoining the [civil
24  proceeding].")

25         More than forty-five witnesses have already testified under oath during the SEC
26  investigation of CSK, including three of the five witnesses whose depositions the United
27  States now seeks to stay (Stevens, Ward and Thompson).  These same witnesses were also
28  interviewed as part of CSK's internal investigation, and summaries of their statements to

those investigators produced in the civil case. All this occurred without the United States' claimed need for "involvement by prosecutors, oversight by the court and observation by the jury . . . ." Motion at 7:5-6. If there was some prejudice to the United States by having testimony occur without the involvement of prosecutors, a court, or a jury – and Mr. Jenkins respectfully submits there is not, as it happens every day in a civil proceeding – it has already occurred. No prejudice is created by Mr. Jenkins now having his turn to ask his own questions of these witnesses, and to test answers witnesses previously gave.

The United States additional assertions of "prejudice" are purely speculative, and any genuine concern they raise can be addressed without a stay of the depositions. "Since any relationship between criminal and civil cases raises the prospect of civil discovery abuse that can prejudice the criminal case, good cause [for a stay of the civil proceeding] requires more than the mere possibility of prejudice. . . . The government should at least be required to make a specific showing of the harm it will suffer without a stay and why other methods of protecting its interests are insufficient." *In re Ramu Corp.*, 903 F.2d at 320. For example, the government's expressed concern that witnesses might be "tripped up" because they may not be not adequately prepared prior to examination (Motion at 8:11-12), is not only entirely hypothetical, it defies common sense. Each of the witnesses to be deposed is represented by highly qualified and experienced counsel who most assuredly will prepare the witness for deposition, just as counsel presumably will prepare their clients to meet with the Department of Justice. Even if it had some basis, this speculative concern does not constitute prejudice supporting any stay of the depositions. *See United States v. All Funds on Deposit,* 767 F.Supp. 36, 42 (E.D.N.Y. 1991) ("mere conclusory allegations of *potential* abuse or simply the *opportunity* by the claimant to improperly exploit civil discovery . . . will not avail on a motion for a stay." [emphasis in original]); *Lizarraga v. City of Nogales*, No. CV-06-474, 2007 WL 215616, at *3 (D. Ariz., Jan. 24 2007) (same).

Finally, in the case of Mr. Jenkins, depositions will not reveal any prosecution "road map" or prosecution theories. There is no criminal case against Mr. Jenkins, and

*SEC v. Jenkins*, CV 09-1510-PHX-GMS
DEFENDANT JENKINS' OPP. TO UNITED STATES' MOTION
TO INTERVENE AND TO STAY DEPOSITIONS

- 12 -

thus no road map to uncover.  Mr. Jenkins does not intend to examine these witnesses about the United States' trial strategy in Mr. Watson's case (although it is hard to understand why the government thinks these witnesses know the government's trial strategy in the first place, since they are simply fact witnesses).  To the extent there is any real remaining concern on this point, the Court can manage that concern through means other than stopping the deposition entirely.  Mr. Jenkins simply wants to determine the *facts* that these witnesses know relating to the serious claims the SEC has brought against him.  He is entitled to do so now, and not put his life on hold.

The governmental agencies who coordinated their investigations here and brought criminal and civil charges surely expected that, having been sued by the SEC to recover more than $4 million, Mr. Jenkins would conduct depositions and other discovery vigorously to defend against the SEC's claims.  Any "prejudice" to the United States from Mr. Jenkins proceeding with these depositions is therefore of the government's own doing.  *See* Watson 2009 Stay Order at 5; *United States v. Geiger Transfer Service, Inc.*, 174 F.R.D. 382, 385 (S.D. Miss. 1997) ("it is the Government that has created the conflict between the civil and criminal cases by simultaneously filing those actions"); *SEC v. Saad*, 229 F.R.D. 90, 91 (S.D.N.Y. 2005) ("But it is stranger still that the U.S. Attorney's office, having closely coordinated with the SEC in bringing simultaneous civil and criminal actions against some hapless defendant, should then wish to be relieved of the consequences that will flow if the two actions proceed simultaneously.").

### 2.   *The prejudice to Mr. Jenkins if the depositions are stayed is real and substantial*

In contrast to the absence of prejudice to the United States, the prejudice to Mr. Jenkins from a stay of these depositions is real and substantial.  The SEC's lawsuit against Mr. Jenkins asserts that he must forfeit more than $4 million because CSK's restatement resulted from misconduct by others.  Mr. Jenkins has a substantial interest in the speedy resolution of this claim against him.

The United States asserts that Mr. Jenkins does not have an interest in the

*SEC v. Jenkins*, CV 09-1510-PHX-GMS
DEFENDANT JENKINS' OPP. TO UNITED STATES' MOTION
TO INTERVENE AND TO STAY DEPOSITIONS

- 13 -

1    expeditious resolution of this lawsuit because "has not been accused of personal

2    misconduct." Motion at 9:5-6.  While it is true Mr. Jenkins has not been accused of

3    misconduct, the government ignores the reality that Mr. Jenkins is a defendant in an SEC

4    suit which seeks millions from him personally, and which a government agency has used

5    to stir up publicity adverse to Mr. Jenkins.  As this Court recognized in the Watson 2009

6    Stay Order, the SEC "asserts serious violations of the securities laws" and a defendant has

7    "a strong interest in being able to defend [himself] against the SEC's allegations as

8    quickly as possible."  Watson 2009 Stay Order at 7:7-9.  Mr. Jenkins has a substantial

9    interest in proceeding expeditiously with this action to clear his name.  *See also id.* at

10   7:14-15 ("If the Court stays the civil case and they later prevail, Defendants will . . . have

11   needlessly suffered additional years of living under the suspicion of these allegations . . .

12   ."); *SEC v. Jones*, No. 04 Civ. 4385 (RWS), 2005 WL 2837462, at *2 (S.D.N.Y., Oct. 28,

13   2005) (a defendant "deserves a timely opportunity to clear his name.").

14          As this Court knows from his counsel's efforts to secure a prompt trial date, Mr.

15   Jenkins is 68 and in declining health.  It is critically important that Mr. Jenkins promptly

16   bring to a conclusion the SEC's claims so that he can put his personal and financial house

17   in order.  The difference to Mr. Jenkins between proceeding with and completing

18   discovery expeditiously, versus waiting until after completion of the *Watson* criminal

19   action to complete meaningful deposition discovery, is substantial.  As long as the SEC's

20   Section 304 claim against him is unresolved, Mr. Jenkins cannot plan financially for his

21   future, and that of his family.  *See SEC v. Treadway*, No. 04 Civ. 3464 VW JHC, 2005

22   WL 713826, at *3 (S.D.N.Y., March 30, 2005) (defendants have "an important interest in

23   moving to trial swiftly . . . since the pendency of this litigation is an economic burden on

24   them and a cloud on their careers and personal lives."); *Jones*, 2005 WL 2837462, at *2

25   (impacts on "future career and personal life" are important considerations).

26          Given these considerations, at every opportunity Mr. Jenkins has asked for a

27   prompt close of discovery and an early trial date.  In the parties' Joint Case Management

28   Report filed July 23, 2010 (Jenkins docket no. 54), Mr. Jenkins requested a fact discovery

*SEC v. Jenkins*, CV 09-1510-PHX-GMS
DEFENDANT JENKINS' OPP. TO UNITED STATES' MOTION
TO INTERVENE AND TO STAY DEPOSITIONS

- 14 -

1   cut-off of October 3, 2010 and a trial date in early 2011.  At the July 30, 2010 Scheduling

2   Conference, Mr. Jenkins urged that the Court set an early trial date.  *See* 7/30/10

3   Transcript at 7:9-13 (Mr. Spiegel:  "Mr. Jenkins is entitled to his day in court.  He's

4   entitled to the opportunity to confront the evidence against him on the issue of

5   misconduct, as well as on the other issue to be tried, which is how much – how much

6   compensation did he actually get as a result of the misstated financials?); *id.* at 9:19

7   (requesting the Court "give us an early trial date").  At the July 30, 2010 Scheduling

8   Conference, the Court indicated that it intended to defer trial in the SEC's lawsuit against

9   Mr. Jenkins until after conclusion of the *Watson* criminal action.  *Id.* at 9:13-15.  But that

10   does not mean these depositions should also be deferred until that time, as it would only

11   further delay Mr. Jenkins' ability to get to trial and have the claims against him decided.

12   Mr. Jenkins has agreed only to a short period after the conclusion of the criminal trial (a

13   few weeks) to complete the testimony of Gary Opper and Ed O'Brien, who have asserted

14   their Fifth Amendment rights but have pleaded guilty and will testify for the government.

15   The discovery schedule proposed in this case requires that all other depositions be

16   completed well before then.

17        Moreover, Mr. Jenkins will be prejudiced by a stay of these depositions because,

18   while the SEC has already had an opportunity during its pre-filing investigation to obtain

19   testimony from these witnesses favorable to its claims, the additional delay resulting from

20   a stay increases the likelihood that the witnesses will not be available for deposition or

21   will not recall during Mr. Jenkins' examination critical information regarding the vendor

22   allowance program and the accounting practices at CSK.  *See SEC v. Incendy*, 936

23   F.Supp. 952, 956 (S.D. Fla. 1996) ("over time the likelihood of witnesses becoming

24   unavailable, memories fading, and documents being lost increases dramatically"); *New

25   York v. Hill*, 528 U.S. 110, 117 (2000) ("Delay can lead to a less accurate outcome as

26   witnesses become unavailable and memories fade").

27        In sum, the unfairness and prejudice to Mr. Jenkins of a stay of the depositions is

28   real and substantial.  Mr. Jenkins deserves the right to proceed with discovery in order to

1    prepare a defense the SEC's claims, have the opportunity to clear his name, and resolve

2    his financial affairs.

3    **IV.**    **CONCLUSION**

4       For the reasons set forth above, the United States' motion to intervene and to stay

5    depositions should be denied.

6

7    Dated: January 11, 2011       MUNGER, TOLLES & OLSON LLP

8

9                                    /s/ Gregory J. Weingart
                                   John W. Spiegel

10                                   Gregory J. Weingart
                                  355 South Grand Avenue, 35th Floor

11                                   Los Angeles, CA 90071
                                  Telephone:  (213) 683-9100

12                                   Facsimile:  (213) 687-3702

13                                   Attorneys for Defendant Maynard L. Jenkins

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*SEC v. Jenkins*, CV 09-1510-PHX-GMS
DEFENDANT JENKINS' OPP. TO UNITED STATES' MOTION
TO INTERVENE AND TO STAY DEPOSITIONS

- 16 -

**PROOF OF SERVICE**

        I, the undersigned, declare that I am over the age of 18 and not a party to the within cause.  I am employed by Munger, Tolles & Olson LLP in the County of Los Angeles, State of California.  My business address is 355 South Grand Avenue, Thirty-Fifth Floor, Los Angeles, California  90071-1560.

        On January 11, 2011, I served upon the interested party(ies) in this action the foregoing document(s) described as:

**OPPOSITION OF DEFENDANT MAYNARD L. JENKINS
TO UNITED STATES' MOTION TO INTERVENE AND TO
STAY DEPOSITIONS**

☒ By placing ☐ the original(s) ☒ a true and correct copy(ies) thereof, as set out below, in an addressed, sealed envelope(s) clearly labeled to identify the person(s) being served at the address(es) set forth on the attached service list.

☐ **BY MAIL (AS INDICATED ON THE ATTACHED SERVICE LIST)** I caused such envelope(s) to be placed in interoffice mail for collection and deposit in the United States Postal Service at 355 South Grand Avenue, Thirty-Fifth Floor, Los Angeles, California, on that same date, following ordinary business practices.  I am familiar with Munger, Tolles & Olson LLP's practice for collection and processing correspondence for mailing with the United States Postal Service; in the ordinary course of business, correspondence placed in interoffice mail is deposited with the United States Postal Service with first class postage thereon fully prepaid on the same day it is placed for collection and mailing.

☐ **BY FEDERAL EXPRESS PRIORITY OVERNIGHT DELIVERY (AS INDICATED ON ATTACHED SERVICE LIST)** I delivered the sealed Federal Express envelope(s) to an employee authorized by Federal Express to receive documents, with delivery fees paid or provided for.

☒ **E-FILING**:  By causing the document to be electronically filed via the Court's CM/ECF system, which effects electronic service on counsel who are registered with the CM/ECF system.

☒ **BY ELECTRONIC MAIL**:  By sending a copy of said document via email for instantaneous transmittal to the electronic mail address as stated on the attached service list.

☐ **(STATE)** I declare under penalty of perjury that the foregoing is true and correct.

☒ **(FEDERAL)** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

        I declare under penalty of perjury that the foregoing is true and correct.  Executed on January 11, 2011, at Los Angeles, California.

_____
Carol Jette

- 1 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Paul J Roshka, Jr**
Roshka DeWulf & Patten, PLC
1 Arizona Ctr
400 E Van Buren
Ste 800
Phoenix, AZ 85004-3906
602-256-6100
Fax: 602-256-6800
Email: roshka@rdp-law.com

Attorneys for Defendant Don W. Watson in the action entitled: *SEC v. Martin G. Fraser, et al.*; United States District Court, District of Arizona Case No. 2:09-cv-00443

**Dan Marmalefsky**
Morrison & Foerster
555 West Fifth Street, Suite 3500
Los Angeles, CA  90013-1024
213-892-5200
Fax: 213-892-5454
Email: dmarmalefsky@mofo.com

Attorneys for Defendant Edward W. O'Brien in the action entitled: *SEC v. Martin G. Fraser, et al.*; United States District Court, District of Arizona Case No. 2:09-cv-00443

**Gordon Alan Greenberg ,**
McDermott Will & Emery LLP
2049 Century Park E
38th Floor
Los Angeles, CA 90067-3208
310-551-9398
Fax: 310-277-4730
Email: ggreenberg@mwe.com

Attorneys for Defendant Gary M. Opper in the action entitled: *SEC v. Martin G. Fraser, et al.*; United States District Court, District of Arizona Case No. 2:09-cv-00443

12742585.1

- 2 -

PROOF OF SERVICE