GIBSON, DUNN & CRUTCHER LLP
Douglas M. Fuchs (CA Bar # 196371) (Pro Hac Vice Pending)
DFuchs@gibsondunn.com
David S. Han (CA Bar # 247789) (Pro Hac Vice Pending)
DHan@gibsondunn.com
333 S. Grand Ave.
Los Angeles, CA 90071
Telephone: (213) 229-7000

Attorneys for CSK Auto Corporation

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>DON W. WATSON, et al.,<br><br>Defendants. | Case No. CV-09-0443-GMS<br><br>**THIRD-PARTY CSK AUTO CORPORATION'S NOTICE OF MOTION AND MOTION TO INTERVENE AND STAY PROCEEDINGS OR LIMIT DISCOVERY**<br><br>(Oral Argument Requested) |
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>MAYNARD L. JENKINS,<br><br>Defendant. | Case No. CV-09-01510-PHX-GMS<br><br>**THIRD-PARTY CSK AUTO CORPORATION'S NOTICE OF MOTION AND MOTION TO INTERVENE AND STAY PROCEEDINGS OR LIMIT DISCOVERY**<br><br>(Oral Argument Requested) |

<u>NOTICE OF MOTION AND MOTION TO INTERVENE AND STAY PROCEEDINGS OR LIMIT DISCOVERY</u>

TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that CSK Auto Corporation ("CSK"), by and through the undersigned counsel, and pursuant to Fed. R. Civ. P. 24, respectfully files this motion for orders (1) allowing CSK to intervene in these actions and (2)

1   staying proceedings or limiting discovery in the matters pending resolution of
2   *United States vs. Fraser, et al.*, 09-00372-SRB.

## I. INTRODUCTION

Three distinct but inextricably-linked cases have arisen from accounting misconduct that allegedly occurred at CSK Auto Corporation ("CSK"): (1) *SEC v. Watson* ("*Watson-SEC*" matter), (2) *SEC v. Jenkins* ("*Jenkins*" matter), and (3) *U.S. v. Watson* ("*Watson-Criminal*" matter). In denying a prior motion to stay filed by the United States, the *Watson-SEC* Court stressed that defendant Don Watson and then-defendant Martin Fraser "have a strong interest in being able to defend themselves against the SEC's allegations as quickly as possible." *SEC* v. *Fraser*, 2009 U.S. Dist. LEXIS 50379, at *7-8 n.3 (D. Ariz. June 1, 2009). Circumstances have changed considerably in the intervening nineteen months, however, and a stay is now fully warranted and proper in not only *Watson-SEC*, but also *Jenkins*.

First, since the time the Court denied the government's prior stay request, an impending trial date of June 7, 2011 has been set in the *Watson-Criminal* case, whereas no trial date has been set in the *Watson-SEC* matter and discovery does not cutoff until March 2012. No scheduling order is in place in *Jenkins*.

Second, the outcome of the *Watson-Criminal* trial will sharpen and streamline and perhaps even go a long way to eliminate the need for discovery in the civil cases, save perhaps discovery on specific compensation points in *Jenkins*.

Third, the prejudice to CSK, which is responsible for advancing legal fees and other defense costs for Watson and Jenkins and covering related costs stemming from actions of their counsel, is severe and outweighs any prejudice to Watson and Jenkins, who will have ample opportunity to complete civil discovery following the forthcoming *Watson-Criminal* trial. The financial hardship to CSK tips the balance strongly in favor of a temporary stay and at the very least an order permitting only very narrow and limited document discovery.

In these circumstances, the Court should permit intervention by CSK and grant its requested stay.

## II.     BACKGROUND

### A.     The *Watson-SEC* Matter (*SEC v. Watson*, 09-CV-00443)

The alleged accounting improprieties at CSK form the basis of the *Watson-SEC* matter and the *Watson-Criminal* matter. And it is these same two matters that have brought with them onerous and continuing costs for CSK in the form of attorney's fees and other defense costs—all incurred as part of obligations imposed by CSK's bylaws, undertakings, and applicable corporate law. The itemization confirms the financial burden:

- CSK paid over $24 million to conduct the internal investigation underlying the same accounting issues spawning the costly civil litigation before the Court.

- Through December 2010, CSK has incurred more than $5.9 million in costs for the *Watson-SEC* and *Watson-Criminal* matters. At least $2.2 million relates to the *Watson-SEC* case alone, and Watson's counsel project 2011 costs at $500,000 per month for legal fees and $150,000 per month for forensic accounting assistance. (*See, e.g.*, Declaration of Jeffrey L. Groves ("Groves Decl.") ¶ 2, 4.)

- CSK also continues to advance defense costs to Opper and O'Brien, as well as expenses associated with subpoenas and requests to waive the attorney-client privilege made upon CSK, its counsel, and the law firm that assisted CSK's Audit Committee with the internal investigation. (Groves Decl. ¶ 4.)

The cost burden will not lessen moving forward. To the contrary, Watson has indicated that he plans to take at least thirty-five depositions and possibly sixty to seventy if allowed. Each deposition entails significant costs—from preparing and appearing, which sometimes involves travel, to after-the-fact reviewing the printed transcript.

### B.     The *Jenkins* Matter (*SEC v. Jenkins*, 09-CV-01510)

While *Jenkins* has not been pending for nearly as long as the *Watson-Criminal* matter, it shares two important attributes: first, *Jenkins* has come to focus on whether wrongdoing occurred at CSK, and, second, exploring that question has proven very expensive for CSK—with the company having incurred

over $1.9 million in fees and costs to date. (Groves Decl. ¶ 3.) Furthermore, counsel for Jenkins has already recently noticed or cross-noticed eight depositions (Ex. 1[1] at 2:11-13) and have indicated their intention for more, while also continuing with document discovery.

## II.   ARGUMENT

### A. The Proceedings In The *Watson-SEC* And *Jenkins* Matters Should Be Stayed, Or Discovery Should Be Limited, Pending Resolution Of The Parallel *Watson-Criminal* Matter.

#### 1. Legal Standards.

In determining whether a stay of civil litigation is in the interests of justice, the Court considers multiple factors:

> (1) the extent to which Fifth Amendment rights are implicated; (2) the interest of the plaintiff in proceeding expeditiously with the litigation or any particular aspect thereof, and the potential prejudice delay would cause to the plaintiff; (3) the burden that any particular aspect of the proceedings may impose on the defendant; (4) the convenience of the court in the management of its cases, including the efficient use of judicial resources; (5) the interests of non-parties; and (6) the interest of the public in the pending civil and criminal cases.

*Fraser*, 2009 U.S. Dist. LEXIS 50379, at *5-6 (citing *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324-25 (9th Cir. 1995)).

CSK has moved to intervene—the propriety of which is set out below—and requests a stay (or, at the very least, a limitation on discovery) on the basis of the unique burdens parallel proceedings impose on non-parties, namely CSK and the witnesses to be deposed (factor #5), the burden on Watson or Jenkins (factor #3), and the convenience of the court and judicial efficiency (factor #4). As the Court previously recognized, "[t]he other factors do not significantly weigh in favor of either outcome." *Fraser*, 2009 U.S. Dist. LEXIS 50379, at *7-8 n.3.

---

[1] Unless otherwise noted, the exhibits cited herein are attached to the concurrently-filed request for judicial notice.

### 2. Circumstances Have Changed Considerably In The Last Year

The beginning point must be the recognition of the circumstances that have changed since June 2009, when the *Watson-SEC* Court denied DOJ's prior motion to stay the *Watson-SEC* matter. Those circumstances are many:

- *Then*, a trial date had not been set in the *Watson-Criminal* matter. *But now*, Watson's criminal trial is scheduled to begin June 7, 2011 (Ex. 1 at 13:21-22)—in less than six months and during a period that almost surely will be consumed by the preparation of witnesses, exhibits, and motions *in limine.*

- *Then*, no scheduling order was in place in the *Watson-SEC* matter and thus the timing, pace, and scope of discovery was uncertain. *But now*, a scheduling order is in place, with discovery not set to end until October 31, 2011, dispositive motions due by March 10, 2012, and trial at date sometime beyond that outer date. (*See* Ex. 2 at 4:5-9.)

- *Then*, the *Watson-SEC* matter had entailed little more than the SEC's filing of its complaint and the filing of motions to dismiss. *But now*, the Court has ruled on the motions to dismiss, a new complaint has been filed, and the case is proceeding to full discovery absent a stay or limiting order.

- *Then*, the *Jenkins* matter had not even been filed. *But now*, the *Jenkins* matter not only has commenced, but also has come to focus on the very issue at the epicenter of both the *Watson-SEC* matter the *Watson-Criminal* trial—namely, whether misconduct occurred at CSK.

- *Then*, CSK had no indication of the scope or pace of intended discovery by Watson or Jenkins. *But now,* both points are clear—as Watson and Jenkins, on parallel tracks, have indicated they intend to take the maximum number of depositions permitted by the Court, have already noticed and cross noticed at least eight of those depositions, and otherwise continue to lodge upon CSK requests for documents.

### 3. The *Watson-SEC* Matter.

#### a. CSK Will Be Substantially Prejudiced Without A Stay Or Limit On Discovery.

Against the backdrop of these changed circumstances is an equally clear consequence: if discovery proceeds, the financial burdens on CSK will mount. These burdens are not abstract. Take, for example, the *Watson-SEC* matter, in which Watson's counsel already have been paid over $2.2 million in fees and

costs. Those payments followed ones of $750,000 for counsel's representation of Watson during the SEC investigation of CSK. Discovery moving forward means that CSK will be responsible for advancing the fees and costs necessary to obtain and review documents, respond to inevitable follow-up requests for additional documents, prepare for and take depositions, and review the transcripts of those depositions toward the end of identifying defense strategies and preparing motions. Watson's counsel has estimated these costs at $650,000 per month ($500,000 for legal fees and $150,000 for forensic accounting assistance), and nothing prevents an upward modification of this estimate. (Groves Decl. ¶ 4.) Indeed, depositions likely will prove particularly expensive, as CSK may be expected to pay not only for counsel to the parties' attendance, but also that of counsel for O'Brien, Opper, and the company itself. Removing all doubt about these potential burdens, Watson has indicated that he plans to take at least thirty-five depositions and possibly sixty to seventy if allowed by the Court. (Groves Decl. Ex. B at 4.)

Absent a stay or limiting order, the costs likely will not end there. Watson has served subpoenas on O'Melveny & Myers LLP (which assisted CSK's Audit Committee with the company's internal investigation), Ernst & Young (which assisted O'Melveny in the course of its work), PricewaterhouseCoopers (CSK's auditor), and counsel for CSK. In doing so, Watson asked CSK to waive the attorney client privilege, which CSK to date has declined to do. So, beyond the burden of advancing legal fees and defense costs in the *Watson-Criminal* and *Watson-SEC* matters, CSK also may well find itself incurring substantial costs to litigate privilege issues.

At every turn, then, the landscape for CSK is defined by cost—past, present, and future.[2] On the side of the balance lays Watson's interest in this

---

[2] Defendants may respond that CSK should not be heard to complain about fees and costs as a substantial amount to date ultimately has been paid by D&O
[Footnote continued on next page]

1  matter proceeding alongside his criminal case.  The balance tips decidedly in favor
2  of a stay or limiting order.

3        **3.**    **Watson Will Suffer No Prejudice From A Stay Or Limit On Discovery.**
4

5  The prejudice assessment should start with recognition of the clarifying
6  impact that Watson's criminal trial almost certainly will have on the scope of
7  necessary discovery in this civil matter.  For example, if Watson is convicted, the
8  SEC would most likely move for summary judgment given the substantial overlap
9  between this case and the criminal one, which this Court has recognized.  *See, e.g.*,
10 *Fraser*, 2009 U.S. Dist. LEXIS 50379, at *4 (observing that "there are a number
11 of questions of law and fact common to both the civil and criminal cases (namely,
12 whether Defendants violated various provisions of the securities laws)").  This
13 result almost certainly would obviate the need for discovery.  On the other hand, if
14 Watson is acquitted, the SEC could drop all or some of its charges—again
15 resulting in significant savings because of the subsequent streamlining of issues
16 and discovery.  *See, e.g.*, *Grubbs v. Irey*, 2008 U.S. Dist. LEXIS 26758, at *15-16
17 (E.D. Cal. Mar. 28, 2008) (stating that "the outcome of the criminal proceedings
18 may guide the parties in settlement discussions and *potentially eliminate the need*
19 *to litigate some or all of the issues in this case*") (emphasis added).  In short,
20 "resolution of the parallel [criminal] proceedings will likely serve to narrow the
21 issues and streamline the discovery process in the civil action."  *Id.*, at *15.
22 The prejudice to Watson of a stay or limiting order is minimal, if any.  The
23 *Watson-SEC* Court previously denied the government's motion to stay this case

---

25 [Footnote continued from previous page]
26 insurance. The existence of D&O insurance and whether a carrier has reimbursed CSK is irrelevant, as the existence of coverage does not and should not lead one to the conclusion that coverage is limitless, that there are no issues
27 associated with coverage, or that its existence gives defense counsel the right to proceed at any cost when more cost-effective approaches to discovery—
28 especially the *timing of discovery—are* available.

because the government's claims of prejudice were outweighed by the "substantial[] prejudice" to "Defendants' interest in the speedy resolution of the SEC's claims against them." *Fraser*, 2009 U.S. Dist. LEXIS, at *9, *12-14. As explained, however, circumstances have changed considerably in the last year, with there now being much certainty about the impact of discovery moving forward in *Watson-SEC* and *Jenkins*. Watson has agreed to a schedule that pushes resolution of this case years well into the future. His doing so shows that his "interest in [a] speedy resolution" will not be prejudiced by a stay or limit on discovery. Further, all the other relevant parties—the SEC, Opper, O'Brien, and DOJ—support this motion and make no claims of prejudice; DOJ, in fact, has also moved for a limitation on discovery. Moreover, the SEC has indicated its willingness to agree to a reasonable modification of the discovery schedule should this case be stayed and still proceed after resolution of the criminal case. Watson would thus have a significant and meaningful opportunity to conduct discovery in that situation and would not be prejudiced.

That Watson recently chose to testify in the SEC matter does not alter the outcome. Nothing about that decision changes the schedule in place in the SEC matter, the burdens Watson's planned discovery would impose on CSK, or the fact that his impending trial will almost certainly clarify the scope of, if not completely eliminate the need for, discovery in this matter. The law requires a balancing of interests in assessing stay applications precisely to enable appropriate consideration of a multitude of factors, including the burdens parallel proceedings would impose upon non-parties—here CSK and DOJ. Those burdens, as explained, are acute and overwhelm Watson's interests *at this time* in pursuing full discovery in the SEC civil matter.

In the end, then, a stay of *Watson-SEC* is fully warranted, appropriate, and necessary to protect CSK's interests. Watson's counsel has been unable and indeed unwilling to identify any particular prejudice flowing from a different

1  conclusion.  Indeed, in response to an express request to identify prejudice (*see* Groves Decl. Ex. A), Watson's counsel indicated that Watson wants to press ahead in the civil case in order to benefit his criminal case—a clearly impermissible purpose, as DOJ emphasizes in its moving papers.

### 3. The *Jenkins* Matter.

The *Jenkins* matter should also be stayed, or discovery should be limited, because of the prejudice that CSK will suffer should the matter be allowed to proceed.  As in the *Watson-SEC* matter, the company will be forced to incur costly legal expenses that could be obviated by the resolution of the *Watson-Criminal* matter.  Jenkins has conceded that one of the key issues underlying his case—whether misconduct occurred at CSK during his tenure as CEO—cannot be resolved until after the criminal case is resolved.  (Ex. 1 at 13:21-27, 7:3-5.)  Thus, "the outcome of the criminal proceedings may . . . potentially eliminate the need to litigate some or all of the issues in this case." *Grubbs*, 2008 U.S. Dist. LEXIS 26758, at *15-16.

In addition, because the criminal trial will be public, an abundance of evidence will be available to Jenkins during the proceedings.  CSK thus should not be forced to pay for discovery on issues that may be mooted by the *Watson-Criminal* trial.  Further, if the *Watson-SEC* action is stayed, that also warrants a stay of the *Jenkins* matter because Jenkins and Watson seek to depose many of the same witnesses, who should not have to be deposed—and inconvenienced—twice.  Nor should CSK be forced to foot legal bills inflated by such unnecessary depositions.

Jenkins will suffer no prejudice from a stay.  He has already acknowledged that, regardless of whether a stay is granted, he must wait for the resolution of the *Watson-Criminal* case and that his trial cannot proceed before that occurs.  In light of the minimal prejudice—if any—that Jenkins will suffer from a stay, and the

substantial, but likely unnecessary costs that may be forced upon CSK, this motion should be granted.

If the Court determines that a limit of discovery is more appropriate than a stay, CSK respectfully requests that the taking of depositions be stayed until resolution of the criminal case.

### 4. Judicial Economy Favors A Stay Or Limitation Of Discovery.

Principles of judicial economy also support a stay or limit on discovery. The Court previously stated this factor did not weigh in favor of granting or denying a stay because "while proceedings in the criminal case might refine issues in the civil case, the opposite could also be true, and thus judicial economy may just as well be served by conducting the civil case together with the criminal case." *Fraser*, 2009 U.S. Dist. LEXIS, at *7-8 n.3. But, as noted, the criminal case will be tried before this matter (Ex. 1 at 13:21-22; Ex. 2 at 4:5-9), so only issues here will be refined. *See Grubbs*, 2008 U.S. Dist. LEXIS 26758, at *15 (a stay would "serve the interests of judicial economy because the resolution of the parallel [criminal] proceedings w[ould] likely serve to narrow the issues and streamline the discovery process in the civil action"); *Lizarraga v. City of Nogales*, 2007 U.S. Dist. LEXIS 90055, at *6 (D. Ariz. Nov. 28, 2007) ("[t]he potential dispositive or clarifying effect of the resolution of [the] criminal case on the civil proceeding also may weigh in favor of a stay") (internal quotation marks omitted). Further, because it is clear that the criminal case will be tried first, the Court will not be "rely[ing] upon fortuitous events to manage its docket." *Fraser*, 2009 U.S. Dist. LEXIS, at *7-8 n.3.

Moreover, a stay or discovery limitation would also "allow civil discovery to proceed more smoothly than would otherwise be possible" because "the termination of a parallel criminal case can be expected to remove the predicate for the assertion of the Fifth Amendment right against self-incrimination by potential

1  deponents in the civil case." *Grubbs*, 2008 U.S. Dist. LEXIS 26758, at *16. This
2  would benefit both Watson and the SEC. Finally, a stay or discovery limitation
3  would also allow this Court to focus on more pressing matters, rather than on, for
4  example, the numerous discovery disputes that will undoubtedly arise here but that
5  ultimately may be mooted by the resolution of the criminal case.

6  All the relevant factors thus weigh in favor of granting CSK's motion to
7  stay proceedings or limit discovery in both *Watson-SEC* and *Jenkins* matter until
8  completion of the *Watson-Criminal* trial. If the Court determines that a limit of
9  discovery is more appropriate than a stay, CSK respectfully requests that the
10 taking of depositions be stayed until resolution of the criminal case.

**B.  CSK May Intervene In The *Watson-SEC* and *Jenkins* Cases As A Matter Of Right.**

As part of granting the requested stay, the Court also should grant CSK's accompanying request to intervene pursuant to Fed. R. Civ. P. 24(a)(2).

**1.  Legal Standards.**

The Court "*must* permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P.. 24(a)(2) (emphasis added). As a practical matter, a four-part test governs the pertinent inquiry:

> (1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.

*Forest Conservation Council v. United States Forest Serv.*, 66 F.3d 1489, 1493 (9th Cir. 1995); *see also Southwest Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 817 (9th Cir. 2001).

1    It is further settled that "[c]ourts generally construe Rule 24(a) liberally in favor of potential intervenors and focus on practical considerations rather than technical distinctions." *Ctr. for Biological Diversity v. Kempthorne*, 2009 U.S. Dist. LEXIS 125509, at *5 (D. Ariz. Jan. 15, 2009); *see also Forest Conservation Council v. United States Forest Serv.*, 66 F.3d 1489, 1493 (9th Cir. 1995) ("This court interprets [FRCP 24(a)] broadly in favor of intervention."). In addition, "[c]ourts are to take all well-pleaded, nonconclusory allegations in the motion to intervene . . . as true absent sham, frivolity or other objections." *Berg*, 268 F.3d at 819-20.

### 2. CSK Satisfies The Test For Interventions Of Right.

#### a. CSK's Motion Is Timely.

The *Watson-SEC* and *Jenkins* matters are not set for trial until, at the earliest, 2012—long after completion of the *Watson-Criminal* trial. Discovery in both cases has proceeded slowly but is now ramping up. Now, then, is the right time for CSK to intervene so that discovery in the cases may be properly coordinated under the Court's sound discretion. *See, e.g.*, *Home Builders Ass'n of N. Cal. v. U.S. Fish and Wildlife Service*, 2006 U.S. Dist. LEXIS 37749, at *10 (E.D. Cal. May 24, 2006). There being no delay in CSK's requested stay, the company's motion to intervene is timely and reflects no delay. *See, e.g.*, *Fraser*, 2009 U.S. Dist. LEXIS 50379, at *4.

#### b. CSK's Protectable Interests Are Clear.

As a proposed intervenor, CSK also must show that it has a significantly protectable interest relating to the action. *Forest Conservation*, 66 F.3d at 1493. "It is generally enough that the interest asserted is protectable under some law," *LG Elecs., Inc. v. Q-Lity Computer, Inc.*, 211 F.R.D. 360, 364 (N.D. Cal. Dec. 4, 2002) (internal quotations marks and citations omitted), and "a 'non-speculative, economic* interest may be sufficient.'" *Home Builders*, 2006 U.S. Dist. LEXIS

1  37749, at *13 (quoting *United States v. Alisal Water Corp.*, 370 F.3d 915, 919-20 (9th Cir. 2004)) (emphasis added).

CSK easily clears this hurdle. With its assets being used to pay Watson's and Jenkins's legal expenses, the company's interests are concrete, particular, and capable of being protected by a stay. *See LG Elecs.*, 211 F.R.D. at 364  CSK's interests are also "related to the underlying subject matter of [both] action[s]." *Home Builders*, 2006 U.S. Dist. LEXIS 37749, at *13; *see also* Fed. R. Civ. Pro. 24(a)(2). Courts have defined the term "action" in FRCP 24(a) as "*any* ruling of the trial court," *Northrop Grumman Info. Tech., Inc. v. United States*, 74 Fed. Cl. 407, 414 (Fed. Cl. 2006) (emphasis added),[3] including "collateral discovery issues," *United States v. American Tel. & Tel. Co.*, 642 F.2d 1285, 1292 (D.C. Cir. 1980); *see also Formulabs, Inc. v. Hartley Pen Co.*, 275 F.2d 52, 55-57 (9th Cir. 1960). With CSK shouldering the defense costs for all civil discovery activity, the company's concrete economic interests are directly related to the scope, substance, and timing of discovery, but also to the entire progression of litigation. CSK thus meets the second prong of the intervention test.

### c.  Intervention Allows CSK To Protect Its Interests.

The law also requires CSK to show that the "disposition of the action may as a practical matter impair or impede its ability to protect [its] interest[s]." *Forest Conservation*, 66 F.3d at 1493. Here, if not allowed to intervene, CSK will be "substantially affected in a practical sense" by litigation in both actions. *Berg*, 268 F.3d at 820. The legal bills it must pay will continue to rise, with little, or likely no, recourse for the company. CSK thus will be unable to protect its economic interests without intervention.

---

[3] Although *Northrop* involved Rule 24(a)(2) of the Rules of the U.S. Court of Federal Claims ("RCFC"), the court cited and relied on cases involving Fed. R. Civ. P. 24(a)(2), as the latter was was "nearly identical" to RCFC 24(a)(2) and "cases interpreting Federal Rule 24(a) are persuasive in interpreting RCFC Rule 24(a)." *Id.* at 412 n.4.

### d. The Parties Do Not Adequately Represent CSK's Interests.

Finally, CSK must establish that its interests are not adequately represented by the existing parties. *Forest Conservation*, 66 F.3d at 1493. Here, neither the SEC, Watson, nor Jenkins purport to represent CSK's interests, and neither party will "undoubtedly make all[, or, indeed, any, of CSK's] arguments." *Berg*, 268 F.3d at 822. CSK thus easily satisfies this prong. *LG Elecs.*, 211 F.R.D. at 365 ("The burden of showing inadequacy is minimal.").

### III. CONCLUSION

For these reasons, CSK respectfully requests that the Court grant this motion to intervene and to stay proceedings or limit discovery pending resolution of the related criminal action.

DATED this 11th day of January 2011.

>
> GIBSON, DUNN & CRUTCHER LLP
> Douglas M. Fuchs
> 333 South Grand Avenue
> Los Angeles, CA 90071
>
> By: */s/Douglas M. Fuchs*
>
>
> LEWIS AND ROCA LLP
>
> By */s/ Dale Danneman*
>     Dale Danneman
>     40 N. Central Avenue
>     Phoenix, Az. 85004
>
> Attorneys for CSK Auto Corporation

Gibson, Dunn & Crutcher LLP

13

**CERTIFICATE OF SERVICE**

I hereby certify that on January 11, 2011 I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the District of Arizona using the CM/ECF system. Participants who are registered CM/ECF users will be served by the CM/ECF system.

By /s/ June Yourgulez