# EXHIBIT 1

| | |
|---|---|
| 1 | DONALD W. SEARLES, CALIFORNIA Bar No. 135705<br>E-mail: searlesd@sec.gov |
| 2 | C. DABNEY O'RIORDAN, CALIFORNIA Bar No. 205158<br>E-mail: oriordand@sec.gov |
| 3 | |
| 4 | Attorneys for Plaintiff Securities and Exchange Commission<br>Rosalind R. Tyson, Regional Director |
| 5 | Michelle Wein Layne, Associate Regional Director<br>5670 Wilshire Boulevard, 11th Floor |
| 6 | Los Angeles, California 90036-3648<br>Telephone: (323) 965-3998<br>Facsimile: (323) 965-3908 |
| 7 | |
| 8 | JOHN W. SPIEGEL (*Pro Hac Vice*)<br>John.Spiegel@mto.com |
| 9 | GREGORY J. WEINGART (*Pro Hac Vice*)<br>Gregory.Weingart@mto.com |
| 10 | MUNGER, TOLLES & OLSON LLP<br>355 South Grand Avenue |
| 11 | Thirty-Fifth Floor<br>Los Angeles, CA 90071-1560 |
| 12 | Telephone: (213) 683-9100<br>Facsimile: (213) 687-3702 |
| 13 | |
| 14 | Attorneys for Defendant<br>Maynard L. Jenkins |

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | | |
|---|---|---|
| 17 | SECURITIES AND EXCHANGE<br>COMMISSION, | CASE NO. CV-09-01510-PHX-GMS |
| 18 | | **JOINT CASE MANAGEMENT** |
| 19 | Plaintiff, | **STATEMENT FOR JANUARY 14, 2011**<br>**SCHEDULING CONFERENCE** |
| 20 | v. | Date: January 14, 2011 |
| 21 | MAYNARD L. JENKINS, | Time: 10:00 a.m.____<br>Courtroom: 602 |
| 22 | Defendant. | (Hon. G. Murray Snow) |

12667783.2

*SEC v. Jenkins*, CV 09-1510-PHX-GMS
JOINT CASE MANAGEMENT STATEMENT FOR JANUARY 14, 2011 SCHEDULING CONFERENCE

Counsel for Plaintiff Securities and Exchange Commission ("SEC" or the "Commission") and for Defendant Maynard L. Jenkins ("Jenkins" or "Mr. Jenkins") submit this Joint Statement setting forth each party's position for the January 14, 2011 Scheduling Conference.

## I. PROCEDURAL STATUS.

1. SEC Statement.

On November 24, 2010, this Court granted Jenkins' motion for a continuance pursuant to Rule 56(f) of the Federal Rules of Civil Procedure and continued the scheduling conference from December 10, 2010 to January 14, 2011. On December 17 & 17, 2010 the Commission took the deposition of Don Watson, in *SEC v. Fraser, et al.* CV-09-433 PHX-GMS. Counsel for Jenkins did not participate in that deposition. In addition, Jenkins has recently noticed, or cross-noticed in conjunction with Watson, the depositions of eight former CSK employees to occur in January and early February, 2011.

Prior to the filing of the Commission's motion for partial summary judgment, the Commission requested that Jenkins sit for a deposition, to question him on the results of CSK's internal accounting investigation and his understanding of why CSK was required to file its second restatement. Through his counsel, Jenkins refused to do so, claiming that he had yet to review the voluminous documentary discovery then recently produced by the Commission. As a result of the Court's November 24, 2010 Order, the Commission has renewed its request to depose Jenkins on all issues, *i.e.*, both misconduct and compensation related issues, and noticed him for deposition on January 7, 2011. Counsel for Jenkins refused to produce him on that date, citing Jenkins' vacation schedule and the fact that Jenkins had recently propounded documentary discovery requests on both CSK/O'Reilly, and CSK's outside auditors, PwC, that relate to executive compensation issues (as opposed to the underlying accounting misconduct that resulted in CSK's second restatement). Both CSK/O'Reilly and PwC have filed objections and responses to those discovery requests and the Commission anticipates a protracted period of negotiations and potential motion work regarding Jenkins' discovery requests to CSK/O'Reilly and PwC.

12667783.2
- 2 -

1  Jenkins' counsel refuses to produce Jenkins for deposition until CSK/O'Reilly and
2  PwC have fully complied with Jenkins' discovery requests. The Commission believes
3  that Jenkins' position is not well founded, as he was not a member of CSK's
4  Compensation Committee and was not involved in establishing his own compensation.
5  Undoubtedly, Jenkins is aware of the general financial performance metrics and personal
6  goals that affected his bonuses, and there is no reason his deposition should be delayed,
7  particularly where there is no reason to believe that Jenkins has ever seen the documents
8  he currently seeks from CSK/O'Reilly. In addition, those documents are entirely
9  irrelevant to the underlying issue of "misconduct." Similarly, there is no reason to believe
10 Jenkins has ever seen the documents he currently seeks from PwC, nor do those
11 documents relate to the underlying issue of "misconduct." As such, there is no reason for
12 Jenkins to refuse to make himself immediately available for a deposition, particularly
13 where his anticipated admissions regarding the results of CSK's internal accounting
14 investigation and his understanding of why CSK was required to file a second restatement
15 will likely moot the need for any additional discovery on the issue of "misconduct."
16 Accordingly, at the Scheduling Conference, the Commission will request the Court's
17 assistance in resolving the dispute between the parties concerning the timing of Jenkins'
18 deposition. The Commission would also welcome comments from the Court as to what
19 discovery it believes should be conducted prior to ruling on the Commission's partial
20 motion for summary judgment.
21    2. Mr. Jenkins Statement.
22    <u>Mr. Jenkins' Deposition</u>
23    The SEC states that it seeks to take Mr. Jenkins' deposition both on the issue of
24 "misconduct" and on issues relating to the amount of compensation that Mr. Jenkins
25 should be required to repay if liability were found under Section 304.[1] Mr. Jenkins is

---

[1] The SEC previously indicated in September 2010 that it would like to depose Mr. Jenkins but then did not press that request, apparently because it was inconsistent with the SEC's assertion that this Court could decide the SEC's motion for partial summary judgment based solely on the Second Restatement, the Opper and O'Brien pleas and other documents already in existence.

12667783.2                              - 3 -

1  prepared to proceed with his deposition promptly, as soon as the important documents
2  described below relating to the compensation issues in the case have been obtained.

3  As counsel for Mr. Jenkins has explained to the SEC, before Mr. Jenkins should be
4  deposed on issues relating to compensation, he needs first to obtain and have an
5  opportunity to review the compensation-related documents described below that he has
6  subpoenaed from CSK and PwC. These documents relate to the individual performance
7  goals and other criteria established by CSK for payment of Mr. Jenkins' bonuses and
8  other incentive-based compensation, the factors taken into account by CSK's
9  Compensation Committee in setting the amount of these payments, any effect on Mr.
10  Jenkins' compensation from the restated financials set forth in the First Restatement and
11  the Second Restatement, and communications with Mr. Jenkins on these issues. They are
12  therefore directly relevant to the issue of the amount of compensation that Mr. Jenkins
13  should be required to repay if liability under Section 304 were found.

14  As this Court stated in its June 9, 2010 Order denying Mr. Jenkins' motion to
15  dismiss, "to the extent that the statute or the remedy sought under it result in a severe and
16  unjustified deprivation to the Defendant, constitutional issues may arise in particular
17  cases." June 9, 2010 Order at 7:18-20.[2] This Court noted that determination of the
18  amount of reimbursement to which the SEC could be entitled "can only be ascertained
19  through development of the nature of the recovery sought by the SEC against Jenkins in
20  light of the facts of this case." *Id*. at 7:15-18. These compensation issues therefore are a
21  critical element of the SEC's case on which Mr. Jenkins should be afforded a fair
22  opportunity to prepare before he is deposed.

---

[2] In support of this statement, the Court cited the following cases: *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 568 (1996) (holding that grossly excessive punitive damage awards violate the Due Process Clause); *United States v. Bajakajian*, 524 U.S. 321, 334 (1998) (holding that a punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of the defendant's offense); *S.W. Tel. & Tel. Co. v. Danaher*, 238 U.S. 490–91 (1915) (striking down a penalty imposed on a telephone company for refusing to refusing to provide service where such refusal had never been declared unlawful and was applied impartially). *Id*. at 7:20-26.

12667783.2 - 4 -

1    The SEC's assertion above that Mr. Jenkins has "never seen" these compensation-
2 related documents described below that he has subpoenaed from CSK and PwC is without
3 basis, and the SEC does not identify on what ground it makes this assertion. The
4 documents to be produced should include, for example, evidence of the individual
5 "performance goals" for Mr. Jenkins that were established with Mr. Jenkins by CSK's
6 Compensation Committee as one component of his bonus as well as documents
7 evidencing communications between Mr. Jenkins and members of the Compensation
8 Committee on the payment of bonuses to Mr. Jenkins and their amount.

9    Mr. Jenkins should have the opportunity to review these documents before he is
10 deposed by the SEC, both to the extent that the documents were seen by Mr. Jenkins at the
11 time of the events in question and because Mr. Jenkins' review of these documents is
12 necessary to enable him to refresh his recollection regarding these compensation-related
13 issues from as long as 10 years ago. These documents should also be obtained and
14 reviewed by Mr. Jenkins before he is deposed by the SEC so that the SEC cannot claim
15 that it is entitled to a second deposition of Mr. Jenkins (who is 68 years old and in poor
16 health) in order to examine Mr. Jenkins on these compensation-related documents.
17 Notably, notwithstanding that counsel for Mr. Jenkins previously raised this concern with
18 counsel for the SEC, and that before drafting its portion of this Joint Statement counsel for
19 the SEC saw this concern identified in Mr. Jenkins' portion, the SEC does not state that it
20 will not seek a second deposition of Mr. Jenkins on compensation-related issues.

21    The SEC cannot claim any prejudice from having to wait to depose Mr. Jenkins on
22 issues relating to alleged "misconduct" (or compensation) until after Mr. Jenkins has
23 obtained these compensation-related documents. During its multi-year investigation the
24 SEC examined Mr. Jenkins under oath for *three* days and, accordingly, *already* knows
25 Mr. Jenkins' testimony on the subjects that the SEC identifies above for his deposition
26 "regarding the results of CSK's internal accounting investigation and his understanding
27 why CSK was required to file a second restatement." The SEC therefore has no pressing
28 need to depose Mr. Jenkins again to know his testimony on the issue of whether there was

12667783.2                                              - 5 -

1  "misconduct" at CSK. The SEC also already has submitted Mr. Jenkins' testimony in
2  support of its motion for partial summary judgment and does not need to depose him
3  again for its motion. Moreover, contrary to the SEC's asserted "anticipat[ion]" stated
4  above, as set forth in Mr. Jenkins' opposition to the SEC's motion, Mr. Jenkins' testimony
5  shows that he is without personal knowledge of the alleged accounting improprieties at
6  CSK and it therefore does not support that there are no triable questions of fact on whether
7  there was "misconduct" at CSK.

8      In sum, given that (i) as set forth below Mr. Jenkins anticipates timely cooperation
9  from CSK in obtaining production of the compensation-related documents and (ii) the
10  SEC still has *months* before there is any fact discovery cut-off or deadline for the filing of
11  dispositive motions, Mr. Jenkins' deposition should be deferred until after he has had an
12  opportunity to obtain and review the compensation-related documents he has subpoenaed
13  from CSK and PwC.

14      <u>SEC's Motion for Partial Summary Judgment</u>. On September 17, 2010, the SEC
15  filed a motion for partial summary judgment on the issue of whether there was
16  "misconduct" at CSK within the meaning of Section 304 of the Sarbanes-Oxley Act, 17
17  U.S.C. §7234 ("Section 304").

18      On October 29, 2010, Mr. Jenkins filed his opposition to the SEC's motion and
19  also filed a motion under Rule 56(f) of the Federal *Rules of Civil Procedure* for
20  continuance of the SEC's motion on the ground that Mr. Jenkins needs additional
21  discovery on the issue of "misconduct" before the SEC's motion should be heard.
22  Specifically, Mr. Jenkins explained in the Weingart Declaration filed in support of his
23  Rule 56(f) motion that the identical considerations that caused the SEC to request a trial
24  date in this action after Messrs. Watson, Opper and O'Brien are available to testify
25  establish that the SEC's motion should denied, or at least continued, until the testimony of
26  these three individuals can be obtained. As shown by its summary judgment motion, the
27  SEC's principal arguments of "misconduct" at CSK are based on alleged acts by these
28  individuals, who the SEC describes as "the individuals most involved." *See also* SEC's

12667783.2     - 6 -

1  statement at 6:2-4 and 13:4-7 of Joint Case Management Report filed July 23, 2010 in this
2  action (Messrs. Watson, Opper and O'Brien are "the individuals most involved" in the
3  alleged misconduct).  Mr. Jenkins understands based on the SEC's statements that Messrs.
4  O'Brien and Opper will not be available to testify until after conclusion of Mr. Watson's
5  criminal trial, currently scheduled for June 7, 2011.  Mr. Jenkins further explained in the
6  Weingart Declaration that the SEC's motion should also be denied, or at least continued,
7  because he has not yet had the opportunity to depose the additional individuals employed
8  by CSK who were involved in its vendor allowance program and its accounting for vendor
9  allowances or to depose the PwC auditors who audited CSK's financial statements on the
10 issue of vendor allowances and other issues.

11 On November 12, 2010, the SEC filed its reply in support of its motion for partial
12 summary judgment, without responding to Mr. Jenkins' Rule 56(f) motion.

13 On November 24, 2010, this Court filed its Order granting Mr. Jenkins' Rule 56(f)
14 motion and continuing this Scheduling Conference from December 12, 2010 to January
15 14, 2011.

16 <u>SEC Motion for Protective Order/DOJ Motion for Stay</u>.  During a telephonic
17 conference on January 7, 2011, this Court denied the SEC's motion for a protective order
18 to stay the deposition of Aimee Hudson scheduled for January 11, 2011.  The Court also
19 directed Mr. Jenkins and Mr. Watson to file not later than January 11, 2011, any
20 opposition to the DOJ's motion to intervene in this action and to stay the depositions of J.
21 Scott Neff, Paul Sundin, Andrew Stevens, Dale Ward and Michael Thompson until
22 resolution Mr. Watson's criminal proceeding.  Further, the Court stayed Mr. Ward's
23 deposition that was scheduled for January 13, 2011.  These depositions are discussed
24 further below.

25 **II.    STATUS OF DISCOVERY**.
26         1. SEC Statement.
27 To date, the Commission has responded to Jenkins' requests for production of
28 documents; two sets of interrogatories; and requests for admission.  Other than for the

12667783.2                                                  - 7 -

1  Commission's recent production of a small set of documents from PwC, which had been
2  inadvertently omitted from the Commission's prior production of electronic documents,
3  there are no current discovery disputes between the parties, other than the timing of
4  Jenkins' deposition.
5       As reflected below, Jenkins contends that Watson, during his deposition, denied
6  any wrongdoing on his part and denied knowledge of any wrongdoing by others. That is a
7  gross mischaracterization of Watson's testimony. Rather, when confronted with dozens
8  of incriminating documents establishing his knowledge of the movement of vendor
9  allowance funds across years to cover up uncollectible account receivables, all Watson
10 could state was that he had no recollection of the documents. In addition, he did not deny
11 wrongdoing by others, he simply claimed he was not aware of it. Watson further testified
12 that accounting "secrets" (*i.e.,* the movement of LWT funds across years to avoid write
13 offs) had been kept from him and had he known of them at the time, "he would have dealt
14 with those people very harshly." The following excerpt from the second day of his
15 testimony best describes Watson's position:

```
 Q.  BY MR. SEARLES:  If amounts were moved as
18    reflected in this -- do you see on the first
19    page of this exhibit, again, a column over to
20    the right portion of the page off invoice moved
21    to '03. Another column Q2 billbacks moved to
22    '03. Do you see those columns?
23       A.  Yes.
24       Q.  Would Mr. -- assuming that that conduct
25    took place, do you think Mr. O'Brien or
                              561
 1    Mr. Opper would try to keep that conduct a
 2    secret from you?
 3       MR. ROSHKA:  Objection; form, foundation.
 4    Speculation. Vague and ambiguous.
 5       THE WITNESS:  I'm not sure if they would
 6    have or not.
 7       Q.  BY MR. SEARLES:  Do you think there were
 8    secrets in the finance department that you were
 9    not advised of regarding the accounting of
10    LWT?
11       MR. ROSHKA:  Object to the form,
12    foundation. Vague and ambiguous.
13       THE WITNESS:  As I sit here today, I
14    believe that happened.
15       Q.  BY MR. SEARLES:  And what do you believe
```

12667783.2      - 8 -

```
16   was the secret as you sit here today?
17        A.  As I sit here today, in reading some of
18   the documents you did earlier, I don't believe I
19   was told everything that was happening within
20   the department.
21        Q.  Why do you think you were not told?
22        A.  I don't believe I was told specifically
23   everything that was happening.
24        Q.  Do you believe you were told about the
25   movement of funds across years to make up for
                           562
1    collection shortfalls in prior years?
2         MR. ROSHKA:  Object to the form,
3    foundation.
4         THE WITNESS:  No, I don't believe I
5    was.
6         Q.  BY MR. SEARLES:  Seeing the documents you
7    see here today and yesterday, do you believe
8    that practice in fact occurred?
9         MR. ROSHKA:  Object to the form,
10   foundation.  Calls for speculation.
11        THE WITNESS:  As I sit here today, I
12   don't know if that happened.
13        Q.  BY MR. SEARLES:  This document certainly
14   reflects that it did, didn't it?
15        MR. ROSHKA:  Object to the form,
16   foundation.  Vague and ambiguous.
17        THE WITNESS:  This document has columns
18   on here that indicate stuff was moved.  I don't
19   have knowledge of how they moved it and what
20   they moved.
21        Q.  BY MR. SEARLES:  All right.  Well, when
22   you say that you believe that certain things
23   were concealed from you, what are the things
24   that you believe were concealed from you?
25        A.  As I sit here today reading the 10-K I
                           563
1    believe there were monies that were
2    appropriately -- were not appropriately handled
3    in the 2004 fiscal year.
4         Q.  And how were they inappropriately handled
5    that was a secret to you?
6         A.  We did a restatement as a company in
7    2004.  I was not aware of any monies that were
8    moved from '04 to '03 at the time, and so I
9    believe that that was withheld from me.
10        Q.  And who do you believe was responsible
11   for withholding that information from you?
12        MR. ROSHKA:  Object to the form,
13   foundation.
14        THE WITNESS:  I don't know who
15   specifically was instructed not to tell me, but
16   I don't believe I was told.
17        Q.  BY MR. SEARLES:  And had you known of
18   that conduct at the time it was occurring as the
```

```
19   chief financial officer of CSK would you have
20   put a stop to it?
21       A.  I can tell you if I would have known that
22   at the time of a restatement we would have dealt
23   with it at the time of the restatement and we
24   would have dealt with those people very
25   harshly.
```

R.T. Watson pp. 560 – 563.

Accordingly, Jenkins' position that Watson's testimony, standing alone, creates an insurmountable factual barrier to the Commission's motion for partial summary judgment on the issue of misconduct is simply wrong. If anything, Watson's deposition testimony amounts to an admission on his part that the movement of vendor allowance funds across years was fraudulent, but that he simply didn't know about. As such, Watson's testimony supports the Commission's motion for summary judgment against Jenkins. In any event, the Commission continues to believe that Jenkins' admission of company misconduct, by Watson, O'Brien, Opper or others, is sufficient to establish the element of misconduct and, for that reason, requests that Jenkins be deposed at the earliest opportunity.

In addition to Jenkins, the Commission anticipates deposing members of CSK's Compensation Committee and employees of PwC on compensation related issues. Finally, in the event the Commission is required to prove the element of "misconduct" based on the testimony of the individuals personally involved in that conduct, the Commission anticipates taking the testimony of Opper, O'Brien, and any other witnesses who intend to invoke their Fifth Amendment privilege prior to the conclusion of Watson's criminal case, after the conclusion of Watson's criminal trial, which is currently set to commence on June 7, 2011.

2. Mr. Jenkins Statement.

<u>Document Discovery</u>

Mr. Jenkins has received and is reviewing the documents produced by the SEC in response to his document requests, which Mr. Jenkins understands consist of documents that the Department of Justice/SEC obtained from CSK and from CSK's outside auditor PricewaterhouseCoopers ("PwC"). In connection with a document subpoena served on

1  PwC in December 2010, counsel for Mr. Jenkins learned for the first time that, contrary to
2  the SEC's specific representations to Mr. Jenkins and to this Court, more than 55,000
3  pages of documents obtained by the SEC from PwC had not been produced by the SEC to
4  Mr. Jenkins. After inquiry by Mr. Jenkins, the SEC produced these documents on
5  December 26, 2010, and Mr. Jenkins is in the process of reviewing this additional
6  production.
7        On December 1 and November 30, 2010, respectively, Mr. Jenkins served
8  subpoenas for documents on CSK (and its related entities, collectively "CSK") and PwC.
9  The documents requested by these subpoenas relate to CSK's bonus and incentive plans
10 and the information considered by CSK's Compensation Committee in establishing the
11 benchmarks for, and determining the amount of, bonuses to be paid to Mr. Jenkins and
12 other senior officers of CSK under these plans. CSK served written responses and
13 objections to the subpoenas. Counsel for Mr. Jenkins is in the process of "meeting and
14 conferring" with CSK's counsel to obtain production of the requested documents.
15 Counsel for CSK has advised that CSK intends to cooperate in producing responsive
16 documents, will begin producing responsive documents this week and will advise counsel
17 for Mr. Jenkins when the remainder of the responsive documents will be produced.
18 Counsel for Mr. Jenkins therefore believes that the documents responsive to the subpoena
19 to CSK will be produced expeditiously and is hopeful that the documents can be obtained
20 from CSK without the need to involve this Court.[3]
21     Other Depositions
22       On December 16 and 17, 2010, the SEC deposed Mr. Watson in *SEC v. Fraser*, *et
23 al.*, U.S.D.C., D. Ariz., Case No. 2:09-CV-443-PHX-GMS ("*Fraser* action"). Counsel for
24 Mr. Jenkins did not attend the deposition in that action, but has reviewed its transcript.
25 While in its statement above the SEC improperly seeks to argue the merit of its assertions,

---

[3] Because it appears that all of PwC's documents were produced to the SEC, and as set forth above the SEC has now apparently produced all of these documents to Mr. Jenkins, it appears that Mr. Jenkins' document subpoena to PwC may be moot.

12667783.2      - 11 -

Mr. Watson's deposition transcript quoted by the SEC above shows that in his testimony Mr. Watson disclaimed any knowledge of accounting improprieties at CSK and in principal part responded without foundation to the SEC's counsel's improper hypothetical, "what if" questions. At his deposition Mr. Watson denied any wrongdoing on his part and denied knowledge of any wrongdoing by others. Counsel for Mr. Jenkins understands that the SEC's counsel questions Mr. Watson's credibility. Because credibility is not an issue to be decided on summary judgment, this deposition testimony of Mr. Watson, who as set forth above the SEC describes as one of the three individuals "most involved" in the alleged misconduct at CSK, together with the evidence that Mr. Jenkins submitted in his opposition to the SEC's motion for partial summary judgment, establish at the least that there are triable issues of fact whether there was accounting "misconduct" at CSK within the meaning of section 304 and that the SEC's motion should therefore be denied.

Mr. Jenkins has noticed the depositions of CSK employees Michael Thompson, Roger Weiss, Dale Ward, Aimee Hudson, Jeffrey Scott Neff, Andrew Stevens, Paul Sundin, and Stephen Lewis during the weeks of January 3, 10, and 24, the depositions to be taken concurrently in this action and in the *Fraser* action.[4] Mr. Jenkins also intends to notice the depositions of additional CSK employees and PwC auditors on issues relating to the alleged "misconduct" at CSK.

After he obtains production of the compensation-related documents subpoenaed from CSK (described above), Mr. Jenkins intends to take depositions on issues relating to Mr. Jenkins' bonus and other incentive-based compensation. These depositions are necessary so that Mr. Jenkins can address issues relating to the amount of compensation for which the SEC seeks reimbursement in the event that "misconduct" is found under

---

[4] The deposition of Ms. Hudson is scheduled to take place on January 11. Her counsel has indicated that at the deposition Ms. Hudson intends to assert the Fifth Amendment privilege against self-incrimination. The depositions of Messrs. Weiss, Ward, Stevens, Sundin and Lewis are scheduled to take place on January 12, 13, 26, 27, and 28, respectively. Counsel are currently negotiating dates for the remaining witnesses.

Section 304.

## III. PROPOSED PRETRIAL AND TRIAL SCHEDULE

1. SEC Statement.

Watson's criminal case is currently set to proceed to trial on June 7, 2011, and is projected to last eight to twelve weeks. Assuming the criminal case takes as long as the parties in that case anticipate, it will not likely not end until sometime in August or early September. Accordingly, to allow for a period of fact discovery in the Jenkins case following the conclusion of Watson's criminal case, the Commission recommends the following dates, which are the same dates currently set in *SEC v. Fraser, et al.,* be adopted:

Deadline for Completion of Fact Discovery. **October 31, 2011**.

<u>Deadline for Disclosures of Experts and Completion of Expert Discovery</u>. Plaintiff and Defendant shall simultaneously provide full and complete expert disclosures as required by F.R.Civ.P. 26(a)(20(A)-(C) no later than **November 30, 2011**. Rebuttal expert disclosures, if any, shall be made no later than **January 10, 2012**, and all expert depositions shall be completed no later than **February 10, 2012**.

<u>Dispositive Motions</u>. Dispositive motions shall be filed no later than **March 12, 2012**.

Deadline for Engaging in Good Faith Settlement Talks. **August 31, 2011**.

2. Mr. Jenkins Statement.

On the assumption that Mr. Watson's criminal trial proceeds as scheduled on June 7, 2011, and is completed in the eight and twelve weeks that Mr. Jenkins understands is the estimated length of that trial, and that Mr. Opper and Mr. O'Brien (and other witnesses who assert the Fifth Amendment privilege pending completion of Mr. Watson's criminal trial (*see*, *e.g.*, note 3)) are available to testify as soon as they have testified at Mr. Watson's criminal trial (and before conclusion of that trial), Mr. Jenkins proposes the following schedule:

Deadline for completion of fact discovery        September 2,

| | |
|---|---|
| Expert disclosures under FRCP 26 (simultaneous) | September 16, 2011 |
| Rebuttal expert disclosures (simultaneous) | September 30, 2011 |
| Deadline for completion of expert discovery | October 28, 2011 |
| Deadline for filing all dispositive motions | November 11, 2011 |
| Trial | January, 2012 |

Dated: January 7, 2011    SECURITIES AND EXCHANGE COMMISSION

/s/ Donald W. Searles
Donald W. Searles
C. Dabney O'Riordan
5670 Wilshire Boulevard, 11th Floor
Los Angeles, CA 90036
Telephone: (323) 965-3998
Facsimile: (323) 965-3908

Attorneys for Plaintiff Securities and Exchange Commission

Dated: January 7, 2011    MUNGER, TOLLES & OLSON LLP

/s/ John W. Spiegel
John W. Spiegel
Gregory J. Weingart
355 South Grand Avenue, 35th Floor
Los Angeles, CA 90071
Telephone: (213) 683-9100
Facsimile: (213) 687-3702

Attorneys for Defendant Maynard L. Jenkins

<u>CERTIFICATE OF SERVICE</u>

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to this action. My business address is 355 S. Grand Ave., Los Angeles, California, 90071.

I hereby certify that on January 7, 2011, I used the CM/ECF system to transmit a Notice of Electronic Filing to all attorneys of record registered for CM/ECF service in the instant action, notifying them of the filing of the following document:

JOINT CASE MANAGEMENT STATEMENT FOR JANUARY 14, 2011 SCHEDULING CONFERENCE

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed at Los Angeles, California on January 7, 2011.

/s/ *Cynthia Silvas*
Cynthia Silvas

12710484.1