DENNIS K. BURKE
United States Attorney
District of Arizona

DENIS J. MCINERNY
United States Department of Justice
Chief
Criminal Division, Fraud Section

PATRICK F. STOKES (Maryland Bar Member)
Deputy Chief, Fraud Section
JENNIFER R. TAYLOR (DC Bar # 497349)
ANDREW H. WARREN (DC Bar # 503003)
Trial Attorneys, Fraud Section
United States Department of Justice
Criminal Division, Fraud Section
1400 New York Ave NW
Washington, DC 20005
Telephone: 202-305-4232/3611/4002
Email: Patrick.Stokes2@usdoj.gov
       Jennifer.Taylor3@usdoj.gov
       Andrew.Warren@usdoj.gov

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>           Plaintiff,<br>      v.<br><br>DON W. WATSON, et al.,<br><br>           Defendants. | Case No. CV-09-443-PHX-GMS<br><br>**UNITED STATES' REPLY MEMORANDUM IN SUPPORT OF MOTION TO STAY CERTAIN DEPOSITIONS PENDING CRIMINAL DISPOSITION** |
| SECURITIES AND EXCHANGE COMMISSION,<br><br>           Plaintiff,<br>      v.<br><br>MAYNARD L. JENKINS,<br><br>           Defendant. | Case No. CV-09-01510-PHX-GMS<br><br>**UNITED STATES' REPLY MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE AND TO STAY CERTAIN DEPOSITIONS PENDING CRIMINAL DISPOSITION** |

The United States submits this reply memorandum in support of its motion to intervene and to stay certain depositions pending criminal disposition. Defendants O'Brien and Opper do not oppose this motion. Defendants Watson and Jenkins have opposed the motion. For the reasons expressed below and in the United States' Supporting Memorandum (Dkt. #173), the United States requests that the Court grant its motion to intervene and stay certain depositions.

**ARGUMENT**

**A.   Discovery in the civil proceedings is being used to obtain information for the criminal case against Watson.**

In his opposition, Watson asserts that the United States seeks to "maintain a tactical advantage over Mr. Watson in the criminal matter." (Watson Opp., at 6) (Dkt. #174). Protecting the integrity of criminal investigations and prosecutions by limited discovery consistent with the Federal Rules of Criminal Procedure does not provide the United States a "tactical advantage" in the criminal case. Those rules were drafted by the United States Supreme Court, approved by the United States Congress, and the interpretation of them is well-established in the United States Courts of Appeals, including the Ninth Circuit.

The real issue before the Court is the use of the civil discovery rules to obtain what the criminal discovery rules purposefully avoid. Courts have repeatedly held that parties should not be permitted to use the civil discovery process to subsume or circumvent the more limited discovery permitted in criminal matters. *See, e.g., Campbell v. Eastland,* 307 F.2d 478, 487 (5th Cir. 1962) ("A litigant should not be allowed to make use of the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on criminal discovery and thereby obtain documents he would not otherwise be entitled to for use in his criminal suit."); *SEC v. Nacchio,* 2005 WL 1799372, *5 (D.Col. 2005)(granting stay of discovery because defendants "might be able to obtain discovery and disclosure of documents that they would not otherwise be entitled to

1  receive through criminal discovery."); *SEC v. Downe,* 1993 WL 22126, *14
2  (S.D.N.Y. 1993)(recognizing the inherent danger of permitting discovery to
3  proceed in the civil action and staying not only discovery directed to cooperating
4  witnessed but also to all discovery); *SEC v. Chestman,* 861 F.2d 49, 50 (2d Cir.
5  1988)(stating that "the government has an interest to prevent discovery in the civil
6  case from being used to circumvent the more limited scope of discovery in the
7  criminal matter" when granting motion to intervene); *United States v. Steward,*
8  872 F.2d 957, 962-63 (10th Cir. 1989).

9       Watson is not simply seeking discovery related to the civil proceeding.
10 Rather, he is attempting to obtain information to advance his defense in the
11 criminal case. His own document subpoenas to witnesses, along with his requests
12 to this Court, expose this motivation. For example, Watson has already used the
13 civil discovery process to obtain *Giglio*/impeachment material long before he is
14 entitled to do so in the criminal case. Watson subpoenaed the proffer/immunity
15 agreements between the United States and several witnesses. Immunity
16 agreements between the United States and witnesses in the criminal matter are
17 irrelevant to the civil proceeding and have little to do with Watson attempting to
18 clear his name in the *civil proceeding.* However, they are relevant in the criminal
19 proceeding and that appears to be purpose of the subpoenas. United States District
20 Judge Susan Bolton ordered the disclosure of such materials in the criminal case
21 as of April 8, 2011. Watson has now successfully used the civil discovery process
22 to circumvent Judge Bolton's order and obtained these criminal-case agreements
23 four months early.

24      Similarly, Watson's request that the United States provide a list of its
25 critical witnesses and a substantive explanation of why the United States deems
26 them critical is another example of Watson attempting to use the civil proceeding
27 to discover information related to the criminal case. (Watson, Opp., at 8) (Dkt. #
28 174). Watson erroneously asserts that the United States is required to give such

2

1  information to the defense by February 7, 2011.  The scheduling order in the
2  criminal case requires the United States to provide its initial list of witnesses to the
3  defense on that date.  The United States is not required to identify who on this list
4  is critical or provide an explanation of why a particular witness would be viewed
5  as critical to the prosecution.  That information is not discoverable.

6        The United States is not required to provide the defense a roadmap of how
7  it intends to present the criminal case during trial or to reveal its prosecution
8  theories.  The United States is also not required to reveal that information when
9  seeking a stay in a civil proceeding.  The United States has identified a limited
10 number of witnesses and described precisely how pre-trial civil depositions of the
11 United States' witnesses in a criminal trial will harm its ability to effectively
12 prosecute the criminal case.  While the defendants argue that the United States has
13 provided generalized assertions of harm, the additional specificity sought by the
14 defendants would require the United States to reveal its prosecution theories and
15 strategies, as well as the mental impressions of members of the prosecution team.

16       Jenkins asserts in his opposition that a stay is inappropriate because he will
17 not seek to obtain prosecution theories, noting that there is no criminal case
18 against Jenkins "thus no road map to uncover."  (Jenkins, Opp., at 12-13) (Dkt.
19 #96).  The civil case against Jenkins requires the SEC to show that misconduct
20 occurred at CSK, and Jenkins is challenging that.  The Indictment alleges that
21 Watson was involved in this misconduct.  It does not matter that Jenkins was not
22 charged.  Nor is it dispositive of the motion before the Court.  The Court must
23 consider the harm to the civil defendant and balance that harm with the harm to
24 the United States.  Here, the harm to Jenkins is merely postponing certain
25 depositions until after trial.  The harm to the United States is impairment of a
26 criminal case involving serious allegations of securities fraud, mail fraud, and
27 other securities-related violations. While civil litigants, such as Jenkins, that have
28 not been charged criminally may have an interest in getting their cases resolved,

1 that "goal, however, must be reconciled with the public interest in ensuring that
2 the criminal process is not subverted. . . . [T]he individual may be required to
3 submit to delay not immoderate in extent and not oppressive in its consequences."
4 *United States v. Nacchio,* 2005 WL 1799373, *5.  At this time, the United States
5 has only requested that five depositions be postponed until after trial.  That is not
6 oppressive to Jenkins.  Further, the results of the trial should have a significant
7 impact on how Jenkins chooses to resolve the civil case.

8     The opportunity to take depositions of and cross-examine the United States'
9 critical witnesses provides unfair advantage to Watson that substantially harms the
10 criminal case and is against the public interest in protecting the criminal justice
11 system.  Watson should not be permitted "to use the pendency of [the civil] action
12 to gain advantage that is not ordinarily afforded to subjects of criminal
13 investigations."   *SEC v. Beacon Hill Asset Mgmt. LLC,* 2003 WL 554618
14 (S.D.N.Y. 2003).  Accordingly, the Court should grant the United States' motion
15 to stay certain depositions.

16     **B.**    **The United States' interests will not be adequately protected**
17           **during the depositions.**

18     Watson and Jenkins argue that the United States' interest is adequately
19 protected by counsel for the SEC and counsel for the deponents.  This is wrong.
20 Only the prosecution can adequately protect the United States' interest in
21 protecting the criminal process and the criminal prosecution of Watson.

22     Throughout his opposition, Watson conflates the SEC and the Department
23 of Justice by referring to them as "the government."  Jenkins claims that the SEC
24 can adequately protect the United States' interests because they share an "ultimate
25 objective."  (Jenkins, Opp., at 7) (Dkt. #96).  Obviously, the SEC and the
26 Department of Justice are components of the United States' government and
27 enforce federal law (like all government agencies); however, they are separate
28 agencies and have different interests and specific roles.  The SEC and the

4

1  Department of Justice have "different public responsibilities, the SEC to protect
2  the integrity of the securities markets and, in some instances, to seek compensation
3  on behalf of victims of violations of our securities laws" and the Department of
4  Justice or United States Attorney to "detect and prosecute criminal – violators of
5  those laws." *SEC v. Beacon Hill Asset Mgmt. LLC,* 2003 WL 554618.  While the
6  SEC is represented by qualified counsel, its sole interest is to effectively enforce
7  civil securities laws.  The SEC attorneys are not privy to prosecution theories and
8  strategy, and certainly they do not answer to the Department of Justice.  Thus,
9  their status as "government" attorneys is hardly a basis for making them the
10 protectors of the United States' interest in a criminal prosecution in which they are
11 not involved.
12        Further, the Department of Justice and the SEC's interests are not always
13 aligned.  In the instant case, for example, the SEC sought a stay of the deposition
14 of Aimee Hudson, while the Department of Justice on behalf of the United States
15 did not.  The United States had no interest in that deposition as it had been advised
16 that Hudson intended to assert her Fifth Amendment right against self-
17 incrimination.  As such, there would be no potential harm to the criminal case.  As
18 explained by the SEC, however, the deposition could injure the civil proceeding
19 by allowing the defense to seek a witness preclusion order.
20        Similar to the SEC, Watson notes that many of the witnesses in this case
21 are represented by well-qualified criminal counsel, and asserts that they will
22 appropriately prepare witnesses for depositions.  While the witnesses have
23 retained qualified counsel, they cannot adequately protect the interests of the
24 United States in the criminal proceeding.  Their role is to protect the interests and
25 rights of their clients, not the United States.  Similar to the SEC, they are not part
26 of the prosecution team and are not privy to the United States' prosecution
27 theories.  There is no question that counsel will endeavor to prepare their clients
28 for depositions.  However, they are not a replacement for prosecutors who will not

5

1 be present at the depositions. Moreover, that witnesses may be represented by
2 qualified counsel does not remedy the harm caused by Watson obtaining discovery
3 in the criminal case to which he is not entitled.

      **C.**       **Watson's decision to testify before the SEC is irrelevant to the United States' motion to stay certain depositions.**

Watson appears to assert that he is entitled to no timing restrictions on depositions because he earned it by not asserting his Fifth Amendment rights. First, Watson's decision to testify is irrelevant to the United States' motion to stay certain depositions, as he can continue to prepare his defense in the civil proceeding with appropriate limitations imposed by the Court.[1] The United States is not asking that all depositions be stayed but is simply asking that certain depositions be postponed until after trial, which is five months away. Second, the United States reviewed Watson's testimony, and, while he did in fact testify, he had significant gaps in memory. The question is not whether Watson has "earned" the right to depose witnesses. He has that right. What is at issue is the timing of some of the depositions while balancing all the parties' interests. Delaying five depositions until after the criminal trial is not substantial and will not impede both Watson's and Jenkins' abilities to effectively resolve the civil proceedings.

      **D.**       **The proposed stay will not interfere with speedy resolution of the civil proceedings.**

The defendants assert that staying the five depositions subject to the United

---

[1] Watson criticizes the timing of the filing of the motion for a limited stay. However, he ignores that the government had no basis to stay Watson's deposition as it would not harm the United States' case. *See Keating v. Office of Thrift Supervision,* 45 F.3d 322, 324 (9th Cir. 1995). The government's interest is in preventing use of the civil discovery process to harm *its case*, not Watson's. That harm was only triggered by Watson testifying and obtaining the authority to issue deposition notices. Putting aside that during the SEC investigation Watson had claimed he would testify only to invoke his Fifth Amendment privilege at the time of his testimony, the United States appropriately waited until the danger of harm to specific witnesses was identifiable. Certainly, Watson's own interests have been thoroughly considered by his sizeable team of civil and criminal defense lawyers.

1  States' motion will interfere with their interest in speedy resolution of the civil
2  proceedings.  That is not the case.  There is sufficient time to conduct the
3  depositions at issue in the United States' motion.  Trial in the criminal matter is
4  only five months away and the discovery in both matters does not close until
5  afterwards.  Jenkins does not have a scheduling order in place, and dispositive
6  motions in the Watson case will not be submitted until March 2012.  Delaying five
7  depositions until after the June 2011 trial will have little impact on the current
8  schedule for the civil proceedings.

9        **E.**      **The United States' motion to intervene in the Jenkins civil**
10             **proceeding is appropriate.**

11     Jenkins challenges every relevant factor relating to intervention but
12 highlights the timing of the United States' motion, arguing that it should be denied
13 as untimely.  The United States' motion is not untimely and intervention is
14 appropriate.  "Determination of the timeliness of a motion to intervene depends
15 upon (1) the stage of the proceeding, (2) the prejudice to other parties, and (3) the
16 reason for and length of delay."  *Day v. Apoliona,* 505 F.3d 963, 965 (9th Cir.
17 2007).  While it was filed in 2009, the case is still in discovery and notices of
18 depositions were not issued until November 2010.  Thus, the deposition stage is
19 just now beginning.  There is no trial date in the case, discovery is not closed, and
20 the United States filed its motion to intervene shortly after Jenkins served
21 deposition notices.  The timing of the motion, which Jenkins implies is nefarious,
22 results from the United States reviewing deposition notices and thoroughly
23 considering their impact on the criminal case, rather than simply moving to
24 intervene and requesting a blanket stay of all depositions.  At this stage in the case,
25 Jenkins will not be prejudiced by the United States intervening and seeking a
26 limited motion to stay.  In fact, postponing depositions and avoiding the costs
27 associated with them, may be beneficial to Jenkins because the outcome of the
28 criminal case will likely impact how he proceeds in the civil matter.

7

## CONCLUSION

For the foregoing reasons and those expressed in its motion and supporting memorandum, the United States requests that the Court grant its motions to intervene and stay certain depositions pending criminal disposition.

DATED: January 13, 2011                    Respectfully submitted,

DENNIS K. BURKE
United States Attorney

DENIS J. MCINERNY
Chief, Fraud Section

/s/ Patrick F. Stokes
Patrick F. Stokes
Deputy Chief

Jennifer R. Taylor
Andrew H. Warren
Trial Attorneys

United States Department of Justice
Criminal Division, Fraud Section

## CERTIFICATE OF SERVICE

This is to certify that a copy of this the United States' Notice of Motion and Motion to Intervene and to Stay Certain Depositions Pending Criminal Disposition has been furnished to counsel of record by filing with ECF.

*/s/ Jennifer R. Taylor*
Jennifer R. Taylor