1  JOHN W. SPIEGEL (*Pro Hac Vice*)
   John.Spiegel@mto.com
2  GREGORY J. WEINGART (*Pro Hac Vice*)
   Gregory.Weingart@mto.com
3  MUNGER, TOLLES & OLSON LLP
   355 South Grand Avenue
4  Thirty-Fifth Floor
   Los Angeles, CA  90071-1560
5  Telephone:    (213) 683-9100
   Facsimile:    (213) 687-3702
6
   Attorneys for Defendant
7  Maynard L. Jenkins

8              UNITED STATES DISTRICT COURT

9                  DISTRICT OF ARIZONA

10 SECURITIES AND EXCHANGE            CASE NO.  CV-09-01510-PHX-GMS
   COMMISSION,
11                                    **AMENDED OPPOSITION OF
                 Plaintiff,           DEFENDANT MAYNARD L. JENKINS
12                                    TO MOTION OF CSK AUTO
                                      CORPORATION TO INTERVENE
13       v.                           AND TO STAY [CORRECTING
                                      TYPOGRAPHICAL ERRORS]**
14 MAYNARD L. JENKINS,
                                      **REQUEST FOR JUDICIAL NOTICE
15               Defendant.           AND DECLARATION OF JOHN W.
                                      SPIEGEL FILED CONCURRENTLY**
16
                                      Courtroom:  602
17                                    (Hon. G. Murray Snow)

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II.   BACKGROUND FACTS ................................................................................................ 2

III.  ARGUMENT ................................................................................................................. 5

    A.   CSK'S Motion To Intervene Should Be Denied................................................ 5

        1.   CSK does not assert a "'significantly protectable' interest."..................... 6

        2.   Disposition of the SEC's lawsuit against Mr. Jenkins will not
            impair or impede the "interest" that CSK asserts...................................... 10

        3.   CSK's intervention request is untimely ..................................................... 10

    B.   CSK's Request For A Stay Should Be Denied .................................................. 12

        1.   A stay would cause real and substantial harm to Mr. Jenkins ................. 13

        2.   CSK has not shown that that denial of a stay would cause it to
            suffer a "clear case of hardship or inequity." ........................................... 15

        3.   Entry of a stay would not promote the administration of justice or
            public interest ........................................................................................... 16

IV.   CONCLUSION ........................................................................................................... 17

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

## FEDERAL CASES

4

*Amoco Oil Co. v. Dingwell*,
690 F.Supp. 78 (D. Me. 1988) ..................................................................... 8, 9

5

*Arakaki v. Cayetano*,
324 F.3d 1078 (9th Cir. 2003) ........................................................................ 6

6

*ASIS Internet Services v. Member Source Media, LLC*,
2008 WL 4164822 (N.D. Cal. Sept. 8, 2008) ................................................ 16

7

*California ex rel. Lockyer v. U.S.*,
450 F.3d 436 (9th Cir. 2006) .......................................................................... 6

8

*Curry v. Regents of Univ. of Minn.*,
167 F.3d 420 (8th Cir. 1999) .......................................................................... 8

9

*Greene v. U.S.*,
996 F.2d 973 (9th Cir. 1993) .......................................................................... 7

10

11

*I.K. ex rel. E. K. v. Sylvan Union Sch. Dist.*,
681 F.Supp.2d 1179 (E.D. Cal. 2010) ........................................................... 16

12

*In Home Builders Ass's of Northern Cal. v. U.S. Fish and Wildlife Service*,
2006 WL 1455430 (E.D. Cal. May 24, 2006) ........................................... 7, 10

13

*Keating v. Office of Thrift Supervision*,
45 F.3d 322 (9th Cir. 1995) ..................................................................... 12, 13

14

*Kemin Foods v. Pigmentos Vegetales*,
384 F.Supp.2d 1334 (S.D. Iowa 2005) .......................................................... 14

15

16

*Landis v. North American Co.*,
299 U.S. 248 (1936) ................................................................................. 13, 16

17

*Leyva v. Certified Grocers of California*,
593 F.2d 857 (9th Cir. 1979) ........................................................................ 17

18

*LG Electronics v. Q-Lty Computer, Inc.*,
211 F.R.D. 360 (N.D. Cal. 2002) ............................................................. 7, 10

19

20

*Lockyer v. Mirant Corp.*,
398 F.3d 1098 (9th Cir. 2005) ................................................................. 13, 16

21

*Melendres v. Maricopa County*,
2009 WL 2515618 (D. Ariz. Aug. 13, 2009) ...................................... 13, 16, 17

22

*Mountain Top Condominium Ass'n v. Dave Stabbert Master Builder, Inc.*,
72 F.3d 361 (3rd Cir. 1995) ............................................................................ 7

23

*New Orleans Public Service, Inc. v. United Gas Pipe Line Co.*,
732 F.2d 452 (5th Cir. 1984) (en banc) .......................................................... 7

24

*Nken v. Holder*,
__ U.S. __, 129 S.Ct. 1749 (2009) ............................................................... 13

25

26

*Officers for Justice v. Civil Service Comm'n*,
934 F.2d 1092 (9th Cir. 1991) ...................................................................... 10

27

28

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Portland Audubon Soc. v. Hodel,*
   886 F.2d 302 (9th Cir. 1989)................................................................... 8

*Restor-A-Dent Dental Lab., Inc. v. Certified Alloy Products, Inc.,*
   725 F.2d 871 (2nd Cir. 1984)................................................................. 9

*S.W. Center for Biol. Diversity v. Berg,*
   268 F.3d 810 (9th Cir. 2001)................................................................. 10

*SEC v. Incendy,*
   936 F.Supp. 952 (S.D. Fla. 1996) ......................................................... 15

*SEC v. Jones,*
   2005 WL 2837462 (S.D.N.Y., Oct. 28, 2005) ....................................... 14

*SEC v. Treadway,*
   2005 WL 713826 (S.D.N.Y. Mar. 30, 2005) ......................................... 14

*Silver v. Babbitt,*
   166 F.R.D. 418 (D. Ariz., 1994), *aff'd* 68 F.3d 481 (9th Cir. 1995)................... 7, 10

*Southeastern Penn. Transp. Authority v. Penn. Public Utility Comm'n,*
   210 F.Supp.2d 689 (E.D. Pa. 2002) ...................................................... 8

*U.S. v. Aerojet Corp.,*
   606 F.3d 1142 (9th Cir. 2010) ............................................................... 6

*U.S. v. Alisal Water Corp.,*
   370 F.3d 915 (9th Cir. 2004)........................................................ 6, 9, 10, 11

*U.S. v. Metro. St. Louis Sewer District,*
   569 F.3d 829 (8th Cir. 2009)................................................................. 7, 8

*U. S. v. State of Washington,*
   86 F.3d 1499 (9th Cir. 1996) ................................................................. 11

*United States v. Watson, et al.,*
   CR-09-372-PHX-SRB ......................................................................... 3

**FEDERAL STATUTES**

Section 304 of the Sarbanes-Oxley Act, 17 U.S.C. §7234 ("Section 304") ........................ 3, 9, 14

**FEDERAL RULES OF CIVIL PROCEDURE**

Rule 24(a)(2) ............................................................................................. 5, 6, 8

Rule 24(b)(1)(b) ....................................................................................... 6

1    **I.        INTRODUCTION AND SUMMARY OF ARGUMENT.**

2            CSK has no right to intervene in this action and, even if it could intervene, the

3    requested stay of all discovery and other proceedings should be denied.  CSK has specific

4    contractual and statutory obligations to indemnify Mr. Jenkins as a former officer of CSK

5    for the costs he incurs in defense of the SEC's claims.  O'Reilly Automotive, CSK's

6    successor by merger, was aware of these obligations and the potential for these claims

7    against Mr. Jenkins and others, *and* the defense costs that would be incurred, at the time it

8    agreed to acquire CSK in 2008.  In proceeding with the acquisition, O'Reilly expressly

9    confirmed CSK's obligation to indemnify Mr. Jenkins (and others) for these defense costs.

10   In addition, O'Reilly adjusted its accounting for the purchase price to establish a $21

11   million reserve for these costs, $18+ million of which remains.

12           Moreover, although one would never realize it from reading CSK's motion,[1]

13   CSK/O'Reilly itself has not been paying the defense costs of Mr. Jenkins (or others).

14   Instead, they have been and still are being borne by CSK's D&O insurers.  Nevertheless,

15   CSK requests all proceedings in the SEC's lawsuit be stayed because CSK/O'Reilly wants

16   to avoid its legal and contractual obligations to indemnify Mr. Jenkins for defense costs.

17           Settled law in the Ninth Circuit establishes that CSK's asserted "economic interest"

18   to avoid the costs associated with the indemnification obligations it owes to Mr. Jenkins

19   neither supports its intervention in this lawsuit nor entry of a stay.

20           Moreover, the prejudice to Mr. Jenkins from a stay of the proceedings in this

21   lawsuit is real and substantial.  The SEC's lawsuit against Mr. Jenkins asserts that he must

22   forfeit more than $4 million to O'Reilly as CSK's successor because CSK's restatements

23   resulted from misconduct by others.  Mr. Jenkins has a substantial interest in the speedy

24   resolution of this claim against him.  As the real party in interest for the relief the SEC

25   requests, CSK cannot seek to stay or otherwise suggest how this lawsuit should be

26   _____

27   [1] CSK states, for example, it is "shouldering the defense costs" and its assets [are] being
     used to pay Watson's and Jenkins's legal expenses."  *See* CSK's Memorandum in support

28   of Motion to Intervene and Stay ("CSK Memo") at 12:3-4, 13.

1   defended.  If CSK/O'Reilly does not want this lawsuit to go forward for cost or other

2   reasons, it should tell the SEC to drop the lawsuit, instead of asking for a delay of Mr.

3   Jenkins' resolution of these claims against him.  CSK neither has a right to intervene nor

4   is entitled to a stay of proceedings, and its motion should be denied.

5   **II.**     **BACKGROUND FACTS.**

6       CSK's Restated Financial Information.  In 2004, CSK concluded that certain errors

7   had been made with respect to the Company's accounting for vendor allowances, and

8   restated its financial statements for fiscal 2002 through 2004.  In early 2006, after learning

9   of additional errors with respect to accounting for vendor allowances, CSK began an

10  internal investigation which included interviewing numerous witnesses.  At the end of the

11  internal investigation, the Company restated financial information in its 2005 Form 10-K,

12  filed in May 2007.

13      The SEC and DOJ Investigations.  The SEC and the DOJ conducted their own

14  multi-year, coordinated investigation into CSK's accounting.  During the period between

15  May 10, 2007 and July 2, 2008, the SEC took testimony of more than forty-five witnesses.

16      O'Reilly's Acquisition of CSK and CSK's/O'Reilly's Obligations To Indemnify

17  and Provide D&O Insurance For CSK's Officers.  On July 11, 2008, O'Reilly Automotive

18  acquired CSK pursuant to a Merger Agreement entered into April 1, 2008.  *See* O'Reilly's

19  Form 10-K filed February 26, 2010 ("O'Reilly Form 10-K"), Exh. A to Mr. Jenkins'

20  Request for Judicial Notice ("Jenkins RJN"), at p. 3.  O'Reilly was aware at the time it

21  acquired CSK "[t]he SEC [was] conducting an investigation related to certain historical

22  accounting practices of [CSK], "the SEC has served subpoenas for documents and

23  testimony on, and requested testimony from, current and former employees, officers,

24  directors and other parties" and "several of [CSK's] current and former directors, officers

25  and employees are or may become the subject of criminal, administrative and civil

26  investigations and lawsuits."  *See* CSK's Form 10-K, attached to O'Reilly Form S-4 filed

27  June 11, 2008 ( "O'Reilly Form S-4"), Jenkins RJN Exh. B, at pp. 18-19 and 27 of CSK

28  Form 10-K.  O'Reilly was also aware at that time that CSK "expect[ed] to continue to

*SEC v. Jenkins*, CV 09-1510-PHX-GMS
DEFENDANT JENKINS' AMENDED OPP. TO
CSK MOTION TO INTERVENE AND TO STAY

1    incur legal expenses during fiscal 2008 related to the regulatory investigations and

2    securities class action litigation." *Id.* at p. 39 of CSK Form 10-K.

3          With knowledge of these accounting restatements, the SEC's and DOJ's ongoing

4    investigations of CSK and its officers, and the possibility that CSK and its officers may be

5    subject to future administrative, civil or criminal proceedings, O'Reilly agreed as part of

6    its acquisition of CSK that CSK's officers and directors would continue to be protected by

7    CSK's contractual and statutory indemnification obligations and D&O insurance.[2]

8          <u>The SEC/DOJ Civil and Criminal Proceedings</u>.  On March 5, 2009, the SEC filed a

9    civil action against Mr. Watson and others, *SEC v. Fraser, et al.*, U.S.D.C., D. Ariz., CV-

10   09-443-PHX-GMS ("*Watson* civil action") alleging securities fraud.  On April 7, 2009,

11   Mr. Watson and others were indicted for securities law violations, *United States v.*

12   *Watson, et al.*, CR-09-372-PHX-SRB ("*Watson* criminal action").

13         On July 22, 2009, the SEC filed this lawsuit against Mr. Jenkins under Section 304

14   of the Sarbanes-Oxley Act, 17 U.S.C. §7234 ("Section 304").  The SEC claims Mr.

15   Jenkins is required to forfeit and repay to O'Reilly (as CSK's successor) more than $4

16   million in alleged incentive-based compensation, and proceeds from the sale of options

---

[2] As stated, in pertinent part, on page 67 of O'Reilly Form S-4, Jenkins RJN Exh. B:

> "The merger agreement provides that, after the effective time of the
> merger and for a period of six years thereafter, O'Reilly will, or will
> cause the surviving company to, indemnify, advance expenses, and
> hold harmless, to the fullest extent permitted under applicable law,
> CSK's certificate of incorporation, and CSK's bylaws, each present
> (as of the effective time of the merger) and former officer, director,
> or employee of CSK and its subsidiaries, for acts or omissions
> pertaining to the fact that such person was an officer, director, or
> employee of CSK or any of its subsidiaries or for matters existing or
> occurring prior to the effective time of the merger."

Further,

> "For a period of six years after the effective time of the merger,
> O'Reilly . . . also agreed to either (i) cause to be maintained in effect
> the current policies of directors' and officers' liability insurance and
> fiduciary liability insurance maintained by CSK and its subsidiaries,
> (ii) provide substitute policies of at least the same coverage and
> amounts . . ., or (iii) permit CSK to purchase a six-year prepaid 'tail
> policy' prior to the effective time of the merger . . . ." *Id.*

*SEC v. Jenkins*, CV 09-1510-PHX-GMS
DEFENDANT JENKINS' AMENDED OPP. TO
CSK MOTION TO INTERVENE AND TO STAY

1  granted to him years before Sarbanes-Oxley was enacted.[3]  While Mr. Jenkins is not

2  accused of misconduct, the SEC has publicly trumpeted the charges against him – among

3  other things, speaking with the press about Mr. Jenkins, including the SEC's trial counsel

4  recent describing of Mr. Jenkins as a CEO "missing in action."  Spiegel Decl., Ex. 2.

5      <u>The Legal Expenses Incurred For CSK's Officers' Defense</u>.  With artful phrasing

6  that obscures the truth, CSK states it has been "billed" or "incurred" defense costs for

7  Messrs. Watson, Opper, O'Brien and Jenkins.  Groves Declaration ¶¶ 2-4; CSK Memo at

8  p. 2:12-18.  CSK uses the term "billed" and "incurred," rather than "paid," because those

9  defense costs have been borne by CSK's D&O insurers, *not* CSK or O'Reilly.  Spiegel

10  Decl. ¶2.  The defense costs are currently being paid by Zurich American Insurance

11  Company under the $10 million D&O policy it issued to CSK.  Spiegel Decl., ¶4.[4]

12      Moreover, in accounting for the price it paid to acquire CSK, O'Reilly made a

13  $21.8 million adjustment to reflect "the timing and costs to be incurred under the

14  Company's indemnification obligations to certain former CSK officers in ongoing . . .

15  [SEC and DOJ] investigations."  *See* O'Reilly Form 10-K filed February 26, 2010,

16  Jenkins RJN Exh. A, at p. 55.  Based on this adjustment, as of September 30, 2010,

17  O'Reilly had "a remaining reserve, with respect to its indemnification obligations, of

18  $18.8 million . . . ."  O'Reilly Form 10-Q filed November 8, 2010, Jenkins RJN Exh. C, at

19  p. 15.  Moreover, O'Reilly believes "the ultimate outcome of all of such regulatory

20  proceedings and other matters that are pending, after consideration of applicable reserves

21  and potentially available insurance coverage benefits not contemplated in recorded

22  reserves, should not have a material adverse effect on the Company's consolidated

23  financial condition, results of operations and cash flows."  *Id.*

24  _____

25  [3] A person found liable under SEC 304 is to "reimburse the issuer" that prepared the
   accounting restatement.  The SEC asserts that Mr. Jenkins' obligation to repay his

26  compensation is now owed to O'Reilly as CSK's successor.  *See* SEC Opposition to Mr.
   Jenkins' Motion to Dismiss (Jenkins Docket No. 23) at 23:1-2.

27  [4] Not only is CSK not bearing Mr. Jenkins' defense costs, but in the instances in which
   CSK's D&O's insurer has refused to pay some portion of Mr. Jenkins' defense costs, CSK

28  does not pay those costs either.  Spiegel Decl. ¶5.

In sum, despite:

(1) CSK having express contractual and statutory obligations to indemnify Mr. Jenkins as a former officer of CSK for costs he incurs in defending against the SEC's claims;

(2) O'Reilly confirming and undertaking these obligations as part of its acquisition of CSK;

(3) CSK having D&O insurance to pay the defense costs;

(4) O'Reilly having an $18+-million reserve on top of the D&O insurance to pay for defense costs;

(5) O'Reilly confirming that the amount of all of these defense costs is not expected to be material to its financial condition;

(6) that any recovery on the SEC's claims against Mr. Jenkins would be paid to O'Reilly as CSK's successor; and

(7) Mr. Jenkins having a substantial interest in seeking promptly to clear his name and resolve the uncertainty of his financial affairs created by the SEC's lawsuit,

CSK requests that all proceedings in the SEC's lawsuit Mr. Jenkins be stayed because CSK/O'Reilly wants to avoid its obligations to indemnify Mr. Jenkins for defense costs. As the real party in interest for the relief the SEC requests, CSK cannot seek to stay or otherwise suggest how the lawsuit should be defended. If CSK/O'Reilly does not want this lawsuit to go forward for cost or other reasons, it should tell the SEC to drop the lawsuit, instead of asking for a delay.

## III.   ARGUMENT.

### A.   CSK'S Motion To Intervene Should Be Denied.

As a prerequisite to presenting its stay motion, CSK asserts it is entitled to intervene "as a matter of right" pursuant to F.R.CivP. Rule 24(a)(2). To determine if an applicant is permitted to intervene as of right, Courts in the Ninth Circuit apply a four-part test: (1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's

1    interest must be inadequately represented by the parties to the action. *U.S. v. Aerojet*

2    *Corp.*, 606 F.3d 1142, 1148 (9th Cir. 2010).  An applicant to intervene bears the burden to

3    establish *all* four parts of this test. *U.S. v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir.

4    2004).

5          CSK's motion to intervene should be denied because (1) it does not assert a

6    "'significantly protectable' interest;" (2) disposition of the SEC's action against Mr.

7    Jenkins will not impair or impede CSK's ability to protect the "interest" it asserts; and (3)

8    in addition, its request to intervene is untimely.[5]

9              *1.     CSK does not assert a "'significantly protectable' interest."*

10         "An applicant for intervention must have a 'significantly protectable interest,'

11    meaning that '(1) it asserts an interest that is protected under some law, and (2) there is a

12    'relationship' between its legally protected interest and the plaintiff's claims.'" *Aerojet*,

13    606 F.3d at 1149, quoting *California ex rel. Lockyer v. U.S.*, 450 F.3d 436, 440-41 (9th

14    Cir. 2006).  CSK "must satisfy each element" of this test. *Arakaki v. Cayetano*, 324 F.3d

15    1078, 1084 (9th Cir. 2003).  CSK asserts it should be allowed to intervene so that it can

16    request a stay of the SEC's civil lawsuits and thereby stop incurring costs for defending

17    these claims.  This "interest" asserted by CSK does not satisfy either element to establish

18    a "significantly protectable interest."

19         First, CSK's desire to avoid defense costs is not an interest "protected under some

20    law." *Aerojet*, 606 F.3d at 1149.  Instead, CSK claims only an "economic interest" to

21    avoid defense costs, without arguing that it has any legal right, or "legally protectable

22    interest," to avoid the statutory and contractual obligations of CSK and O'Reilly to cover

23    Mr. Jenkins' costs in defending against the SEC's claims.[6]

---

[5] CSK moves only to intervene "as of right" under Fed. R. Civ. P 24(a)(2).  CSK does not request "permissive intervention" under Rule 24(b)(1)(b), and could show no basis to do so, because it does not have "a claim or defense that shares with the main action a common question of law or fact."

[6] CSK asserts (CSK Memo at 12:3-5) that use of its "assets" "to pay Watson's and Jenkins's legal expenses . . . [is] capable of being protected by a stay," but does not argue it has any <u>legal right</u> or "interest protected under some law" (*Aerojet*, 606 F.3d at 1149) that entitles it to a stay in order to stop paying these defense costs.  CSK's cases are not on

1    It is settled that such an "economic stake in litigation, 'even if significant,' is not

2    enough to establish a 'significant protectable interest.'" *Silver v. Babbitt*, 166 F.R.D. 418,

3    425 (D. Ariz., 1994) (Muecke), *aff'd*, 68 F.3d 481 (9th Cir. 1995), quoting *Greene v. U.S.*,

4    996 F.2d 973, 976 (9th Cir. 1993). "By requiring that the applicant's interest be not only

5    'direct' and 'substantial,' but also 'legally protectable,' it is plain that something more

6    than an economic interest is necessary. What is required is that the interest be one which

7    the *substantive* law recognizes as belonging to or being owned by the applicant." *New*

8    *Orleans Public Service, Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 464 (5th Cir.

9    1984) (*en banc*) [emphasis in original.] "General economic interests are not protectable

10   and cannot serve as the basis for intervention. *U.S. v. Metro. St. Louis Sewer District*, 569

11   F.3d 829, 839 (8th Cir. 2009). *Accord*, *Mountain Top Condominium Ass'n v. Dave*

12   *Stabbert Master Builder, Inc.*, 72 F.3d 361, 366 (3rd Cir. 1995) ("a mere economic

13   interest in the outcome of the litigation is insufficient to support a motion to intervene.")

14   Courts uniformly apply these principles to deny intervention as of right where the

15   applicant's only asserted "interest" is a concern, like CSK's here, about being required to

16   pay additional monies. For example, in *New Orleans Public Service ("NOPSI")*, 732

17   F.2d 452, the issue was the price NOPSI, an electric utility, would be required to pay its

18   fuel supplier. The Fifth Circuit affirmed the District Court's refusal to allow New Orleans

19   to intervene as of right, stating the City only had an "economic interest" in the litigation

20   because the City's only concern was to ensure that its power costs would not be increased

21   by an adverse decision against NOPSI. *Id.* at 464-66. Similarly, in *Metro. St. Louis*, 569

22   F.3d 829, a business association sought to intervene in this action by the United States

23   against the agency managing St. Louis' sewer/wastewater system, asserting the outcome

24   of the lawsuit "might result in increased user rates and fees for its members." *Id.* at 833.

25   point to this issue. *LG Electronics v. Q-Lty Computer, Inc.*, 211 F.R.D. 360, 364-65 (N.D.

26   Cal. 2002) (CSK Memo at 11:25), involves Apple's request to intervene in a lawsuit
     alleging the computers that Apple sells infringe the plaintiff's patents. *In Home Builders*

27   *Ass's of Northern Cal. v. U.S. Fish and Wildlife Service*, 2006 WL 1455430, at *2-4 (E.D.
     Cal. May 24, 2006) (CSK Memo at 12:7-8), the applicant sought to intervene in a lawsuit

28   that would decide restrictions to be placed on permissible uses of its real property.

1   The Court denied intervention as of right. *Id*. at 838-39. In *Southeastern Penn. Transp.*

2   *Authority v. Penn. Public Utility Comm'n*, 210 F.Supp.2d 689, 704 (E.D. Pa. 2002), the

3   Court denied intervention as of right because the proposed intervenor Norfolk Southern

4   was "seeking to intervene solely on the ground that the Court's enforcement of the …

5   Consent Decree and, likewise, the Court's issuance of injunctive relief . . . would compel

6   Norfolk Southern to pay larger assessments. This claimed interest is not sufficient to

7   justify intervention as of right . . . ." [footnote omitted.] *Cf. Curry v. Regents of Univ. of*

8   *Minn.*, 167 F.3d 420, 422-23 (8th Cir. 1999) (asserted interest of proposed intervenor

9   student organizations to intervene in lawsuit challenging distribution of student fees in

10  order to "maintain [ ] the quantum of their funding" was only an "economic interest . . . in

11  the outcome of the litigation" and "does not rise to the level of a legally protectable

12  interest necessary for mandatory intervention.")

13          These same principles apply when a party seeks to intervene to avoid performing

14  its indemnity obligations. In *Amoco Oil Co. v. Dingwell*, 690 F.Supp. 78 (D. Me. 1988),

15  the defendant Dingwell owned a "Superfund"-designated site and was sued by a group of

16  companies which disposed of their hazardous waste at the site for a determination of

17  Dingwell's obligation to contribute to the clean-up cost. Dingwell's insurers sought to

18  intervene as of right and for a stay of the lawsuit pending a determination of the insurers'

19  indemnity obligations to Dingwell. *Id*. at 81. The Court denied intervention, explaining:

20          "Even assuming that disposition of the case in the insurers' absence
            impaired or impeded the insurer's economic interests, they would not
21          be entitled to intervene. The insurers' economic interest is not an
            interest in the 'property or transaction which is the subject of this
22          action . . . .' Fed.R.Civ.P. 24(a)(2)." *Id*. at 83.

23  Similarly, in this case, CSK's desire to avoid paying defense costs is only an "economic

24  interest" that does not support intervention. *See Portland Audubon Soc. v. Hodel*, 886

25  F.2d 302, 309 (9th Cir. 1989) (Although the proposed intervenors "have a significant

26  economic stake in the outcome of the plaintiff's case, they have pointed to no

27  'protectable' interest justifying intervention as of right.")

28          Moreover, "[t]o trigger a right to intervene, . . . an economic interest must be

1    concrete and related to the underlying subject matter of the action." *Alisal Water*, 370

2    F.3d at 919.  CSK's desire to avoid defense costs is neither "concrete" nor "related to the

3    underlying subject matter" of the SEC's lawsuit.  It is not "concrete" because CSK's

4    D&O insurance is paying the defense costs and any future payment of these costs by

5    CSK/O'Reilly is only speculative.  That CSK's "interest" is not "related to the underlying

6    subject matter" of the SEC's lawsuit is shown, for example, by *Alisal Water*, 370 F.3d

7    915.  There, the United States sought damages from Alisal for violation of the Safe

8    Drinking Water Act.  Silverwood was a judgment creditor of Alisal and sought to

9    intervene, asserting its "interest" that a decision to award damages to the United States

10   would affect Silverwood's ability to collect its judgment against Alisal.  *Id.* at 919.  The

11   Court, *id.* at 920-21, held that Silverwood's interest in collection of the judgment was not

12   "related to the underlying subject matter of the litigation" and did not support a right to

13   intervene:

14           "the district court determined that Silverwood's sole interest in the
             present action is the prospective collectability of a debt.  This interest
15           is several degrees removed from the overriding public health and
             environmental policies that are the backbone of this litigation. . . . [¶]
16           We, therefore, hold that Silverwood was not entitled to intervene in
             this case because its interest in the prospective collectability of a debt
17           secured by Alisal's property is not sufficiently related to the
             environmental enforcement action brought by the United States."
18

19   Likewise here, CSK's interest to avoid paying defense costs is not related to the

20   underlying subject matter of the SEC's claims against Mr. Jenkins, which seek forfeiture

21   by Mr. Jenkins under Section 304.  *See Restor-A-Dent Dental Lab., Inc. v. Certified Alloy*

22   *Products, Inc.*, 725 F.2d 871, 875 (2nd Cir. 1984) (insurer not entitled to intervene in

23   products liability lawsuit against its insured because insurer's "interest" "in the amount it

24   will have to pay" defendant if plaintiff wins is not "an interest in the subject matter of the

25   action."); *Dingwell*, 690 F.Supp. at 81-82 ("The subject of this action is the extent of

26   Dingwell's obligation to indemnify or contribute to Plaintiffs for the costs of cleaning up

27   the [Superfund site].  As opposed to that discrete issue, the insurers' interest is to establish

28   whether their policies cover Dingwell's obligations.")

1
2

> **2.      *Disposition of the SEC's lawsuit against Mr. Jenkins will not impair or impede the "interest" that CSK asserts.***

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17

The requirement for intervention as of right that a decision in the action will impair or impede the applicant's interest is satisfied "[i]f an absentee would be substantially affected in a practical sense by the determination made in the action." *S.W. Center for Biol. Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001). The requirement was found satisfied in *LG Electronics*, 211 F.R.D. 360, 365 (CSK Memo at 11:25), for example, because if the plaintiff prevailed on its claim that the computers sold by Apple infringed the plaintiff's patents, "Apple will no longer be able to sell them" and thus a decision in the lawsuit "may as a practical matter impair or impede Apple's ability to protect its interest." In *Home Builders Ass'n*, 2006 WL 1455430, at *4 (CSK Memo at 12:7-8), the Court held the decision to be made of the permissible uses for the proposed intervenor's land could "impair or impede" the applicant's interests. In contrast, here the *only* decision that will be made in the SEC's lawsuit – whether Mr. Jenkins is required to forfeit compensation he received and, if so, how much – will not "impair or impede" the "interest" that CSK asserts, the obligation of CSK/O'Reilly to indemnify Mr. Jenkins for his defense costs.

18

> **3.      *CSK's intervention request is untimely.***

19
20
21
22
23
24
25
26
27
28

The Ninth Circuit has identified three factors to determine whether a motion to intervene is timely: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *Alisal Water*, 370 F.3d at 921 [citation omitted]. "[T]he third factor considers why the party seeking to intervene waited as long as it did. The length of the delay itself is not determinative. Rather, the court should focus on the date the person attempting to intervene should have been aware his interests would not longer be protected . . . ." *Silver*, 166 F.R.D. at 424, citing *Officers for Justice v. Civil Service Comm'n*, 934 F.2d 1092, 1095 (9th Cir. 1991). "A party must intervene when he knows or has reason to know that his interests might be adversely affected by the outcome of the litigation."

1  *Alisal Water*, 370 F.3d at 923 [internal quotes omitted.]  If a motion to intervene is not

2  timely, the court need not address any of the remaining requirements for intervention.  *U.*

3  *S. v. State of Washington*, 86 F.3d 1499, 1503 (9th Cir. 1996).

4  CSK says (CSK Memo at 11:12-13) its motion to intervene is timely because the

5  Watson and Jenkins civil proceedings will not be set for trial before 2012.  But that is not

6  the right test of timeliness.  "A party must intervene when he knows or has reason to know

7  that his interests might be adversely affected . . . ."  *Alisal Water*, 370 F.3d at 923.

8  O'Reilly's Form 10-Q filed August 7, 2009, more than 16 months before CSK filed its

9  present motion, describes this lawsuit against Mr. Jenkins and the criminal and civil

10  lawsuits against Mr. Watson and others and makes clear that CSK/O'Reilly have been

11  aware of these proceedings since at least that time.  *See* O'Reilly Form 10-Q filed August

12  7, 2009, Jenkins RJN Exh. D, at p. 27.  CSK was also aware at that time of its obligation

13  to indemnify Mr. Jenkins and others, was already "incurring legal fees on behalf of these

14  persons in relation to pending matters," "expect[ed] to continue to incur legal fees relating

15  to the ongoing DOJ investigation and indemnity obligations for the litigation that ha[d]

16  been commenced by the DOJ and SEC," and had already reserved $21.0 million for these

17  legal costs.  *Id. See also* Groves Declaration ¶3 (CSK has been billed approximately $1.9

18  million in connection with Mr. Jenkins' representation, which began in 2006).  Moreover,

19  CSK's D&O insurers have been paying Mr. Jenkins' defense costs since before he first

20  was subponaed to testify in 2007 as part of the SEC's investigation.  Spiegel Decl., ¶3.

21  CSK was therefore manifestly aware, more than sixteen months before its present motion,

22  that it faced continuing to incur substantial costs for payment of the defense of the

23  lawsuits filed by the SEC and DOJ.  For any intervention request to be timely, CSK was

24  required to have taken steps at that time to seek to protect its asserted "economic interest"

25  against paying Mr. Jenkins' and other others' defense costs.  *Alisal Water*, 370 F.3d at

26  924.

27  Moreover, the Jenkins case has progressed substantially – through a motion to

28  dismiss, written and document discovery, and a motion for partial summary judgment.

1    The prejudice to Mr. Jenkins from a delay in the timely resolution of this matter is

2    manifest and explained in the next section.

3          As a result of communications with O'Reilly's general counsel, CSK/O'Reilly has

4    been aware of the depositions that Mr. Jenkins intends to take since at least November,

5    2010. *See* Spiegel Decl., Exh. 3. O'Reilly/CSK retained the Irell & Manella law firm to

6    defend these witnesses, and Mr. Jenkins' counsel scheduled the depositions through that

7    firm. Spiegel Decl., ¶8. Mr. Jenkins then noticed the depositions of Messrs. Thompson

8    and Ward on November 11, 2010, *two months before* CSK's motion here. CSK

9    nevertheless delayed its motion until the time for these and other depositions to begin.

10   Moreover, only a week before it filed its present motion, counsel for CSK/O'Reilly

11   assured counsel for Mr. Jenkins that CSK/O'Reilly would *cooperate* with Mr. Jenkins in

12   producing documents Mr. Jenkins had subpoenaed from them, not that CSK would seek to

13   stay that and all other discovery and proceedings in this action. *See* Spiegel Decl., Exh. 4.

14         In sum, CSK was fully aware of these proceedings, of its statutory and contractual

15   obligations to indemnify Mr. Jenkins and others, and of the defense costs that had been,

16   were being and would be incurred by Mr. Jenkins and others in connection with these

17   actions, but unjustifiably delayed in filing its motion to intervene. In addition to not

18   satisfying the other requirements for intervention as of right, CSK's motion was untimely.

19         **B.     CSK's Request For A Stay Should Be Denied.**

20         CSK erroneously asserts (CSK Memo at 3:9-17) that the balancing test set out by

21   the Ninth Circuit in *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324-25 (9th Cir.

22   1995), is to be applied to CSK's request for stay. *Keating* addresses the concern whether

23   allowing a civil action to proceed will interfere with the Government's prosecution of a

24   parallel criminal case. *Id.* at 324. CSK here is not asserting the concern that arises from

25   ongoing parallel civil and criminal proceedings, but its own "interest," as a third-party, to

26   avoid paying Mr. Jenkins' and others' defense costs. CSK's request for a stay is therefore

27   to be measured by the test applied when such a request is made to stay a civil proceeding:

28         "Where it is proposed that a pending proceeding be stayed, the

> competing interests which will be affected by the granting or refusal
> to grant a stay must be weighed. Among these competing interests
> are the possible damage which may result from the granting of a stay,
> the hardship or inequity which a party may suffer in being required to
> go forward, and the orderly course of justice measured in terms of the
> simplifying or complicating of issues, proof, and questions of law
> which could be expected to result from a stay.

*Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005), citing *Landis v. North American Co.*, 299 U.S. 248, 254-255 (1936).[7]

The Courts applying this test emphasize that "'if there is even a fair possibility that the stay . . . will work damage to someone else,' the party seeking the stay 'must make out a clear case of hardship or inequity'" to justify staying the case. *Lockyer*, 398 F.3d at 1110. *Accord, Melendres v. Maricopa County*, 2009 WL 2515618, at *3 (D. Ariz. Aug. 13, 2009) (Snow). As the party requesting a stay, CSK bears the burden to establish that a stay should be entered. *Nken v. Holder*, __ U.S. __, 129 S.Ct. 1749, 1761 (2009).

Application of this test establishes that, even if CSK were allowed to intervene, its request for a stay should be denied.

### 1.   A stay would cause real and substantial harm to Mr. Jenkins.

The prejudice to Mr. Jenkins from a stay is real and substantial. The SEC's lawsuit against Mr. Jenkins asserts that he must forfeit more than $4 million to O'Reilly as CSK's successor because CSK's restatements resulted from misconduct by others. Mr. Jenkins has a substantial interest in the speedy resolution of this claim against him.

While Mr. Jenkins has not been accused of misconduct in the accounting at issue, Mr. Jenkins is a defendant in an SEC suit which seeks millions from him personally, and which a government agency has used to stir up publicity adverse to Mr. Jenkins. As this Court recognized in the Watson 2009 Stay Order (Docket No. 47), a defendant has "a strong interest in being able to defend [himself] against the SEC's allegations as quickly as possible." *Id.* at 7:8-9. *See also Melendres*, 2009 WL 2515618, at *2 (a defendant has a "strong interest in expeditiously clearing [himself] of serious allegations . . ."), citing

---

[7] Even if the *Keating* test were applied here, the factors identified below demonstrate a stay of this case is inappropriate.

1    and quoting *Kemin Foods v. Pigmentos Vegetales*, 384 F.Supp.2d 1334, 1343 (S.D. Iowa

2    2005) ("explaining that 'serious allegations' can prejudice a party, that '[i]t is reasonable

3    that [a party] seeks to clear up these allegations as soon as possible,' and finding that this

4    consideration weighed against granting a stay.")  Mr. Jenkins has a substantial interest in

5    proceeding expeditiously with this action to clear his name.  *See* Watson 2009 Stay Order

6    at 7:14-15 ("If the Court stays the civil case and they later prevail, Defendants will . . .

7    have needlessly suffered additional years of living under the suspicion of these allegations

8    . . . ."); *SEC v. Jones*, 2005 WL 2837462, at *2 (S.D.N.Y., Oct. 28, 2005) (a defendant

9    "deserves a timely opportunity to clear his name.")

10         As this Court knows from his counsel's efforts to secure a prompt trial date, Mr.

11   Jenkins is 68 and in declining health.  It is critically important Mr. Jenkins promptly bring

12   to a conclusion the SEC's claims so that he can put his personal and financial house in

13   order.  The difference to Mr. Jenkins between proceeding with and completing discovery

14   expeditiously, versus waiting until after completion of the *Watson* criminal action, is

15   substantial.  As long as the SEC's Section 304 lawsuit is unresolved, Mr. Jenkins cannot

16   plan financially for his future and that of his family.  *See SEC v. Treadway*, 2005 WL

17   713826, at *3 (S.D.N.Y. Mar. 30, 2005) (defendants have "an important interest in

18   moving to trial swiftly . . . since the pendency of this litigation is an economic burden on

19   them and a cloud on their careers and personal lives."); *Jones*, 2005 WL 2837462, at *2

20   (impacts on "future career and personal life" are important considerations).

21         Given these considerations, at every opportunity Mr. Jenkins has asked for a

22   prompt close of discovery and an early trial date.  In the parties' Joint Case Management

23   Report filed July 23, 2010 (Jenkins Docket No. 54), Mr. Jenkins requested a fact

24   discovery cut-off of October 3, 2010 and trial in early 2011.  At the July 30, 2010

25   Scheduling Conference, Mr. Jenkins urged the Court set an early trial date.  *See*, *e.g.*,

26   7/30/10 Transcript at 9:19 ("give us an early trial date").  At that Scheduling Conference,

27   the Court indicated it intended to defer trial in the SEC's lawsuit against Mr. Jenkins until

28   after conclusion of the *Watson* criminal action.  *Id*. at 9:13-15.  But that does not mean all

discovery and other proceedings should also be deferred until that time, as it would only further delay Mr. Jenkins' ability to get to trial and have the claims against him decided. Mr. Jenkins has agreed only to a short period after the conclusion of the criminal trial (a few weeks) to complete the testimony of Messrs. Opper and O'Brien, who have asserted their Fifth Amendment rights but have plead guilty and will testify for the government.

Moreover, Mr. Jenkins will be prejudiced by a stay of these depositions. While the SEC has already had an opportunity during its pre-filing investigation to obtain testimony from these witnesses favorable to its claims, the additional delay resulting from a stay increases the likelihood the witnesses will not be available for deposition or will not recall during Mr. Jenkins' examination critical information regarding vendor allowances and accounting practices at CSK. *See SEC v. Incendy*, 936 F.Supp. 952, 956 (S.D. Fla. 1996) ("over time the likelihood of witnesses becoming unavailable, memories fading, and documents being lost increases dramatically").

In sum, the unfairness and prejudice to Mr. Jenkins of a stay of proceedings in this action is real and substantial. If CSK/O'Reilly does not want this lawsuit to go forward for cost or other reasons, it should tell the SEC to drop the lawsuit, instead of asking for a delay in Mr. Jenkins' resolution of these claims. Mr. Jenkins deserves the right to proceed with discovery in order to prepare a defense to the SEC's claims, have the opportunity to clear his name, and resolve his financial affairs.

### 2. *CSK has not shown that that denial of a stay would cause it to suffer a "clear case of hardship or inequity."*

The only "interest" CSK asserts in support of a stay is its desire to stop the costs involved in the defense of Mr. Jenkins and others in the SEC civil proceedings. *See, e.g.,* CSK Memo at 5:25 ("the landscape for CSK is defined by cost.") CSK's contractual and statutory obligations to indemnify Mr. Jenkins (and others) for these defense costs were established long ago by reason of Mr. Jenkins' (and others') position as an officer of CSK and O'Reilly's confirmation of these obligations in its Merger Agreement with CSK. It is settled that "the mere litigation of a case, even a complex one, is not so burdensome as to

1    justify staying that case," and "'being required to defend a suit, without more, does not

2    constitute a "clear case of hardship or inequity" within the meaning of *Landis*.'"

3    *Melendres*, 2009 WL 2515618, at *3, citing and quoting *Lockyer*, 398 F.3d at 1112 and

4    *Landis*, 299 U.S. at 255.  *Accord*, *ASIS Internet Services v. Member Source Media, LLC*,

5    2008 WL 4164822, at *1 (N.D. Cal. Sept. 8, 2008) ("the cost of litigating this case" does

6    not constitute a clear case of hardship or inequity. [internal quotes omitted.])  In addition,

7    as set forth above, CSK's D&O insurers, not CSK/O'Reilly, have been paying Mr.

8    Jenkins' defense costs.  Moreover, the "inequity" of CSK/O'Reilly's position is borne by

9    Mr. Jenkins because if successful, CSK's attempt to avoid paying defense costs would

10   hamstring Mr. Jenkins' defense of the SEC's claims, while at the same time O'Reilly will

11   benefit if the SEC were to prevail and require Mr. Jenkins' to forfeit the $4 million the

12   SEC claims.  Accordingly, Mr. Jenkins would suffer substantial harm if this action were

13   stayed but CSK has not shown any cognizable "hardship or inequity" in favor of a stay.

14              **3.    *Entry of a stay would not promote the administration of justice**

15   **or public interest.***

16              CSK argues that waiting until after conclusion of the *Watson* criminal action to

17   allow the SEC's claims against Mr. Jenkins to proceed may resolve issues and make

18   litigation of these claims more efficient.  There is no reason to believe that is the case.

19              Contrary to CSK's assertion, it is only speculative if determination of the issue of

20   "misconduct" in the *Watson* criminal action will expedite resolution of the issue on the

21   SEC's claims here.  If "misconduct" is found in the *Watson* criminal action, that finding

22   will not apply to Mr. Jenkins through collateral estoppel or *res judicata*, as Mr. Jenkins is

23   not a party to the criminal case.  If it is determined in the *Watson* criminal action there

24   was not "misconduct," the SEC could still choose to proceed against Mr. Jenkins as the

25   SEC has a lower burden of proof than does the DOJ.  Accordingly, CSK's assertion this

26   action should be stayed so that the *Watson* criminal action can first be decided does not

27   support its stay request.  *See I.K. ex rel. E. K. v. Sylvan Union Sch. Dist.*, 681 F.Supp.2d

28   1179, 1193-94 (E.D. Cal. 2010) (assertion a stay would allow factual issues to be decided

in another action and thereby conserve resources does not support stay request because it is based on "the false premise that the two actions are largely identical.").

Moreover, even if there were some overlap, staying this action until the *Watson* criminal action is concluded ignores that a "stay should not be granted unless it appears that the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims presented to the court." *Leyva v. Certified Grocers of California*, 593 F.2d 857, 864 (9th Cir. 1979). Even if the *Watson* criminal action begins in June 2011 as scheduled and concludes in the eight to twelve weeks estimated, that still would not resolve the issue of "misconduct" because of the possibility of appeals. In short, a stay of the SEC's claims against Mr. Jenkins ignores his substantial interest in prompt resolution of the serious allegations against him.

Finally, a stay of the SEC's claims against Mr. Jenkins would not be in the "public interest." "[T]he public has a strong interest not only in resolution of litigation, . . . but also in making sure that such resolution is expeditious. . . . A stay of the kind proposed here would compromise these interests. Thus, this factor weighs against the granting of a stay." *Melendres*, 2009 WL 2515618, at *5. [citations and case quotations omitted.]

## IV.   <u>CONCLUSION.</u>

For the reasons set forth above, CSK's motion to intervene and to stay should be denied.

Dated: January 17, 2011                    MUNGER, TOLLES & OLSON LLP

/s/ Gregory J. Weingart
John W. Spiegel
Gregory J. Weingart
355 South Grand Avenue, 35th Floor
Los Angeles, CA 90071
Telephone: (213) 683-9100
Facsimile: (213) 687-3702

Attorneys for Defendant Maynard L. Jenkins