GIBSON, DUNN & CRUTCHER LLP
Douglas M. Fuchs (CA Bar # 196371) (Pro Hac Vice)
DFuchs@gibsondunn.com
David S. Han (CA Bar # 247789) (Pro Hac Vice)
DHan@gibsondunn.com
333 S. Grand Ave.
Los Angeles, CA  90071
Telephone:  (213) 229-7000

Attorneys for CSK Auto Corporation

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>DON W. WATSON, et al.,<br><br>Defendants. | Case No. CV-09-0443-GMS<br><br>**THIRD-PARTY CSK AUTO CORPORATION'S REPLY IN SUPPORT OF ITS MOTION TO INTERVENE AND STAY PROCEEDINGS OR LIMIT DISCOVERY**<br><br>(Oral Argument Requested) |
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>MAYNARD L. JENKINS,<br><br>Defendant. | Case No. CV-09-01510-PHX-GMS<br><br>**THIRD-PARTY CSK AUTO CORPORATION'S REPLY IN SUPPORT OF MOTION TO INTERVENE AND STAY PROCEEDINGS OR LIMIT DISCOVERY**<br><br>(Oral Argument Requested) |

Gibson, Dunn & Crutcher LLP

## I. INTRODUCTION

CSK Auto Corporation explained in its motion papers why its intervention is warranted and furthermore why the Court should stay or limit discovery. CSK's position is measured, fully respectful of the rights of Watson and Jenkins, and focuses on the timing of the massive discovery effort Watson and Jenkins are just now embarking on. While the company recognizes its obligations to advance fees to Jenkins and Watson—indeed, nearly $8 million in fees and costs have been incurred to date for these former executives—additional costly discovery is not necessary until the impending *Watson-Criminal* trial is concluded. That trial is sure to sharpen and streamline, if not eliminate the need for, remaining discovery in the pending SEC cases, especially as to the misconduct issue at the center of Jenkins discovery pursuits.

Jenkins has opposed CSK's motion without explaining with any specificity why, given the absence of any scheduling order in his SEC case, a short stay or temporary limitation on discovery would harm him, particularly given his recent suggestion of trial date not until January 2012 and his agreement that discovery cannot be completed until after the impending *Watson-Criminal* trial concludes.

Contrary to Jenkins' position, the law is not so indifferent to concerns about the cost attendant to decisions about the timing of discovery to sideline the party ultimately responsible for those costs. CSK has sought to intervene to bring those cost considerations to the Court's attention. For the reasons stated in its motion, Rule 24(a)(2) authorizes intervention here and, in any event, it is well within the Court's discretion to permit the intervention and to enter the requested stay.

## II. ARGUMENT

### A. CSK Recognizes Its Obligations To Jenkins

In opposing CSK's motion to intervene and stay or limit discovery, Jenkins repeatedly states that CSK is attempting to "avoid the costs associated with the indemnification obligations" owed Jenkins. (Jenkins Am. Opp. Br. at 1; *see also*

Gibson, Dunn & Crutcher LLP

1

*id.* at 6 ("CSK's desire to avoid defense costs"); *id.* at 9 (same); *id.* at 12 (CSK's interest is "to avoid paying Mr. Jenkins' and others' defense costs")). This is incorrect. At no time has CSK ever told lawyers for Jenkins (or Watson) that the company would not continue to advance reasonable expenses. To the contrary, CSK fully recognizes its advancement obligations, as demonstrated by its incurrence of over $1.9 million in fees and costs to date for Jenkins. The company's position is simply that it does not want additional discovery costs to be incurred—and available insurance coverage reduced—if those costs are not now necessary and may never be necessary.

**B.     Jenkins' Request For A January 2012 Trial Contradicts His Position That Time Is Of The Essence With Additional Discovery**

Jenkins opposes CSK's motion by stating that time is of the essence to allow him to plan his financial affairs. At no point in sounding this alarm, though, does Jenkins remind the Court that the case has been pending since July 2009, or that he recently requested that trial not be scheduled until January 2012. (Joint Case Management Statement (Doc. #94) at 14). By requesting this 2012 trial date, Jenkins has acknowledged that discovery here cannot be completed until after the *Watson-Criminal* trial—which will be entirely focused on whether misconduct (in the form of securities and other fraud) occurred during his tenure as CSK's CEO.

Jenkins cannot have it both ways. He cannot insist on continued and costly discovery and simultaneously maintain that he needs to await Ed O'Brien and Gary Opper becoming available after the *Watson-Criminal* trial before responding to the SEC's summary judgment motion. Jenkins, in short, has proposed a schedule that sees this case proceeding well into the future and well beyond the impending *Watson-Criminal* trial.

In the end, it is impossible to credit Jenkins' position that a temporary stay of discovery risks hamstringing his ability to defend himself against the SEC's

attempted clawback of the incentive-based compensation he received from CSK. Nor is it any easier to see the *Watson-Criminal* trial as anything but a determining and clarifying event. It is the reason for Jenkins' proposed 2012 trial date, and it is certain to have a clarifying effect on the scope of necessary additional discovery in the *Jenkins* matter and the *Watson-SEC* case. The prudent course (and one that would certainly yield benefits for the Court) is to stay discovery or, at the very least, to limit it to discrete points about Jenkins' compensation from CSK.

### C. CSK's Insurance Does Not Preclude Its Intervention Or Render Its Views Irrelevant

Jenkins rests much of his opposition to CSK's motion on comments about CSK's Directors' & Officers' insurance. He seems to suggest that the mere existence of insurance coverage—a fact CSK expressly acknowledged in its motion—means that CSK and its parent O'Reilly should be entirely indifferent to (if not disinterested in) the timing and amount of legal fees advanced to Jenkins. He cites no authority for this blank-check position, and CSK knows of none.

Furthermore, Jenkins' supposition is way off: it is entirely appropriate for CSK to pay close regard to coverage limitations and costs incurred under policies, especially where, as here, an opportunity presents itself to minimize costs without prejudicing Jenkins' ability to fully and fairly defend himself in the SEC action. CSK and O'Reilly regard available insurance as a valuable resource that has been of benefit not only to the companies, but also certainly to Jenkins and Watson. It is proper that this resource be safeguarded and managed responsibly. Jenkins, therefore, misses the mark in suggesting that CSK and O'Reilly should remain indifferent to the amount and timing of costs incurred pursuant to its corporate indemnification obligations. Intervention and a stay of discovery is fully warranted in these circumstances. *Cf. Southwest Center for Bio. Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001) (explaining that "whether an application for intervention demonstrates sufficient interest in an action is a practical, threshold

inquiry," in which "[n]o specific legal or equitable interest need be established") (internal citation and quotation omitted).

### C. Jenkins' Claims Of Delay And Notice Are Frivolous

The Court should make short work of Jenkins' suggestion that CSK's motion to intervene is untimely. CSK sought to intervene and stay discovery only after Jenkins, in parallel with Watson, lodged numerous discovery requests and noticed multiple decisions. And, contrary to Jenkins' insinuation, at no point did anyone from O'Reilly or CSK ever promise Jenkins that the companies would defer to whatever discovery schedule Jenkins thought appropriate, regardless of considerations of cost.

Jenkins' suggestion that O'Reilly Auto, which acquired CSK in July 2008, somehow was on notice at the time of the acquisition of the substantial fees and costs that would be incurred for Jenkins fares even worse. The SEC did not commence this action—a first of its kind, in which a clawback of executive compensation is sought without an allegation that the defendant engaged in misconduct—until July 2009, a year after the acquisition closed. O'Reilly could not have reasonably anticipated the SEC's decision to bring this action.

### III.   CONCLUSION

For these reasons, CSK respectfully requests that the Court grant this motion to intervene and to stay proceedings or limit discovery pending resolution of the related criminal action.

DATED this 21st day of January, 2011.

> GIBSON, DUNN & CRUTCHER LLP
> Douglas M. Fuchs
> 333 South Grand Avenue
> Los Angeles, CA 90071
>
> By:   s/Douglas M. Fuchs
>
>
> LEWIS AND ROCCA LLP GIBSON,
> Dale Dunneman
> 40 N. Central Avenue
> Phoenix, AZ 85004
>
> By:   s/Dale Danneman
>
> Attorneys for CSK Auto Corporation

1 **CERTIFICATE OF SERVICE**

2     I hereby certify that on January 21, 2011 I electronically filed the foregoing

3 with the Clerk of the Court for the United States District Court for the District of

4 Arizona using the CM/ECF system.  Participants who are registered CM/ECF

5 users will be served by the CM/ECF system.

8                                              By/s/      David S. Han

Gibson, Dunn & Crutcher LLP

6