JOHN W. SPIEGEL (*Pro Hac Vice*)
John.Spiegel@mto.com
GREGORY J. WEINGART (*Pro Hac Vice*)
Gregory.Weingart@mto.com
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue
Thirty-Fifth Floor
Los Angeles, CA 90071-1560
Telephone:  (213) 683-9100
Facsimile:  (213) 687-3702

Attorneys for Defendant
Maynard L. Jenkins

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                    Plaintiff,<br><br>        v.<br><br>MAYNARD L. JENKINS,<br><br>                    Defendant. | CASE NO. CV-09-01510-PHX-GMS<br><br>**SUPPLEMENTAL OPPOSITION OF DEFENDANT MAYNARD L. JENKINS TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>[Declaration of James B. Riley and Supplemental Declaration of Gregory J. Weingart Filed Concurrently Herewith]<br><br>Courtroom: 602<br>(Hon. G. Murray Snow) |

# TABLE OF CONTENTS

Page

I. INTRODUCTION AND SUMMARY OF SUPPLEMENTAL OPPOSITION ................. 1

II. ARGUMENT. .................................................................................................................. 2

    A. Mr. Jenkins' "Adoptive Admission" Does Not Support As An Undisputed Fact That There Was Accounting "Misconduct" At CSK. Instead, The Meaning And Effect To Be Given To That "Admission" And Whether There Was "Misconduct" At CSK Are Triable Questions For The Jury. ................. 2

    B. The Riley Declaration Confirms There Are Triable Questions On The Meaning Of The Term "Irregularities" As Used In The Second Restatement And On The Issue of Accounting "Misconduct" And Demonstrates The Nature Of The Additional Evidence Mr. Jenkins Believes Will Be Elicited Through Depositions. ..................................................... 5

III. CONCLUSION. ............................................................................................................... 6

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Bruce v. McClure*,
   220 F.2d 330 (5th Cir. 1955)..................................................................................... 4

*Bushey & Sons v. W.E. Hedger & Co.*,
   40 F.2d 417 (2nd Cir. 1930)....................................................................................... 3

*Cooper v. Brown*,
   126 F.2d 874 (3rd Cir. 1942) ..................................................................................... 4

*Keller v. U.S.*,
   58 F.3d 1194 (7th Cir. 1995)..................................................................................... 3

*Martinez v. Bally's Louisiana, Inc.*,
   244 F.3d 474 (5th Cir. 2001)..................................................................................... 3

*Morgan v. U.S.*,
   169 F. 242 (8th Cir. 1909).......................................................................................... 4

*State Farm Mut. Auto Ins. Co. v. Porter*,
   186 F.2d 834 (9th Cir. 1951)..................................................................................... 3

*Technitrol, Inc., v. U.S.*,
   440 F.2d 1362 (Ct. Cl. 1971) .................................................................................... 4

*U.S. ex rel. Leong v. O'Rourke*,
   125 F.Supp. 769 (D. Mo. 1954) ................................................................................ 4

**STATE CASES**

*Gangi v. Fradus*,
   227 N.Y. 452 (1920) .................................................................................................. 4

**STATUTES AND RULES**

Rule 56(f) ............................................................................................................................ 5

Rule 801(d)(2) .................................................................................................................... 3

**OTHER AUTHORITIES**

3 *Handbook of Federal Evidence* §801.26 (6th ed. 2006) ................................................ 3

## I. INTRODUCTION AND SUMMARY OF SUPPLEMENTAL OPPOSITION.

Pursuant to the Court's statements at the January 21, 2011 Scheduling Conference, Defendant Maynard L. Jenkins submits this Supplemental Opposition to the SEC's Motion for Partial Summary Judgment.

As the Court knows, and as the SEC confirmed at the Scheduling Conference, the principal basis of the SEC's Motion is its claim that (a) Mr. Jenkins' signing of CSK's Second Restatement constitutes an "adoptive admission" by Mr. Jenkins of the content of that document and (b) the statements in the Second Restatement that there were "irregularities" in CSK's accounting for vendor allowances establish as an undisputed fact that there was accounting "misconduct" at CSK within the meaning of Section 304. *See* 1/21/11 Tr. at 10:6-11-5. There are, at the least, triable issues of material fact on whether there was accounting "misconduct" at CSK and on the meaning of the term "irregularities" as used in the Second Restatement that require that the SEC's motion be denied.

Initially, settled law establishes that Mr. Jenkins' "adoptive admission" of statements in the Second Restatement is only some "evidence" and does not establish an undisputed fact or foreclose Mr. Jenkins from submitting other evidence (and taking discovery to develop additional evidence) that raises a triable issue on the question of "misconduct." With his initial Opposition and now in this Supplemental Opposition, Mr. Jenkins has presented admissible evidence controverting and explaining his purported "admission" based on the Second Restatement's use of the word "irregularities." Accordingly, the "weight and effect" to be given to Mr. Jenkins' "admission," and the determination of whether there was "misconduct" at CSK, cannot be determined on summary judgment but are for the trier of fact to decide.

Moreover, the Declaration of James B. Riley submitted with this Supplemental Opposition further confirms that use of "irregularities" in the Second Restatement does not establish as an undisputed fact that there was accounting "misconduct" at CSK.[1] Mr.

---

[1] Mr. Jenkins submits Mr. Riley's Declaration in further support of his Opposition to the

Riley was the Chief Financial Officer of CSK beginning in October 2005 and, like Mr. Jenkins, signed a Certification to CSK's Form 10-K filed with the SEC on May 1, 2007 for CSK's fiscal year ending January 29, 2006 (the document the SEC refers to as the "Second Restatement"). Mr. Riley states in his Declaration that when he signed the Second Restatement he did not understand that accounting fraud had been identified at CSK, and he did not understand that use of the term "irregularities" in the Second Restatement was intended to communicate that accounting fraud had been identified at CSK. Riley Declaration ¶¶ 4, 5. Accordingly, in addition to the evidence that Mr. Jenkins has already submitted, Mr. Riley's Declaration, and the additional evidence like Mr. Riley's Declaration that Mr. Jenkins believes will be developed through additional depositions, demonstrate that, at the least, there is a triable issue of material fact on the meaning of the term "irregularities" as used in the Second Restatement and whether use of that term establishes accounting "misconduct" at CSK.

## II.   ARGUMENT.

### A.   Mr. Jenkins' "Adoptive Admission" Does Not Support As An Undisputed Fact That There Was Accounting "Misconduct" At CSK. Instead, The Meaning And Effect To Be Given To That "Admission" And Whether There Was "Misconduct" At CSK Are Triable Questions For The Jury.

In his Opposition filed October 29, 2010, to the SEC's Motion for Partial Summary Judgment, Mr. Jenkins argues that the Motion should be denied on several different grounds, including: (1) use of the term "irregularities" in the Second Restatement does not mean intentional or reckless accounting misconduct but includes accounting mistakes and inadvertence; (2) even if "irregularities" had the meaning argued by the SEC, the Second Restatement does not connect the alleged "irregularities" to the accounting for vendor allowances which gave rise to the restatements; and (3) regardless of Mr. Jenkins' signing of the Second Restatement, the Second Restatement's statements of what the CSK

---

SEC's Motion and as an "offer of proof" to show the type of additional evidence that Mr. Jenkins believes he will be able to develop through additional depositions.

1  Audit Committee "concluded" and what the Second Restatement says that the Audit
2  Committee "found" and its investigation "revealed" are inadmissible hearsay and are not
3  within Mr. Jenkins' own personal knowledge. The Court stated at the January 21, 2011
4  Scheduling Conference that it would examine and decide the parties' arguments on these
5  issues. For the reasons set out below, even if the Court were to decide these issues against
6  Mr. Jenkins, the SEC *still* would not be entitled to partial summary judgment on the issue
7  of "misconduct." Settled law establishes that the SEC's reliance on an "admission" by
8  Mr. Jenkins of statements in the Second Restatement does not establish an undisputed fact
9  and foreclose other evidence that raises a triable issue on the question of "misconduct."

Admissions by a party "are in no sense conclusive; they may be explained away or contradicted." *State Farm Mut. Auto Ins. Co. v. Porter*, 186 F.2d 834, 843 (9th Cir. 1951). As stated in 3 *Handbook of Federal Evidence* §801.26 (6th ed. 2006):

> "Judicial admissions must be distinguished from ordinary evidentiary admissions. A judicial admission is binding upon the party making it; it may not be controverted at trial or on appeal of the same case. Judicial admissions are not evidence at all but rather have the effect of withdrawing a fact from contention. . . . *Ordinary evidentiary admissions, on the other hand, may be controverted or explained by the party. Within this category fall* the pleadings in another case, superseded or withdrawn pleadings in the same case, judicial admissions in another case, stipulations as to admissibility, as well as other *statements admissible under Rule 801(d)(2).*" [Footnotes omitted. Emphasis added.]

*Accord, Martinez v. Bally's Louisiana, Inc.*, 244 F.3d 474, 476-77 (5th Cir. 2001) ("[A]n ordinary evidentiary admission is merely a statement of concession made for some independent purpose, and it may be controverted or explained by a party who made it." [internal quotations and citation omitted.]); *Keller v. U.S.*, 58 F.3d 1194, 1199 n.8 (7th Cir. 1995) (Same); *Bushey & Sons v. W.E. Hedger & Co.*, 40 F.2d 417, 418 (2nd Cir. 1930) ("An admission, except when formally made at trial, even if by a party in propria persona, is at most only evidentiary matter which may be rendered nugatory by other evidence in the case.")

Because an admission by a party is only "evidentiary," "[t]he party against whom the admission is offered may . . . explain it away, . . . by showing that it was said with a

different intent or meaning, or without personal knowledge, or the like." *Morgan v. U.S.*, 169 F. 242, 251 (8th Cir. 1909). As the Court stated in *U.S. ex rel. Leong v. O'Rourke*, 125 F.Supp. 769, 774 (D. Mo. 1954), "other evidence in a case may render an admission against interest wholly insufficient to establish the fact for which it is offered in evidence." The Court explained:

> "Whether an admission against interest should be held conclusive depends on the facts and circumstances surrounding the making thereof and facts which are revealed as being its premise. If it is revealed that the admission is premised in hearsay, received by the party making it, and that there are other probative facts which show the premise to be doubtful or untrue, then a reasonable man would not, we think, consider the admission serious enough to warrant reliance thereon as substantive evidence of the fact as to which it is offered." *Id.*

Therefore, when a party charged with an admission presents evidence controverting or explaining the information admitted, the "weight and effect" of the admission are matters "for the triers of fact to resolve." *Cooper v. Brown*, 126 F.2d 874, 878-79 (3rd Cir. 1942). *Accord, Technitrol, Inc., v. U.S.*, 440 F.2d 1362, 1370 (Ct. Cl. 1971) ("The trier of fact can rightly take into account of such [party] admissions, although they are not, of course, conclusive if there is opposing evidence."). Similarly, in *Bruce v. McClure*, 220 F.2d 330, 336 (5th Cir. 1955), the Court of Appeals approved the rule stated in *Gangi v. Fradus*, 227 N.Y. 452, 457 (1920), that the weight and effect to be given to party admissions when there is contradictory or explanatory evidence "is for the determination of the jury:"

> "'The jury shall determine whether or not they were made; if made, the conditions and circumstances under which they were made and the effect thereof, and their probative weight and value, which may range from the lowest, or none at all, to conclusiveness.'"

Under these rules, the SEC's reliance on an "adoptive admission" by Mr. Jenkins of statements in the Second Restatement does not establish as an undisputed fact that there was accounting "misconduct" – as opposed to accounting mistakes or inadvertence – at CSK. Instead, such an admission by Mr. Jenkins at most constitutes only some evidence on the issue.

The additional evidence that Mr. Jenkins submitted with its initial Opposition – based on the sworn testimony of CSK employees, Board members and outside auditors at PwC, the Declaration of Mr. Jenkins' expert forensic accountant Peter Salomon, and Mr. Jenkins' own sworn testimony on his lack of personal knowledge – and the additional evidence of Mr. Watson's deposition testimony cited in Attachment A to this Supplemental Opposition[2] are also admissible and controvert and explain the statements in the Second Restatement. This evidence shows non-culpable explanations for CSK's misstated financial results and establishes genuine disputes of material fact on the issue of "misconduct." Under the settled case authority cited above, the "weight and effect" to be given to Mr. Jenkins' "admission," and the determination of whether there was "misconduct" at CSK, are therefore for the trier of fact to decide, and the SEC's Motion for Partial Summary Judgment should be denied.

**B.     The Riley Declaration Confirms There Are Triable Questions On The Meaning Of The Term "Irregularities" As Used In The Second Restatement And On The Issue of Accounting "Misconduct" And Demonstrates The Nature Of The Additional Evidence Mr. Jenkins Believes Will Be Elicited Through Depositions.**

In paragraphs 11 through 18 of Mr. Weingart's Declaration filed October 29, 2010 in support of Mr. Jenkins' Opposition to the SEC's Motion for Partial Summary Judgment and Motion and request that, at the least, the Court deny or continue the Motion under Rule 56(f) so that Mr. Jenkins can take discovery, his counsel identified additional individuals whom Mr. Jenkins seeks an opportunity to depose before the motion is decided. These individuals include James B. Riley, who was the Chief Financial Officer of CSK beginning in October 2005 and who, like Mr. Jenkins, signed a Certification to CSK's Form 10-K filed with the SEC on May 1, 2007 for CSK's fiscal year ending

---

[2] Attachment A identifies paragraph numbers from Mr. Jenkins' "Statement Of Additional Facts That Establish Genuine Issues Of Material Fact" in his Responding Separate Statement filed October 29, 2010 and then sets forth citations to the transcript of Mr. Watson's deposition testimony that provide further support for these facts. These deposition transcript pages are attached to the Supplemental Declaration of Gregory J. Weingart ("Supplemental Weingart Declaration") submitted herewith.

1  January 29, 2006 (the document the SEC refers to as the "Second Restatement").  The
2  SEC did not take sworn testimony from Mr. Riley as part of its pre-filing investigation.
3  Weingart Declaration ¶ 18.

4  Mr. Jenkins submits Mr. Riley's Declaration with this Supplemental Opposition in
5  further support of Mr. Jenkins' opposition to the SEC's motion and as an "offer of proof"
6  to show the type of additional evidence that Mr. Jenkins believes he will be able to
7  develop through additional depositions (which he has only recently begun to have the
8  opportunity to take).  Mr. Riley states that when he signed the Second Restatement, he did
9  not understand that accounting fraud had been identified at CSK, and he did not
10 understand that use of the term "irregularities" in the Second Restatement was intended to
11 communicate that accounting fraud had been identified at CSK.  Riley Declaration ¶¶ 4, 5.

12 In addition to the evidence that Mr. Jenkins has already submitted, Mr. Riley's
13 Declaration, and the additional evidence like Mr. Riley's Declaration that Mr. Jenkins
14 believes will be developed through additional depositions, demonstrate that, at the least,
15 there is a triable issue on the meaning of the term "irregularities" as used in the Second
16 Restatement and whether use of that term establishes accounting "misconduct" at CSK.

## III. CONCLUSION.

For the reasons set forth in Mr. Jenkins' initial Opposition and above, the SEC's Motion for Partial Summary Judgment should be denied.

Dated:  February 10, 2011

MUNGER, TOLLES & OLSON LLP

/s/ Gregory J. Weingart
John W. Spiegel
Gregory J. Weingart
355 South Grand Avenue, 35th Floor
Los Angeles, CA 90071
Telephone:  (213) 683-9100
Facsimile:  (213) 687-3702

Attorneys for Defendant Maynard L. Jenkins

## ATTACHMENT A

**Mr. Jenkins' Responding Separate Statement ¶57:** "There were misunderstandings and disputes between CSK and vendors over entitlement to vendor allowances and related debit memos, which had to be negotiated with vendors and often were not resolved until a year or more after the vendor allowance program year at issue had ended and financial results had been reported."

Watson Deposition Transcript at 186:23-187:12, 195:20-196:6, 198:23-199:20, 200:19-201:24, 255:8-256:16.

**Mr. Jenkins' Responding Separate Statement ¶61:** "Payments for vendor allowance earned in a previous program year were sometimes collected and processed in a subsequent program year and then credited to the previous program year in which the allowance was earned."

Watson Deposition Transcript at 186:23-187:12, 195:20-196:6, 198:23-199:20, 200:19-201:24, 255:8-256:16.

**Mr. Jenkins' Responding Separate Statement ¶62:** "Vendor allowance payments were sometimes being collected and processed for as many as three different vendor allowance program years at the same time."

Watson Deposition Transcript at 107:5-18, 112:16-115:6

**Mr. Jenkins' Responding Separate Statement ¶63:** "Inadequate communication between CSK's merchandising department (who negotiated contracts with vendors) and its finance department (who processed the collection of vendor allowances under the contracts) sometimes resulted in erroneous debit memos and misapplication of vendor allowance payments."

Watson Deposition Transcript at 98:5-99:8, 329:24-330:9.

**Mr. Jenkins' Responding Separate Statement ¶69:** "CSK lacked sufficient knowledge of and experience with GAAP."

Watson Deposition Transcript at 57:17-58:4, 196:17-197:21, 198:8-22, 505:15-506:9, 530:15-531:8.

1  **Mr. Jenkins' Responding Separate Statement ¶72:** "CSK made a payback to a vendor
2  when it collected or inadvertently processed a debit memo for more than it was entitled to
3  under the vendor contract."
4      Watson Deposition Transcript at 329:24-330:9.
5  **Mr. Jenkins' Responding Separate Statement ¶73:** "The proper accounting treatment
6  for a payback depended on circumstances unique to each vendor relationship and
7  contract."
8      Watson Deposition Transcript at 326:18-327:2, 327:18-328:15, 329:24-330:9,
9  341:9-342:1, 492:2-14.

## CERTIFICATE OF SERVICE

I hereby certify that on February 10, 2011, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system and I served a copy of the foregoing pleading on all counsel for all parties, via the CM/ECF system and/or mailing same by United States Mail, properly addressed, and first class postage prepaid, to all counsel of record in this matter.

/s/ Gregory Weingart