1   DONALD W. SEARLES, California Bar No. 135705
    E-mail: searlesd@sec.gov
2   C. DABNEY O'RIORDAN, California Bar No. 205158
    E-mail: oriordand@sec.gov
3

4   Attorneys for Plaintiff
    Securities and Exchange Commission
5   Rosalind R. Tyson, Regional Director
    Michele Wein Layne, Associate Regional Director
6   John M. McCoy III, Associate Regional Director
    5670 Wilshire Boulevard, 11th Floor
7   Los Angeles, California 90036-3648
    Telephone:   (323) 965-3998
8   Facsimile:   (323) 965-3908

9

10                  **UNITED STATES DISTRICT COURT**

11                        **DISTRICT OF ARIZONA**

12   SECURITIES AND EXCHANGE              Case No. CV-09-01510-PHX-GMS
     COMMISSION,
13                                        **PLAINTIFF SECURITIES AND**
                 Plaintiff,               **EXCHANGE COMMMISSION'S**
14        vs.                             **OBJECTIONS TO DECLARATION OF**
                                          **JAMES B. RILEY AND**
15   MAYNARD L. JENKINS,                  **SUPPPLEMENTAL DECLARATION**
                                          **OF GREGORY J. WEINGART IN**
16               Defendant.               **SUPPORT OF SUPPLEMENTAL**
                                          **OPPOSITION TO DEFENDANT**
17                                        **MAYNARD L. JENKINS' TO**
                                          **PLAINTIFF'S MOTION FOR**
18                                        **PARTIAL SUMMARY JUDGMENT**

19                                        Courtroom 602
                                          (Hon. G. Murray Snow)
20

21

22

23

24

25

26

27

28

1       Pursuant to Local Rule 7.2(m)(2), the Commission objects, on hearsay and

2   relevancy grounds, to the admission of the Declaration of James B. Riley ("Riley Decl.")

3   and the Supplemental Declaration of Gregory J. Weingart ("Supp. Weingart Decl.") in

4   support of Maynard Jenkins' opposition to the Commission's motion for partial summary

5   judgment.

6       **A.      The Declaration of James B. Riley**

7       James B. Riley was the former chief financial officer of CSK Auto Corporation,

8   and signed a certification to CSK's Form 10K filed with the Commission on May 1, 2007

9   (the "2006 10-K"). In his declaration, Mr. Riley states that he had several conversations

10  with accountants from Ernst & Young and with lawyers from O'Melveny and Myers who

11  conducted CSK's internal investigation, with members of CSK's Board of Directors, and

12  in particular, CSK's Audit Committee, and with CSK's outside auditors

13  PricewaterhouseCoopers.  (Riley Decl., 3)  Mr. Riley further states that "he has no

14  recollection of being provided with information at that time that demonstrated to me that

15  there had been accounting fraud at CSK" at the time he signed the 2006 10-K.  According

16  to Mr. Riley, there were discussions over how to characterize what led to the restatement

17  in light of the lack of evidence of fraud, resulting in the use of the phrase "errors and

18  irregularities."   Finally, Mr. Riley states that he has no recollection or understanding of

19  the use to the term "irregularities" referring to accounting fraud.

20      Mr. Riley's declaration is objectionable on multiple evidentiary grounds.   In

21  meeting his burden of proof to demonstrate the existence of a factual dispute and that the

22  fact in contention is material, Jenkins must come forward with admissible evidence.  Fed.

23  R. Civ. P. 56(e).  Hearsay statements found in declarations or affidavits are inadmissible.

24  *Courtney v. Canyon Television & Appliance Rental, Inc.*, 899 F.2d 845, 851 (9th Cir.

25  1990); *Hilding v. McDonnell Douglas Helicopter Co.*, 1992 U.S. Dist. LEXIS 17216 (D.

26  Ariz. June 11, 1992), *aff'd*, 985 F.2d 573 (9th Cir. 1993); *Lake Havasu City v. Turner*,

27  1987 U.S. Dist. LEXIS 14370, *5 (D. Ariz. Apr. 23, 1987); *First Pacific Networks, Inc.*

28  *v. Atlantic Mutual Insurance Company*, 891 F. Supp. 510, 514 (N.D. Cal. 1995).  Such

1   evidence may be considered in opposing summary judgment "only if the out-of court

2   declarant could later present that evidence through direct testimony, *i.e.*, in a form that

3   would be admissible at trial." *Cutrona v. Sun Health Corp.*, 2008 U.S. Dist. LEXIS

4   83318, *14 (D. Ariz. Sept. 26, 2008) (*quoting Williams v. Burough of W. Chester*, 891

5   F.2d 458, 465 n. 12 (3d Cir. 1989)). In addition, Rule 56(e) explicitly requires that

6   affidavits submitted in opposition to a motion for summary judgment be based on

7   personal knowledge. *Bieghler v. Kleppe*, 633 F.2d 531, 533 (9th Cir. 1980).

8        In his one-page declaration, Mr. Riley purports to summarize "several

9   conversations" that he had with O'Melveny & Myers and Ernst & Young regarding the

10  results of their special investigation, as well as other conversations he had with members

11  of CSK's Audit Committee and with PwC. Mr. Riley's attempt to relate what others may

12  have told him is hearsay, and does not fall within any recognized exception to the hearsay

13  rule. As such, Mr. Riley's statements regarding his recollection (or lack thereof)

14  concerning the results of the special investigation are inadmissible and should not be

15  considered. *See, e.g., Orr v. Bank of America, NT & SA*, 285 F. 3d 764 (9th Cir. 2002)

16  (extract of witness's deposition testimony summarizing contents of a FBI report

17  inadmissible hearsay); *Stewart v. Wachowski*, 574 F. Supp. 2d 1074, 1092 (C.D. Cal.

18  2005) (plaintiff's statements regarding the results of a FBI investigation were

19  inadmissible hearsay); *Galardo v. Reinnnecius*, 1998 U.S. Dist. LEXIS 18495, *41 (E.D.

20  Cal. 1998) (substance of defendant's testimony, which was based on the purported

21  statements of an unidentified person in the county sheriff's department, was inadmissible

22  hearsay).

23       Mr. Riley's declaration is also objectionable as he lacks personal knowledge and

24  can only report what others purportedly told him regarding CSK's special investigation.

25  *See, e.g., A Slice of Pie Productions, LLC v. Wayans Brothers Entertainment*, 487 F.

26  Supp. 2d 33, 37 (D. Conn. 2007) (where affiant specifically attributed his understanding

27  or knowledge to a statement of another, such testimony constitutes inadmissible hearsay).

28  Unlike Jenkins, Mr. Riley is not a party opponent and, hence, his statements do not

1   qualify as admissions or adoptive admissions under Rule 801(d)(2) of the Federal Rules
2   of Evidence.

3        In addition to these hearsay objections, those portions of Mr. Riley's declaration
4   stating what his state of mind was when he signed CSK's 2006 10-K are irrelevant.  *See*
5   *Self v. Illinois Central Railroad*, 2000 U.S. Dist. LEXIS 224, *4 (E.D. La. Jan. 6, 2000)
6   ("state of mind of non-party witnesses is generally not relevant").   Notably, Jenkins has
7   not submitted a declaration in his own name seeking to controvert or otherwise explain
8   his admissions and adoptive admissions in signing CSK's 2006 10-K.  Obviously he is
9   free to do, subject, of course, to the constraints of his sworn testimony before the
10  Commission.  What he may not do, however, is present inadmissible hearsay regarding
11  the state of mind of others to explain away his own admissions.  *See Allen v. Sybase, Inc.*,
12  468 F.3d 642, 660 (10th Cir. 2006) (Fed.R.Evid. 803(3) "cannot be used to authorize
13  receipt of a statement by one person as proof of another's state of mind"); *United States*
14  *v. Martinez*, 83 F.3d 371, 375, n. 4 (11th Cir. 1996) (a defendant cannot establish his own
15  state of mind through statements made by third parties); H.R. Rep. No. 930650, at 13-14
16  (1973), reprinted in 1974 USCCAN 7051, 7075, 7082 ("the Committee intends that [Rule
17  803(3)] be construed … so as to render statements of intent by a declarant admissible
18  only to prove his future conduct, not the future conduct of another person")

19       Lastly, even if Mr. Riley's declaration were admissible, it does not create a
20  genuine issue of fact as to whether CSK's second restatement was due to "misconduct."
21  As the Commission discussed in its memorandum of points and authorities in support of
22  its motion for partial summary judgment, and again in its response to Jenkins' opposition,
23  the term "misconduct" as used in Section 304 of the Sarbanes-Oxley Act simply means
24  "improper behavior," which can be satisfied based on a showing of negligence.  Indeed,
25  in his opposition to the Commission's motion for partial summary judgment (*see* Dkt.
26  Entry No. 70, pp. 6-8), Jenkins argued the Section 304 requires, at a minimum,
27  "recklessness," thereby conceding that "accounting fraud," however Mr. Riley may
28  define that term, is not required under Section 304.  Accordingly, Mr. Riley's declaration,

3

1    even if it were admissible, does not create a triable issue of fact.

2         **B.     Supplemental Declaration of Gregory J. Weingart**

3         The Supplemental Declaration of Gregory J. Weingart is equally objectionable, as

4    it simply presents excerpts of Don Watson's recent deposition.   Watson's testimony does

5    not establish that there is genuine issue of fact as to whether misconduct actually

6    occurred and resulted in the CSK's second restatement.   Each of the excerpted portions

7    are irrelevant, as they do not address the improper accounting conduct at issue, namely

8    the movement of LWT program funds from one program year to earlier years for the

9    purpose of avoiding CSK from writing off an uncollectible receivable.

10        When confronted with dozens of incriminating documents establishing his

11   knowledge of the movement of vendor allowance funds across years to cover up

12   uncollectible account receivables, all Watson could state was that he had no recollection

13   of the documents.   In addition, he did not deny wrongdoing by others; he simply claimed

14   he was not aware of it.  Watson further testified that accounting "secrets" (*i.e.,* the

15   movement of LWT funds across years to avoid write offs) had been kept from him and

16   had he known of them at the time, "he would have dealt with those people very harshly."

17   The following excerpt from the second day of his testimony best describes Watson's

18   position:

19        Q.  BY MR. SEARLES:  If amounts were moved as

20        reflected in this -- do you see on the first

21        page of this exhibit, again, a column over to

22        the right portion of the page off invoice moved

23        to '03.  Another column Q2 billbacks moved to

24        '03.  Do you see those columns?

25        A.  Yes.

26        Q.  Would Mr. -- assuming that that conduct

27        took place, do you think Mr. O'Brien or Mr. Opper would try to keep that conduct

28        a

1    secret from you?

2    MR. ROSHKA:  Objection; form, foundation.

3    Speculation.  Vague and ambiguous.

4    THE WITNESS:  I'm not sure if they would

5    have or not.

6    Q.  BY MR. SEARLES:  Do you think there were

7    secrets in the finance department that you were

8    not advised of regarding the accounting of

9    LWT?

10   MR. ROSHKA:  Object to the form,

11   foundation.  Vague and ambiguous.

12   THE WITNESS:  As I sit here today, I

13   believe that happened.

14   Q.  BY MR. SEARLES:  And what do you believe

15   was the secret as you sit here today?

16   A.  As I sit here today, in reading some of

17   the documents you did earlier, I don't believe I

18   was told everything that was happening within

19   the department.

20   Q.  Why do you think you were not told?

21   A.  I don't believe I was told specifically

22   everything that was happening.

23   Q.  Do you believe you were told about the

24   movement of funds across years to make up for

25   collection shortfalls in prior years?

26   MR. ROSHKA:  Object to the form,

27   foundation.

28   THE WITNESS:  No, I don't believe I was.

1       Q. BY MR. SEARLES:  Seeing the documents you

2       see here today and yesterday, do you believe

3       that practice in fact occurred?

4       MR. ROSHKA:  Object to the form,

5       foundation.  Calls for speculation.

6       THE WITNESS:  As I sit here today, I

7       don't know if that happened.

8       Q.  BY MR. SEARLES:  This document certainly

9       reflects that it did, didn't it?

10      MR. ROSHKA:  Object to the form,

11      foundation.  Vague and ambiguous.

12      THE WITNESS:  This document has columns

13      on here that indicate stuff was moved.  I don't

14      have knowledge of how they moved it and what

15      they moved.

16      Q.  BY MR. SEARLES:  All right.  Well, when

17      you say that you believe that certain things

18      were concealed from you, what are the things

19      that you believe were concealed from you?

20      A.  As I sit here today reading the 10-K I

21      believe there were monies that were

22      appropriately -- were not appropriately handled

23      in the 2004 fiscal year.

24      Q.  And how were they inappropriately handled

25      that was a secret to you?

26      A.  We did a restatement as a company in

27      2004.  I was not aware of any monies that were

28      moved from '04 to '03 at the time, and so I

6

1 | believe that that was withheld from me.

2 | Q. And who do you believe was responsible

3 | for withholding that information from you?

4 | MR. ROSHKA: Object to the form,

5 | foundation.

6 | THE WITNESS: I don't know who

7 | specifically was instructed not to tell me, but

8 | I don't believe I was told.

9 | Q. BY MR. SEARLES: And had you known of

10 | that conduct at the time it was occurring as the

11 | chief financial officer of CSK would you have

12 | put a stop to it?

13 | A. I can tell you if I would have known that

14 | at the time of a restatement we would have dealt

15 | with it at the time of the restatement and we

16 | would have dealt with those people very

17 | arshly.

18 | R.T. Watson pp. 560 – 563 (attached hereto as Exhibit 1).

19 |      Regardless of Watson's feigned lack of knowledge, the Commission has also

20 | pointed to the misconduct of other individuals, including Martin Fraser, Edward O'Brien,

21 | and Gary Opper. Further, the Commission has offered the sworn testimony of O'Brien

22 | and Opper, presented at their guilty pleas, admitting to misconduct in failing to write off

23 | uncollectible vendor allowance receivables. As this Court previously held, Section 304

24 | does not require that the CEO or CFO to have engaged in misconduct, only that

25 | misconduct resulted in the restatement. Thus, whether Watson believed he engaged in

26 | misconduct is irrelevant since, at minimum, others engaged in misconduct resulting in the

27 | restatement.

28 |

1    Accordingly, Jenkins' position that Watson's testimony creates an insurmountable

2  factual barrier to the Commission's motion for partial summary judgment on the issue of

3  misconduct is simply wrong.  If anything, Watson's deposition testimony amounts to an

4  admission on his part that the movement of vendor allowance funds across years was

5  fraudulent, but that he simply didn't know about.  As such, Watson's testimony supports

6  the Commission's motion for summary judgment against Jenkins.

7    For all of the foregoing reasons, the Declaration of James B. Riley and the

8  Supplemental Declaration of Gregory J. Weingart are inadmissible hearsay and should be

9  disregarded.

10

11  DATED:  February 15, 2011              Respectfully submitted,

12
                                         /s/ Donald W. Searles
13                                       DONALD W. SEARLES
                                         Attorneys for Plaintiff
14                                       Securities and Exchange Commission

15

16

17

18

19

20

21

22

23

24

25

26

27

28

8

**PROOF OF SERVICE**

I am over the age of 18 years and not a party to this action.  My business address is:

[X]  U.S. SECURITIES AND EXCHANGE COMMISSION, 5670 Wilshire Boulevard, 11th Floor, Los Angeles, California 90036-3648

Telephone No. (323) 965-3998; Facsimile No. (323) 965-3908.

On February 15, 2011, I caused to be served the document entitled **PLAINTIFF SECURITIES AND EXCHANGE COMMMISSION'S OBJECTIONS TO DECLARATION OF JAMES B. RILEY AND SUPPPLEMENTAL DECLARATION OF GREGORY J. WEINGART IN SUPPORT OF SUPPLEMENTAL OPPOSITION TO DEFENDANT MAYNARD L. JENKINS' TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** on all the parties to this action addressed as stated on the attached service list:

[ ]  **OFFICE MAIL:**  By placing in sealed envelope(s), which I placed for collection and mailing today following ordinary business practices.  I am readily familiar with this agency's practice for collection and processing of correspondence for mailing; such correspondence would be deposited with the U.S. Postal Service on the same day in the ordinary course of business.

[ ]  **PERSONAL DEPOSIT IN MAIL:**  By placing in sealed envelope(s), which I personally deposited with the U.S. Postal Service.  Each such envelope was deposited with the U.S. Postal Service at Los Angeles, California, with first class postage thereon fully prepaid.

[ ]  **EXPRESS U.S. MAIL:**  Each such envelope was deposited in a facility regularly maintained at the U.S. Postal Service for receipt of Express Mail at Los Angeles, California, with Express Mail postage paid.

[ ]  **HAND DELIVERY:**  I caused to be hand delivered each such envelope to the office of the addressee as stated on the attached service list.

[ ]  **UNITED PARCEL SERVICE:**  By placing in sealed envelope(s) designated by United Parcel Service ("UPS") with delivery fees paid or provided for, which I deposited in a facility regularly maintained by UPS or delivered to a UPS courier, at Los Angeles, California.

[ ]  **ELECTRONIC MAIL:**  By transmitting the document by electronic mail to the electronic mail address as stated on the attached service list.

[X]  **E-FILING:**  By causing the document to be electronically filed via the Court's CM/ECF system, which effects electronic service on counsel who are registered with the CM/ECF system.

[ ]  **FAX:**  By transmitting the document by facsimile transmission.  The transmission was reported as complete and without error.

I declare under penalty of perjury that the foregoing is true and correct.

Date: February 15, 2011 _____          /s/ Donald W. Searles _____
                                                 Donald W. Searles

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SEC v. Maynard L. Jenkins**
**United States District Court - District of Arizona**
**Case No. 2:09-cv-01510-JWS**
**(LA-3305)**

SERVICE LIST

John W. Spiegel, Esq. **(served via CM/ECF only)**
Jenny M. Jiang, Esq. **(served via CM/ECF only)**
Munger, Tolles & Olson LLP
355 South Grand Avenue, 35th Floor
Los Angeles, CA 90071-1560
Email: john.spiegel@mto.com
Email: jenny.jiang@mto.com
*Attorneys to Defendant Maynard L. Jenkins*

```
  ### #                        ##                        ####
 #   ##                         #                        #   #
 #       ####     ####    ## ###   #     ####    #####    #   #
  ####   #   #   #   #     ##      #    #    #   #    #    #   #
      #  ######   #####     #      #    ######    ####    #   #
      #  #       #    #     #      #    #            #    #   #
 ##   #  #       #    ##    #      #    #        #   #    #   #
 #  ###   #####   ### ##  #####   #####  #####    #####    ####
```

Job : 219
Date: 2/15/2011
Time: 1:19:00 PM

Exhibit 1

1          UNITED STATES DISTRICT COURT

2             DISTRICT OF ARIZONA

3                                    **CERTIFIED**

4   _____   **TRANSCRIPT**

5   SECURITIES AND EXCHANGE       )

6   COMMISSION,                   )

7                 Plaintiff,      )

8   vs.                           ) No. 09-443-PHX-GMS

9   MARTIN G. FRASER; DON W.      ) VOLUME II

10  WATSON; EDWARD W. O'BRIEN;    )

11  and GARY M. OPPER,            )

12                Defendants.     )

13  _____)

14

15

16      Continued Videotaped Deposition of DON W.

17      WATSON, at 111 West Monroe, Suite 425,

18      Phoenix, Arizona, commencing at 8:05 a.m.,

19      Friday, December 17, 2010, before

20      Jeffrey W. Bartelt, CR No. 50363.

21

22

23

24

25  PAGES 351 - 668

1        Phoenix, Arizona

2       December 17, 2010

3          8:05 a.m.

4

5

6        VIDEOGRAPHER:  Good morning.  This is

7   volume two, tape one, in the deposition of Don

8   Watson.

9        The date is December 17th, 2010, and we

10  are on the record at 8:05 a.m.

11

12        EXAMINATION (CONTINUING)

13  BY MR. SEARLES:

14       Q.  Good morning, Mr. Watson.

15       A.  Good morning.

16       Q.  If I can begin by showing you what's been

17  previously marked as Government Exhibit 25.  Do

18  you recognize this document, Mr. Watson?

19       A.  I have seen it as a part of my

20  preparation.

21       Q.  Other than that, do you recognize this

22  document?

23       A.  No, I don't.

24       Q.  Do you know the author of this

25  document?

Page 355

Q.   Were you employed at CSK at that time?

A.   Yes, I was.

Q.   What responsibilities did Mr. Opper have in connection with the LWT program in the spring of 2005, to your understanding?

A.   Mr. Opper worked for Mr. O'Brien and I don't remember specifically his duties in relationship to LWT.

Q.   Do you recall either Mr. Opper or Mr. O'Brien tracking collections against amounts recognized with respect to the 2004 LWT program year?

MR. ROSHKA:   Objection; foundation.

THE WITNESS:   I don't remember Mr. O'Brien or Mr. Opper doing specific collections, no.

Q.   BY MR. SEARLES:   If amounts were moved as reflected in this -- do you see on the first page of this exhibit, again, a column over to the right portion of the page off invoice moved to '03.   Another column Q2 billbacks moved to '03.   Do you see those columns?

A.   Yes.

Q.   Would Mr. -- assuming that that conduct took place, do you think Mr. O'Brien or

Page 560

Mr. Opper would try to keep that conduct a secret from you?

MR. ROSHKA:  Objection; form, foundation. Speculation.  Vague and ambiguous.

THE WITNESS:  I'm not sure if they would have or not.

Q.  BY MR. SEARLES:  Do you think there were secrets in the finance department that you were not advised of regarding the accounting of LWT?

MR. ROSHKA:  Object to the form, foundation.  Vague and ambiguous.

THE WITNESS:  As I sit here today, I believe that happened.

Q.  BY MR. SEARLES:  And what do you believe was the secret as you sit here today?

A.  As I sit here today, in reading some of the documents you did earlier, I don't believe I was told everything that was happening within the department.

Q.  Why do you think you were not told?

A.  I don't believe I was told specifically everything that was happening.

Q.  Do you believe you were told about the movement of funds across years to make up for

Page 561

collection shortfalls in prior years?

       MR. ROSHKA:  Object to the form, foundation.

       THE WITNESS:  No, I don't believe I was.

     Q.  BY MR. SEARLES:  Seeing the documents you see here today and yesterday, do you believe that practice in fact occurred?

       MR. ROSHKA:  Object to the form, foundation.  Calls for speculation.

       THE WITNESS:  As I sit here today, I don't know if that happened.

     Q.  BY MR. SEARLES:  This document certainly reflects that it did, didn't it?

       MR. ROSHKA:  Object to the form, foundation.  Vague and ambiguous.

       THE WITNESS:  This document has columns on here that indicate stuff was moved.  I don't have knowledge of how they moved it and what they moved.

     Q.  BY MR. SEARLES:  All right.  Well, when you say that you believe that certain things were concealed from you, what are the things that you believe were concealed from you?

     A.  As I sit here today reading the 10-K I

Page 562

believe there were monies that were

appropriately -- were not appropriately handled

in the 2004 fiscal year.

Q.   And how were they inappropriately handled

that was a secret to you?

A.   We did a restatement as a company in

2004.  I was not aware of any monies that were

moved from '04 to '03 at the time, and so I

believe that that was withheld from me.

Q.   And who do you believe was responsible

for withholding that information from you?

MR. ROSHKA:   Object to the form,

foundation.

THE WITNESS:   I don't know who

specifically was instructed not to tell me, but

I don't believe I was told.

Q.   BY MR. SEARLES:   And had you known of

that conduct at the time it was occurring as the

chief financial officer of CSK would you have

put a stop to it?

A.   I can tell you if I would have known that

at the time of a restatement we would have dealt

with it at the time of the restatement and we

would have dealt with those people very

harshly.

Page 563

STATE OF ARIZONA                )

                                ) ss

COUNTY OF MARICOPA              )


 BE IT KNOWN that the foregoing
deposition was taken by me, JEFFREY W. BARTELT,
CR No. 50363, a Certified Reporter for the State
of Arizona; that prior to being examined, the
witness named was duly sworn to testify to the
whole truth; that the questions propounded and
the answers of the witness thereto were taken
down by me and thereafter reduced to
computerized transcription under my direction
and supervision; that the foregoing is a true
and correct transcript of all proceedings had
upon the taking of said deposition, all done to
the best of my skill and ability.

        I further certify that I am in no way
related to any party to said action nor in any
way interested in the outcome thereof.

        DATED at Phoenix, Arizona, this 4th day of
January, 2011.

_____
JEFFREY W. BARTELT
CR No. 50363


                                        Page 668

3012
3013
3014
3015
3016
3017
3018

## PROOF OF SERVICE

I am over the age of 18 years and not a party to this action.  My business address is:

[X]   U.S. SECURITIES AND EXCHANGE COMMISSION, 5670 Wilshire Boulevard, 11th Floor, Los Angeles, California 90036-3648

Telephone No. (323) 965-3998; Facsimile No. (323) 965-3908.

On February 15, 2011, I caused to be served the document entitled **PLAINTIFF SECURITIES AND EXCHANGE COMMMISSION'S OBJECTIONS TO DECLARATION OF JAMES B. RILEY AND SUPPPLEMENTAL DECLARATION OF GREGORY J. WEINGART IN SUPPORT OF SUPPLEMENTAL OPPOSITION TO DEFENDANT MAYNARD L. JENKINS' TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** on all the parties to this action addressed as stated on the attached service list:

[ ]   **OFFICE MAIL:**  By placing in sealed envelope(s), which I placed for collection and mailing today following ordinary business practices.  I am readily familiar with this agency's practice for collection and processing of correspondence for mailing; such correspondence would be deposited with the U.S. Postal Service on the same day in the ordinary course of business.

    [ ]   **PERSONAL DEPOSIT IN MAIL:**  By placing in sealed envelope(s), which I personally deposited with the U.S. Postal Service.  Each such envelope was deposited with the U.S. Postal Service at Los Angeles, California, with first class postage thereon fully prepaid.

    [ ]   **EXPRESS U.S. MAIL:**  Each such envelope was deposited in a facility regularly maintained at the U.S. Postal Service for receipt of Express Mail at Los Angeles, California, with Express Mail postage paid.

[ ]   **HAND DELIVERY:**  I caused to be hand delivered each such envelope to the office of the addressee as stated on the attached service list.

[ ]   **UNITED PARCEL SERVICE:**  By placing in sealed envelope(s) designated by United Parcel Service ("UPS") with delivery fees paid or provided for, which I deposited in a facility regularly maintained by UPS or delivered to a UPS courier, at Los Angeles, California.

[ ]   **ELECTRONIC MAIL:**  By transmitting the document by electronic mail to the electronic mail address as stated on the attached service list.

[X]   **E-FILING:**  By causing the document to be electronically filed via the Court's CM/ECF system, which effects electronic service on counsel who are registered with the CM/ECF system.

[ ]   **FAX:**  By transmitting the document by facsimile transmission.  The transmission was reported as complete and without error.

    I declare under penalty of perjury that the foregoing is true and correct.

Date: February 15, 2011        /s/ Donald W. Searles
                             Donald W. Searles

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**SEC v. Maynard L. Jenkins**
**United States District Court - District of Arizona**
**Case No. 2:09-cv-01510-JWS**
**(LA-3305)**

SERVICE LIST

John W. Spiegel, Esq. **(served via CM/ECF only)**
Jenny M. Jiang, Esq. **(served via CM/ECF only)**
Munger, Tolles & Olson LLP
355 South Grand Avenue, 35th Floor
Los Angeles, CA 90071-1560
Email:  john.spiegel@mto.com
Email:  jenny.jiang@mto.com
*Attorneys to Defendant Maynard L. Jenkins*

10